No. 06-51587

# In the
# United States Court of Appeals
# for the Fifth Circuit

AVINASH RANGRA AND ANNA MONCLOVA,
*Plaintiff-Appellants*,

v.

FRANK BROWN AND GREG ABBOTT,
*Defendant-Appellees.*

On Appeal from the United States District Court
Western District of Texas, Pecos Division

## BRIEF OF APPELLEES

GREG ABBOTT
Attorney General of Texas

KENT C. SULLIVAN
First Assistant Attorney General

DAVID S. MORALES
Deputy Attorney General for Civil
Litigation

R. TED CRUZ
Solicitor General

SEAN D. JORDAN
Deputy Solicitor General
Texas Bar No. 00790988

JAMES TODD
Assistant Attorney General

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC-059)
Austin, Texas 78711-2548
[Tel.]: (512) 936-1700
[Fax]: (512) 474-2697

COUNSEL FOR APPELLEE
GREG ABBOTT

**Additional Counsel Listed on Inside Cover**

J. STEVEN HOUSTON
P.O. Box 388
Marathon, Texas 79842
State Bar No. 10054300
[Tel.]: (432) 386-6054
[Fax]: (432) 386-4203

COUNSEL FOR APPELLEE FRANK D. BROWN

## STATEMENT REGARDING ORAL ARGUMENT

Appellees believe that oral argument is unnecessary in this cause because the facts and legal arguments are adequately presented in the briefs and record, and the Court's decisional process would not be significantly aided by oral argument.

TABLE OF CONTENTS

Statement Regarding Oral Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . viii

Statement of Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Statement of the Issues . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    I.    The Relevant Provisions of the TOMA and the Events Preceding
        Appellants' Lawsuit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        A.    Section 551.144 of the TOMA Prohibits a Member of a
              Governmental Body from Knowingly Organizing or
              Assisting in Organizing an Impermissible Closed Meeting,
              and Likewise Prohibits a Member of a Governmental Body
              from Knowingly Participating in Such a Meeting . . . . . . . . . . 5

        B.    The E-mail Exchange Among Alpine City Council
              Members and Subsequent Events Leading to This
              Lawsuit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    II.    The District Court Rejects Appellants' Facial Challenge to
        the Constitutional Validity of §551.144 of the TOMA . . . . . . . . . . 10

Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Summary of the Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

I.   The Court Should Affirm Because Appellants' Lawsuit Fails to
     Present a Justiciable Controversy .......................... 16

     A.   Unless Appellants Can Meet the Standing Requirements of
          Article III, Their Case Fails to Present a Justiciable
          Controversy ...................................... 16

     B.   As of October 2006, Appellants' Case Became Moot
          Because They Could No Longer Meet the Standing
          Requirements of Article III ........................ 18

          1.   To meet the requirements of standing, Appellants
               must suffer an injury in fact .................... 18

          2.   Because Appellants can no longer demonstrate an
               injury in fact supporting their First Amendment
               claims, and therefore also cannot meet the causation
               and redressability requirements for standing, their
               lawsuit has become moot ...................... 19

          3.   Appellants do not meet the narrow "capable of
               repetition yet evading review" exception to the
               mootness doctrine ........................... 23

II.  If Appellants' Case Presents a Justiciable Controversy, the
     District Court's Decision Should Be Affirmed Because §551.144
     of the TOMA Does Not Regulate Speech or Conduct Protected by
     the First Amendment ..................................... 25

     A.   A Public Employee Has No First Amendment Interest in
          Speech Expressed in Performing His Job Duties .......... 26

          1.   The development of constitutional doctrine
               regarding public employee speech prior to
               *Pickering* .................................. 26

2. The "*Pickering* Balance" and public employee speech. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

3. From *Connick* to *Garcetti*, under the "*Pickering* Balance" test only public employee speech made "as a citizen" and "on a matter of public concern" raises the possibility of a First Amendment Claim . . . . . . . 29

B. Because the Provisions of §551.144 of the TOMA, on Their Face, Only Regulate the Conduct and Speech of Members of a Governmental Body Acting Within Their Official Duties, They Do Not Implicate Speech Protected Under the First Amendment . . . . . . . . . . . . . . . . . . . . . . . . . 32

C. The *Pickering* Test, as Further Defined by *Connick* and *Garcetti*, Applies to Elected Public Officials . . . . . . . . . . . . 34

D. Appellants' Reliance upon the *Wood* and *Bond* Cases is Misplaced . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

III. If §551.144 of the TOMA Regulates Speech Protected by the First Amendment, the District Court's Decision Should Be Affirmed Because the Statute Is Neither Overbroad nor Void for Vagueness . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

A. Section 551.144 of the TOMA Is Not Overly Broad . . . . . . . 40

1. The overbreadth doctrine is "strong medicine" that is applied "only as a last resort" to strike down a statute on its face . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

2. Texas interprets and enforces the TOMA, including §551.144, according to its purpose and unambiguous terms . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

3.    The district court correctly concluded that Appellants did not and cannot establish that §551.144 should be struck down on its face under the overbreadth doctrine . . . . . . . . . . . . . . . . . . . . . . 46

B.    The District Court Correctly Concluded That §551.144 Is Not Void for Vagueness . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58

Certificate of Compliance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59

# TABLE OF AUTHORITIES

## Cases

*Acker v. Tex. Water Comm'n*,
    790 S.W.2d 299 (Tex. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44, 45

*Adler v. Board of Education*,
    342 U.S. 485 (1952) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 27

*Amar v. Whitley*,
    100 F.3d 22 (5th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Ashcroft v. Mattis*,
    431 U.S. 171 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Babbitt v. United Farm Workers Nat'l Union*,
    442 U.S. 289 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 18, 20, 21, 23

*Bond v. Floyd*,
    385 U.S. 116 (1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37, 38

*Broadrick v. Oklahoma*,
    413 U.S. 601 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13, 16, 40-42, 47

*CAMP Legal Def. Fund, Inc. v. City of Atlanta*,
    451 F.3d 1257 (11th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*CISPES v. FBI*,
    770 F.2d 468 (5th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 40

*City of Chicago v. Morales*,
    527 U.S. 41 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Clark v. State*,
>12 S.W.2d 792 (Tex. Crim. App. 1928) . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

*Connick v. Myers*,
>461 U.S. 138 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 25-27, 29, 30

*Ctr. for Individual Freedom v. Carmouche*,
>449 F.3d 655 (5th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Doe v. Sch. Bd. of Ouachita Parish*,
>274 F.3d 289 (5th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*,
>528 U.S. 167 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*FW/PBS, Inc. v. City of Dallas*,
>493 U.S. 215 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Garcetti v. Ceballos*,
>126 S.Ct. 1951 (2006) . . . . . . . . . . . . . . . . . . . . . . . 11, 15, 25, 30-32, 34, 46

*Golden v. Zwickler*,
>394 U.S. 103 (1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Gooding v. Wilson*,
>405 U.S. 518 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

*Grayned v. City of Rockford*,
>408 U.S. 104 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 40, 51, 54

*Hartman v. Register*,
>No. 1:06-CV-33, 2007 WL 915193 (S.D. Ohio March 26, 2007) . . . . . . . 37

*Hays County Water Planning P'ship v. Hays County*,
>41 S.W.3d 174 (Tex. App.—Austin 2001, pet. denied) . . . . . . . . . . . . . . 45

*Henderson v. Stalder*,
    287 F.3d 374 (5th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Hill v. City of Houston*,
    764 F.2d 1156 (5th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Hill v. Colorado*,
    530 U.S. 703 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

*Hitt v. Mabry*,
    687 S.W.2d 791 (Tex. App.—San Antonio 1985, no writ) . . . . . . . . . . . 48

*Hogan v. Township of Haddon*,
    No. 04-2036 (JBS), 2006 WL 3490353 (D.N.J. Dec. 1, 2006) . . . . . . . . 37

*Home Depot, Inc. v. Guste*,
    773 F.2d 616 (5th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

*In re Bissonnet Invs., LLC*,
    320 F.3d 520 (5th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*J&B Entm't, Inc. v. City of Jackson*,
    152 F.3d 362 (5th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 40

*Keyishian v. Bd. of Regents*,
    385 U.S. 589 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Kolender v. Lawson*,
    461 U.S. 352 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

*Kona Tech. Corp. v. S. Pac. Transp. Co.*,
    225 F.3d 595 (5th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Larson v. Valente*,
    456 U.S. 228 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

x

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 17, 18

*McAuliffe v. Mayor of New Bedford*,
    29 N.E. 517 (Mass. 1892) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*McCorvey v. Hill*,
    385 F.3d 846 (5th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Meadows v. Odom*,
    198 Fed. Appx. 348 (5th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24

*Meese v. Keene*,
    481 U.S. 465 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Members of City Council v. Taxpayers for Vincent*,
    466 U.S. 789 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41, 50

*Mosby v. Ligon*,
    418 F.3d 927 (8th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*New York v. Ferber*,
    458 U.S. 747 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41, 42

*Oliver v. Scott*,
    276 F.3d 736 (5th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*O'Shea v. Littleton*,
    414 U.S. 488 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Pederson v. La. State Univ.*,
    213 F.3d 858 (5th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Pickering v. Bd. of Educ.*,
    391 U.S. 563 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 25, 28, 29

*Rankin v. McPherson*,
    483 U.S. 378 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Rocky v. King*,
    900 F.2d 864 (5th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Sample v. Morrison*,
    406 F.3d 310 (5th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Scott v. Flowers*,
    910 F.2d 201 (5th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34-36

*Sec'y of State of Md. v. Joseph H. Munson Co.*,
    467 U.S. 947 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Smith v. Goguen*,
    415 U.S. 566 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

*Soc'y of Separationists, Inc. v. Herman*,
    959 F.2d 1283 (5th Cir. 1992) (en banc) . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Spencer v. Kemna*,
    523 U.S. 1 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Super Tire Eng'g Co. v. McCorkle*,
    416 U.S. 115 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Thornhill v. Alabama*,
    310 U.S. 88 (1940) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

*Tovar v. State*,
    978 S.W.2d 584 (Tex. Crim App. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . 46

*Tracker Marine, L.P. v. Ogle*,
    108 S.W.3d 349 (Tex. App.—Houston [14th Dist.] 2003, no pet.) . . . . . . 47

*United States Parole Comm'n v. Geraghty*,
    445 U.S. 388 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*United States v. Lanier*,
    520 U.S. 259 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

*United States v. Raines*,
    362 U.S. 17 (1960) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

*United States v. Tansley*,
    986 F.2d 880 (5th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*United States v. Thames*,
    214 F.3d 608 (5th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Valley Forge Christian Coll. v. Ams. United for Separation*
    *of Church and State*, 454 U.S. 464 (1982) . . . . . . . . . . . . . . . . . . . 1, 16, 17

*Virginia v. Hicks*,
    539 U.S. 113 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42, 50

*Waters v. Churchill*,
    511 U.S. 661 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 31

*Whitmore v. Arkansas*,
    495 U.S. 149 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 22

*Wood v. Georgia*,
    370 U.S. 375 (1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37, 38

**Statutes, Rules, and Constitutional Provisions**

U.S. CONST. art. III, §2, cl. 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

28 U.S.C. §2201 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

42 U.S.C. §1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

FED. R. APP. P. 28(a)(9)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

TEX. CODE CRIM PROC. art. 12.02 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 21

TEX. GOV'T CODE §311.021 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

TEX. GOV'T CODE §551.001 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

TEX. GOV'T CODE §551.001(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

TEX. GOV'T CODE §551.001(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 33

TEX. GOV'T CODE §§551.001-.002 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43, 49

TEX. GOV'T CODE §551.002 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

TEX. GOV'T CODE §551.005 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

TEX. GOV'T CODE §551.041 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

TEX. GOV'T CODE §551.144 . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 43, 46, 48, 49

TEX. GOV'T CODE §551.144(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 32, 47

TEX. LABOR CODE ch. 21 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

TEX. LABOR CODE §21.010 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

## Other Authorities

BLACK'S LAW DICTIONARY 1373 (8th ed. 2004) . . . . . . . . . . . . . . . . . . . . . . 47, 48

Op. Tex. Att'y Gen. No. DM-95 (1992),
        1992 WL 525150 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

Op. Tex. Att'y Gen. No. JC-0169 ( 2000),
        2000 WL 52817 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52-54

No. 06-51587

# In the
# United States Court of Appeals
# for the Fifth Circuit

---

AVINASH RANGRA AND ANNA MONCLOVA,

*Plaintiff-Appellants*,

v.

FRANK BROWN AND GREG ABBOTT,

*Defendant-Appellees.*

---

On Appeal from the United States District Court
Western District of Texas, Austin Division

---

## BRIEF OF APPELLEES

---

TO THE HONORABLE COURT OF APPEALS FOR THE FIFTH CIRCUIT:

"Those who do not possess Art. III standing may not litigate as suitors in the courts of the United States." *Valley Forge Christian Coll. v. Ams. United for Separation of Church and State*, 454 U.S. 464, 475-76 (1982). Appellants Monclova and Rangra lack standing because they have no injury in fact associated with the Texas statute they claim is unconstitutional on its face, §551.144 of the Texas Open Meetings Act. Appellants are not being prosecuted under §551.144, nor are they

under any credible threat of prosecution. Their suit fails to present a justiciable controversy.

But even assuming that the case is justiciable, the district court correctly denied Appellants' claim that §551.144 be struck down as an unconstitutional restriction on speech protected by the First Amendment. Section 551.144 does not regulate protected speech. It prohibits public officials from knowingly circumventing, or aiding in circumventing, the Texas Open Meetings Act's requirement that all meetings of a quorum of a governmental body to consider public issues and policy under its control must be conducted openly before the public, and not privately. Because the district court's decision that §551.144 does not implicate speech protected by the First Amendment properly applied controlling Supreme Court precedent, it should be affirmed.

### STATEMENT OF JURISDICTION

The United States Constitution, Article III, section 2, clause 1, requires the existence of a case or controversy to support this Court's jurisdiction. *Amar v. Whitley*, 100 F.3d 22, 23 (5th Cir. 1996). Because Appellants have not alleged any intent to engage in conduct prohibited by §551.144 of the Texas Open Meetings Act but protected by the First Amendment, and there remains no credible threat of future prosecution under the statute, *see Babbitt v. United Farm Workers Nat'l Union*, 442

U.S. 289, 298 (1979), Appellants can no longer meet the injury in fact, causation, and

redressability requirements for standing under Article III.   *See Lujan v. Defenders*

*of Wildlife*, 504 U.S. 555, 560-61 (1992).   Accordingly, their case has become moot

and must be dismissed for lack of subject-matter jurisdiction.

### STATEMENT OF THE ISSUES

1.    Does Appellants' suit present a justiciable controversy?

2.    If Appellants' case presents a justiciable controversy, should the district court's
decision denying their claims be affirmed because §551.144 of the TOMA does
not regulate speech protected by the First Amendment?

3.    If §551.144 of the TOMA regulates speech protected by the First Amendment,
should the district court's decision be affirmed because the statute is not
overbroad or void for vagueness?

### STATEMENT OF THE CASE

On September 26, 2005, Appellants Avinash Rangra and Anna Monclova filed

suit in the United States District Court for the Western District of Texas, Pecos

Division, against the State of Texas and Appellees Greg Abbott, Attorney General of

Texas, and Frank Brown, District Attorney for the 83rd Judicial District.   CR.2-10;

RA.12-20.[1]   The lawsuit   generally claimed that the "criminal provisions" of the

---

1. Citations to "CR._" refer to particular pages in the clerk's record.  Citations to "RR._"
refer to particular pages of the reporter's record of the bench trial conducted by United States District
Court Judge Robert Junell on July 26, 2006.  Citations to "Tr._" refer to the particular pages of the
reporter's record of the hearing held on March 14, 2006 by United States District Court Judge Robert
Junell. Parallel citations to "R.A._" refer to particular pages in the Record Appendix.

3

Texas Open Meetings Act (TOMA) violate the First Amendment of the United States Constitution and Article I, Section 8 of the Texas Constitution, and requested a declaratory judgment and injunction that such provisions may not be enforced. *See* CR.6-9; RA.16-19. Appellees only sought declaratory and prospective relief and did not seek damages. CR.9; RA.19. By agreed order, Appellants' claims against the State of Texas, as well as their claims made under Article I, Section 8 of the Texas Constitution, were subsequently dismissed. CR.312-13, 439 (RA.91).

Appellees moved to dismiss the case under Federal Rule of Civil Procedure 12(b)(1) and (6) for lack of subject-matter jurisdiction and failure to state a claim upon which relief could be granted. CR.125-58; RA.49-63. These motions were ultimately denied, CR.393-94; RA.78-79, and the case was set for bench trial, CR.310-11; RA.75-76. Prior to the bench trial, Appellants were ordered to name the specific sections of the TOMA that they wanted declared unconstitutional, CR.311; RA.76, and Appellants identified §551.001(2) and (4) and §551.144 of the TOMA as violating the First Amendment, CR.335; RA.77. Following a bench trial, the district court entered findings of fact, conclusions of law, and a final judgment . The court denied Appellants' claims for declaratory and injunctive relief and entered a take-nothing judgment for Appellees on all of Appellants' claims. CR.438-52; RA.90-104. Appellants filed a timely notice of appeal. CR.468-69; RA.105-06.

4

## STATEMENT OF FACTS

### I.    THE RELEVANT PROVISIONS OF THE TOMA AND THE EVENTS PRECEDING APPELLANTS' LAWSUIT.

#### A.    Section 551.144 of the TOMA Prohibits a Member of a Governmental Body from Knowingly Organizing or Assisting in Organizing an Impermissible Closed Meeting, and Likewise Prohibits a Member of a Governmental Body from Knowingly Participating in Such a Meeting.

The TOMA requires that, with certain exceptions not applicable here, "every regular, special, or called meeting of a governmental body shall be open to the public." TEX. GOV'T CODE §551.002. The term "governmental body" includes any municipal governing body in Texas. *Id.* §551.001(3)(C).

Section 551.144 of the Act forbids a member of a governmental body from, *inter alia*, knowingly organizing or assisting in organizing an impermissible closed meeting and likewise prohibits a member of a governmental body from knowingly participating in such a meeting. A "closed meeting" under the Act is "a meeting to which the public does not have access." *Id.* §551.001(1). The statute provides in relevant part as follows:

(a) A member of a governmental body commits an offense if a closed meeting is not permitted under this chapter and the member knowingly:

(1) calls or aids in calling or organizing the closed meeting, whether it is a special or called closed meeting;

5

(2) closes or aids in closing the meeting to the public, if it is a regular meeting; or

(3) participates in the closed meeting, whether it is a regular, special, or called meeting.

*Id.* §551.144(a).  The term "meeting" as used in §551.144 is defined  to mean the following:

(A) a deliberation between a quorum of a governmental body, or between a quorum of a governmental body and another person, during which public business or public policy over which the governmental body has supervision or control is discussed or considered or during which the governmental body takes formal action; or

(B) except as otherwise provided by this subdivision, a gathering:

(i) that is conducted by the governmental body or for which the governmental body is responsible;

(ii) at which a quorum of members of the governmental body is present;

(iii) that has been called by the governmental body; and

(iv) at which the members receive information from, give information to, ask questions of, or receive questions from any third person, including an employee of the governmental body, about the public business or public policy over which the governmental body has supervision or control.

The term does not include the gathering of a quorum of a governmental body at a social function unrelated to the public business that is conducted by the body, or the attendance by a quorum of a governmental body at a regional, state, or national convention or workshop,

6

ceremonial event, or press conference, if formal action is not taken and any discussion of public business is incidental to the social function, convention, workshop, ceremonial event, or press conference. The term includes a session of a governmental body.

*Id.* §551.001(4).  The Act also defines the term "deliberation," as used in the description of a "meeting" under the TOMA, as "a verbal exchange during a meeting between a quorum of a governmental body, or between a quorum of a governmental body and another person, concerning an issue within the jurisdiction of the governmental body or any public business." *Id.* §551.001(2).

A violation of §551.144 is a misdemeanor punishable by a fine of not less than $100 or more than $500, confinement in jail for not less than one month or more than six months, or by both a fine and confinement in jail.  *Id.* §551.144(b).

**B.    The E-mail Exchange Among Alpine City Council Members and Subsequent Events Leading to This Lawsuit.**

The City of Alpine, Texas is governed by a city council of five members and an elected mayor.  CR.455; RA.92.  Four members of the city council constitute a quorum.  *Id.*; RR.22-23.  In 2004, Appellants Rangra and Monclova were members of the Alpine city council.  CR.4 (RA.14), 102-03, 106-07.  Monclova was elected in May, 2004 to a term that ended in May, 2006.  CR.4; RA.14.  Monclova is no longer a member of the city council, and has not been since May, 2006.  *See id.*  Rangra was

7

elected to the Alpine city council in 2003, and he remains a member of the city council.  RR.62.

On October 21, 2004, Monclova, Payne (another city council member), and Rangra received an e-mail from Katie Elms-Lawrence, who at that time was also a member of the city council.  CR.4, 455; RA.14, 92.  The text of the e-mail was as follows:

> *Avinash [Rangra], Manuel [Payne] . . . Anna [Monclova] just called and we are both in agreement we need a special meeting at 6:00 p.m. Monday . . . so you or I need to call the mayor to schedule it (mainly you, she does'nt [sic] like me right now I'm Keri's MOM) . . . we both feel Mr. Tom Brown was the most impressive . . . no need for interviewing another engineer at this time . . . have him prepare the postphonement [sic] of the 4.8 million, get us his firms [sic] review and implementations for the CURE for South Alpine . . . borrow the money locally and get it fixed NOW . . . then if they show good faith and do the job allow them to sell us their bill of goods for water corrections for the entire city . . . . . . at a later date . . and use the 0% amounts to repay the locally borrowed money and fix the parts that don't meet TECQ [sic] standards . . . . We don't have to marry them . . . with a life long contract, lets [sic] just get engaged!*
>
> *Let us hear from you both*
> *KT*

CR.66, 455-56; RA. 21, 92-93.  Rangra confirmed at trial that Tom Brown, referenced in Ms. Elms-Lawrence's mail, represented an engineering firm.  RR.74.  At that time, the City of Alpine was going to hire an engineering firm to resolve a water problem on the south side of the city.  RR.74-75.

8

On October 22, 2004, Rangra responded to Elms-Lawrence's e-mail, copying

his response to Monclova and Payne.  CR.4, 456; RA.14, 93.  The text of Rangra's

e-mail was as follows:

> *Hello Katie . . . .*
> *I just talked with John Voller of Hibb and Todds of Abilene . . . and*
> *invited him to come to the Monday meeting . . . I asked him to bring his*
> *money man also . . . these guys work for Sul Ross . . . He said . . . he will*
> *be at meeting Monday . . . .*
>
> *I'll talk with Tom Brown also after my 8:00 class . . .*
>
> *Thanks for the advice . . . and I'll talk with Mickey as per your, Anna,*
> *and Manuel directions . . . and arrange the meeting on Monday . . . .*
>
> *We must reach some sort of decision SOOOOOOOOOOOOOON.*
>
> *Avinash*
>
> *Katie . . . . please correct my first name spellings . . . Thanks.*

CR.66, 456; RA.21, 93.  Rangra confirmed that the Hibb and Todds firm referenced

in his mail was also an engineering firm.  RR.74.  The city council subsequently held

a public meeting to discuss the water project and the engineers to hire for this work.

CR.456; RA.93.

Appellee Brown, the district attorney for Alpine, subpoenaed Rangra, Elms-

Lawrence, Monclova, and Payne to testify before the Brewster County grand jury

regarding the e-mails described above.  All refused to testify, citing their Fifth

Amendment privilege.  CR.5, 456; RA.15, 93.  On February 17, 2005, Brown presented the case against Rangra and Elms-Lawrence to the Brewster County grand jury, alleging violations of the TOMA based on the above-described exchange of e-mails.  CR.5, 457; RA.15, 94.  Rangra and Elms-Lawrence were indicted on the same day for violations of the TOMA.  CR.5, 68, 70, 457; RA.15, 22, 23, 94.  A few months later, in May, 2005, Brown dismissed the indictments against Elms-Lawrence and Rangra.  CR.72, 74, 457; RA.24, 25, 94.

No further actions were taken against Rangra or Elms-Lawrence by Appellee Brown or the Attorney General.  As to Appellant Monclova, Brown testified at trial that she was "never under the threat of prosecution," RR.44, and that Monclova was advised "on multiple occasions" that she was not under threat of prosecution, *see id*. The statute of limitations for any potential violations of the TOMA based on the exchange of e-mails described above expired on October 22, 2006.  CR.457; RA.94; Tex. Code Crim Proc. art. 12.02.

## II.    THE DISTRICT COURT REJECTS APPELLANTS' FACIAL CHALLENGE TO THE CONSTITUTIONAL VALIDITY OF §551.144 OF THE TOMA.

The district court concluded that the provisions of §551.144 of the TOMA do not violate the First Amendment.  CR.461-67; RA.98-104.  The court initially observed that Appellants' complaint requested declaratory and injunctive relief under

28 U.S.C. §2201, *et seq.* and 42 U.S.C. §1983, seeking, *inter alia*, an order declaring that §551.144 of the TOMA violates the First Amendment and may not be enforced. *See* CR.453-54, 458; RA.90-91, 95.   Appellants also sought a declaration that §551.001(2) and (4), containing the TOMA's definitions of "deliberation" and "meeting," are unconstitutional. *See id.*[2]

The district court held that Appellants' claims failed at the outset because they concerned speech that is not protected by the First Amendment.  CR.461; RA.98. Specifically, applying the Supreme Court's recent decision in *Garcetti v. Ceballos*, the district court observed that "[b]ecause the speech at issue" — *i.e.* under §551.144 of the TOMA — "is uttered entirely in the speaker's capacity as a member of a collective decision-making body, and thus is the kind of communication in which he or she is required to engage as part of his or her official duties, it is not protected by the First Amendment from the restriction imposed by the [TOMA]." *Id.* (citing *Garcetti v. Ceballos*, 126 S.Ct. 1951, 1959-60 (2006)).  The court further explained that the TOMA provision at issue is not regulating speech; rather, "the Act simply requires speech to be made openly and in the presence of interested public, as opposed to 'behind closed doors.'"  CR.462; RA.99.

---

2.  Although Appellants' complaint identified their challenges to the TOMA as both as-applied and facial challenges under the First Amendment, CR.9; RA.19, they subsequently clarified that they only asserted facial challenges to the statute.  Tr.46.

11

Although the court's application of *Garcetti* eliminated all of Appellants' claims, which turned in their entirety on §551.144's alleged violation of speech protected by the First Amendment, it nonetheless also addressed Appellants' overbreadth and vagueness claims. CR.463-66; RA.100-03. The court explained that overbreadth and vagueness are "related but distinct" First Amendment challenges to the facial constitutionality of a statute. *See* CR.463; RA.100. The court noted that, "'[I]n cases involving a facial challenge to the overbreadth and vagueness of a statute, a court should first consider whether the statute is overbroad, and, assuming that it is not, then whether it is unconstitutionally vague.'" *Id.* (quoting *CISPES v. FBI*, 770 F.2d 468, 472 (5th Cir. 1985) (internal citation omitted)).

Accordingly, the district court first determined "'whether the enactment reaches a substantial amount of constitutionally protected conduct.'" *Id.* (quoting *United States v. Tansley*, 986 F.2d 880, 885 (5th Cir. 1993)). The court applied the principle from *Broadrick v. Oklahoma*, 413 U.S. 601 (1973), that "the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep," *id.* (quoting *Broadrick*, 413 U.S. at 615). The court concluded that Appellants had "failed to show that the [TOMA] is substantially overbroad," CR.464; RA.101, and that the Act "does not restrict or inhibit a substantial amount of activity protected by the First Amendment," *id*.

12

Finally, the court held that the TOMA is not unconstitutionally vague. *Id.* The court initially observed that "[t]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness so that an ordinary person may understand what conduct is actually prohibited." *Id.* (citing *Tansley*, 986 F.2d at 885). The court also noted that, "[u]nder the vagueness doctrine, '[o]nly a resonable degree of certainty is required,'" and that a vagueness challenge could succeed "'only if the enactment is impermissibly vague in all of its applications,'" CR.466; RA.103   (quoting *Tansley*, 986 F.2d at 885). The court found that the TOMA "'sets forth a core of prohibited conduct with sufficient definiteness to guide those who must interpret it,'" *id.* (quoting *J&B Entm't, Inc. v. City of Jackson*, 152 F.3d 362, 366 (5th Cir. 1998)). Based upon this conclusion, and its determination that Appellants had not shown that the Act was vague in all its applications, the court rejected Appellants' vagueness challenge. CR.466-67; RA.103-04.

Appellants' requests for declaratory and injunctive relief were consequently denied and a final judgment was entered in favor of Appellees. CR.467; RA.104.

## STANDARD OF REVIEW

The Court reviews *de novo* all questions of subject-matter jurisdiction, including  issues of standing and mootness. *See Sample v. Morrison*, 406 F.3d 310, 312 (5th Cir. 2005); *In re Bissonnet Invs., LLC,* 320 F.3d 520, 522 (5th Cir. 2003).

The Court also reviews questions of law *de novo*.  *See Kona Tech. Corp. v. S. Pac. Transp. Co.*, 225 F.3d 595, 601 (5th Cir. 2000).  Whether a public employee has a presumptively protected interest in his speech is a question of law.  *See Waters v. Churchill*, 511 U.S. 661, 668 (1994) (plurality opinion); *Rankin v. McPherson*, 483 U.S. 378, 386 n.9 (1987).  Likewise, a facial challenge to the constitutionality of a statute presents a pure question of law and is reviewed *de novo*. *Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 662 (5th Cir. 2006).

## SUMMARY OF THE ARGUMENT

Appellants Rangra and Monclova argue that the Court should hold §551.144 of the TOMA to be facially unconstitutional under the First Amendment overbreadth and vagueness doctrines.  But Appellants' suit is moot, and therefore fails to present a justiciable controversy.  In October 2006, Appellants' only arguable basis for standing to assert their claims, their perceived threat of prosecution under §551.144 stemming from the October 2004 e-mail exchange, disappeared when the statute of limitations expired.  Because they have alleged no intent to engage in any future conduct both prohibited by §551.144 and protected under the First Amendment, and no credible threat of prosecution remains, Appellants no longer have an injury in fact to sustain their standing, and their suit must be dismissed for lack of subject-matter jurisdiction.

14

But even if the Court determines that Appellants' case presents a justiciable controversy, the district court's decision denying their claims should be affirmed because §551.144 of the TOMA does not regulate speech protected by the First Amendment.  In a First Amendment challenge to governmental action affecting public employees, as here, the Court must first determine whether the complained-of governmental action restricts speech expressed as a citizen on a matter of public concern. *See Connick v. Myers*, 461 U.S. 138, 140 (1983); *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968).  If the restriction does not affect speech expressed both "as a citizen" and "on matters of public concern," the First Amendment claim must fail. *See Garcetti*, 126 S.Ct. at 1958.

Because §551.144 regulates only conduct and speech of members of a governmental body acting in their capacity as public officials, rather than as private citizens, it does not impact speech protected by the First Amendment.  Accordingly, Appellants had no valid claim under the First Amendment, and the district court correctly denied such claims.

Finally, if the Court determines that Appellants' suit is not foreclosed under *Pickering* and *Garcetti*, their overbreadth and vagueness challenges to §551.144 of the TOMA are nonetheless without substantive merit, and were correctly rejected by the district court.  The overbreadth doctrine is invoked when a law punishes a

15

substantial amount of protected free speech, judged in relation to the statute's plainly legitimate sweep. *Broadrick*, 413 U.S. at 613. A statute is similarly void for vagueness when it fails to "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). Because §551.144 does not punish a substantial amount of protected free speech judged in relation to its legitimate sweep, and because it provides sufficient guidance to an ordinary person to understand the conduct it prohibits, the statute is neither overly broad nor void for vagueness.

## ARGUMENT

### I.    THE COURT SHOULD AFFIRM BECAUSE APPELLANTS' LAWSUIT FAILS TO PRESENT A JUSTICIABLE CONTROVERSY.

#### A.    Unless Appellants Can Meet the Standing Requirements of Article III, Their Case Fails to Present a Justiciable Controversy.

Under Article III of the Constitution, federal courts may only adjudicate actual "cases" and "controversies." U.S. CONST. art. III, §2, cl. 1. As the Supreme Court has stated, "Those who do not possess Art. III standing may not litigate as suitors in the courts of the United States." *Valley Forge Christian Coll.*, 454 U.S. at 475-76.

The Court has likewise made clear that standing, at its "irreducible constitutional minimum," requires a plaintiff to demonstrate three things: (1) that they

16

have suffered an "injury-in-fact;" (2) that there must be a "causal connection"

between the injury and the defendant's actions; and (3) that the injury will "likely

. . . be redressed by a favorable decision." *Lujan*, 504 U.S. at 560-61.  And these

requirements apply in First Amendment cases just as in other cases,[3] including cases

in which a plaintiff challenges an enactment on its face.  *See, e.g.*, *Larson v. Valente*,

456 U.S. 228, 233-36 (1982) (holding that plaintiffs had Article III standing to bring

Establishment Clause challenge to a statute as applied and on its face).

Notably, the fact that the doctrine of prudential standing has been applied to

allow litigants to pursue the claims of third parties in some First Amendment cases[4]

does not abrogate the requirement that such litigants must nonetheless meet Article

III's standing requirements.  *See Valley Forge Christian Coll.*, 454 U.S. at 475-76

(satisfaction of requirements of prudential standing cannot substitute for Article III

requirements); *Henderson v. Stalder*, 287 F.3d 374, 385 n.4 (5th Cir. 2002) (Jones,

---

3. *See, e.g.*, *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 230-36 (1990); *Meese v. Keene*, 481 U.S. 465, 472-77 (1987); *Valley Forge Christian Coll.*, 454 U.S. at 488-90; *Soc'y of Separationists, Inc. v. Herman*, 959 F.2d 1283, 1285 (5th Cir. 1992) (en banc); *Doe v. Sch. Bd. of Ouachita Parish*, 274 F.3d 289, 291-92 (5th Cir. 2001).

4. *See City of Chicago v. Morales*, 527 U.S. 41, 55 n.22 (1999) (opinion of Stevens, J., joined by Souter, J., and Ginsburg, J.) ("When asserting a facial challenge, a party seeks to vindicate not only his own rights, but those of others who may also be adversely impacted by the statute in question.  In this sense, the threshold for facial challenges is a species of third party (*jus tertii*) standing, which we have recognized as a prudential doctrine and not one mandated by Article III of the Constitution.") (citing *Sec'y of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 955 (1984)).

17

J., concurring) ("Although various prudential standing principles have been relaxed in some First Amendment cases, this relaxation does not eliminate the distinct and independent requirement of Article III that the dispute between the parties must amount to a case or controversy." ).[5]

### B.    As of October  2006, Appellants' Case Became Moot Because They Could No Longer Meet the Standing Requirements of Article III.

#### 1.    To meet the requirements of standing, Appellants must suffer an injury in fact.

The Supreme Court has explained that "an injury in fact [is] an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual and imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560.  In freedom-of-expression cases, such as here, injury in fact can be shown by alleging (1) an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and (2) a credible threat of future prosecution. *See Babbitt*, 442 U.S. at 298.

"Allegations of possible future injury" do not satisfy the injury-in-fact requirement. *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990).  And, although "past

---

5.    *See also CAMP Legal Def. Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1269-72 (11th Cir. 2006) ("The overbreadth doctrine does not relieve a plaintiff of the burden to prove constitutional standing, which requires that the plaintiff himself has suffered some threatened or actual injury resulting from the putatively illegal action.") (internal quotation marks and citation omitted); *Mosby v. Ligon*, 418 F.3d 927, 932-33 (8th Cir. 2005) (litigants must satisfy "normal requirements" of Article III standing even when bringing  facial challenges).

wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury," *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974), they do not confer standing without some credible threat of future injury. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 108 (1983).  Further, as this Court has observed, the Supreme Court has also "held that standing to challenge a statute was not established merely by the fact that the plaintiff had on a single previous occasion been harmed by the statute's application, absent a realistic likelihood that the statute would, in the future, be applied to his own detriment." *Hill v. City of Houston*, 764 F.2d 1156, 1161 (5th Cir. 1985) (citing *Golden v. Zwickler*, 394 U.S. 103 (1969); *Ashcroft v. Mattis*, 431 U.S. 171 (1977)).

> **2.      Because Appellants can no longer demonstrate an injury in fact supporting their First Amendment claims, and therefore also cannot meet the causation and redressability requirements for standing, their lawsuit has become moot.**

Appellants Monclova and Rangra's lawsuit seeks only prospective declaratory and injunctive relief, particularly a declaration that §551.144 of the TOMA is unconstitutional and may not be enforced.  *See* CR.6-9; RA.16-19.[6]  Thus, to have

---

6. In their pleadings in the district court, Appellants also asserted that §551.001(2) and (4) are unconstitutional and should be struck down. CR.335; RA.77.  The district court denied all of Appellants claims.  CR.451-52.  On appeal, Appellants do not mention or brief any claim that §551.001(2) and (4) are unconstitutional, thereby waiving any argument concerning these provisions of the TOMA.  *See* Fed. R. App. P. 28(a)(9)(A); *United States v. Thames*, 214 F.3d 608 (5th Cir. 2000).

standing, particularly as to the injury-in-fact requirement of Article III, Appellants must have: (1) an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by §551.144, and (2) a credible threat of future prosecution under the statute. *See Babbitt*, 442 U.S. at 298.

Although standing is determined as of the time suit is filed, *Pederson v. La. State Univ.*, 213 F.3d 858, 870 (5th Cir. 2003), "[t]he mootness doctrine requires that the controversy posed by the plaintiff's complaint be live not only at the time the plaintiff files the complaint, but also throughout the litigation process," *Rocky v. King*, 900 F.2d 864, 866 (5th Cir. 1990). This is so because the case-or-controversy requirement of Article III underpins both standing and mootness. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180 (2000). Mootness is "the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of litigation (standing) must continue throughout its existence (mootness)." *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980). Thus, the mootness doctrine "ensures that the litigant's interest in the outcome continues to exist throughout the life of the lawsuit . . . including the pendency of the appeal." *McCorvey v. Hill*, 385 F.3d 846, 848 (5th Cir. 2004).

This case is moot because, as of October 2006, neither of Appellants even arguably meet the injury-in-fact standing requirement. Specifically, they have not

alleged any intention to engage in a course of conduct protected under the First Amendment, but prohibited by §551.144, and there remains no credible threat of future prosecution under the statute. *See Babbitt*, 442 U.S. at 298.

When Appellants filed their lawsuit in September 2005, their standing to raise their prospective declaratory and injunctive relief claims rested principally on the alleged threat that they might still be prosecuted under §551.144 of the TOMA based on the October 21-22, 2004 e-mail exchange. *See* CR.102-03 (Affidavit of Rangra); CR.106-07 (Affidavit of Monclova). Rangra's and Monclova's affidavits, submitted with their complaint, asserted their fear that they would be indicted based on the October 2004 e-mail exchange, *see id.*, arguably providing —at that time —  a credible threat of prospective prosecution based on the statute.

But as the district court recognized, in October 2006, the relevant statute of limitations expired for any prosecution based on the October 2004 e-mail exchange. *See* CR.457; RA.94; TEX. CODE CRIM PROC. art. 12.02. Accordingly, there remains no credible threat of prosecution based on those e-mails, and they can no longer provide the basis for Appellants to maintain this suit.

And Appellants have failed to allege any other valid basis for standing. They certainly have not asserted an intention to engage in any future course of conduct that §551.144 would proscribe. The only language in the complaint that even hints at the

possibility is Appellants' statement that they will "continue to maintain e-mail accounts, receive written materials through the United States Postal Service, and to have informal conversations with citizens and fellow elected officials regarding issues of public interest." CR.6; RA.16. This vague statement certainly does not express an intent to undertake actions violating §551.144 of the TOMA. None of those activities amount to a violation of §551.144.

Further, Appellants' sworn affidavits disclaim an intent to undertake any action that could violate the TOMA and, specifically, §551.144. Both Monclova's and Rangra's affidavits expressly state that they do not intend to discuss any of the City of Alpine's public matters except at a city council meeting. *See* CR.102-03, 106-07. Finally, Monclova is no longer a member of the Alpine city council. CR.4; RA.14. Accordingly, §551.144 of the TOMA — which by its express terms only applies to members of a governmental body — cannot possibly form the basis of any "threat of prosecution" against her. *See* TEX. GOV'T CODE §551.144.[7]

---

7. Although Rangra remains a member of the Alpine city council, there was no evidence indicating that he could legitimately fear future prosecution because he planned to undertake actions similar to the October 21-22, 2004 e-mail exchanges giving rise to this suit. To the contrary, Rangra's testimony confirmed that no such threat of prosecution exists because he no longer uses his e-mail for any city-related issues. RR.66-67. The Court is left with, at best, speculative or conjectural hypothetical scenarios regarding how Rangra might some day in the future otherwise — *i.e.*, not through the use of e-mail—run afoul of §551.144. Of course, such conjecture or speculation cannot support standing under Article III. *See Whitmore*, 495 U.S. at 158.

Thus, Appellants cannot meet the injury-in-fact requirement for standing , even as applied in a freedom-of-expression case, because they have not alleged an intention to engage in a course of conduct both protected under the First Amendment and prohibited by §551.144, and there remains no credible threat of future prosecution against Appellants under the statute. *See Babbitt*, 442 U.S. at 298. Because Appellants do not have an injury-in-fact, they also cannot meet the causation and redressability requirements for standing. Accordingly, the case no longer presents a justiciable controversy.

### 3. Appellants do not meet the narrow "capable of repetition yet evading review" exception to the mootness doctrine.

Appellants do not meet the "capable of repetition yet evading review" exception to the mootness doctrine. The Court has recognized that "[g]enerally, the capable of repetition doctrine applies only in 'exceptional' situations where two circumstances simultaneously are present: '(1) the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again.'" *Meadows v. Odom*, 198 Fed. Appx. 348, 351 (5th Cir. 2006) (quoting *Spencer v. Kemna*, 523 U.S. 1, 17 (1998)).

As to the second element, Appellants cannot show a "reasonable expectation" or a "demonstrated probability" that they will engage in conduct prohibited by §551.144 of the TOMA and protected by the First Amendment. *See Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002). To the contrary, the undisputed facts of the case and Appellants' sworn testimony establish just the opposite. Monclova is no longer a member of the Alpine city council, CR.4; RA.14, and Rangra's sworn testimony confirms that: (1) he will only discuss the city's public business with his fellow council members at city council meetings; and (2) he no longer uses his e-mail for his work as a member of the city council. *See* CR.102-03; RR.66-67. Under the circumstances, Appellants clearly do not meet the second prong of the "capable of repetition" exception.

As to the first prong of the "capable of repetition" exception, the Supreme Court has noted that this prong is applied to events of uniquely short duration that, by their very nature, foreclose a litigant's ability to obtain relief before the circumstances giving rise to the injury no longer exist. *See Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115, 125-26 (1974). Thus, the doctrine has typically been applied to cases involving labor strikes, pregnancies, or elections. *See Odom*, 198 Fed. Appx. at 352. But because events like those at issue here do not by their nature expire too quickly for judicial intervention, Appellants also do not meet the first

24

prong of the "capable of repetition" test.  In sum, Appellants meet neither prong of the "capable of repetition" test, the mootness doctrine applies, and the case remains non-justiciable.

## II.    IF APPELLANTS' CASE PRESENTS A JUSTICIABLE CONTROVERSY, THE DISTRICT COURT'S DECISION SHOULD BE AFFIRMED BECAUSE §551.144 OF THE TOMA DOES NOT REGULATE SPEECH OR CONDUCT PROTECTED BY THE FIRST AMENDMENT.

In a First Amendment challenge to governmental action affecting public employees, in this case the operation of a statute, a two-step inquiry is required.  First, the Court must determine whether the complained-of governmental action restricts speech expressed as a citizen on a matter of public concern.  *See Connick*, 461 U.S. at 140; *Pickering*, 391 U.S. at 568.  If the restriction does not affect speech expressed both "as a citizen" and "on matters of public concern," the First Amendment claim must fail.  *See Garcetti*, 126 S.Ct. at 1958.  Only if the restriction limits speech expressed both as a citizen and on matters of public concern, does "the possibility of a First Amendment claim arise[]," and at that point the second question arises whether there is an "adequate justification" for the governmental restriction "treating the employee differently from any other member of the general public."  *Id.*

Because §551.144 regulates only conduct and speech of members of a governmental body acting in their capacity as public officials, rather than as private

citizens, it does not impact speech protected by the First Amendment.  Accordingly, Appellants had no valid claim under the First Amendment, and the district court correctly denied such claims.

**A.     A Public Employee Has No First Amendment Interest in Speech Expressed in Performing His Job Duties.**

**1.     The development of constitutional doctrine regarding public employee speech prior to *Pickering*.**

As interpreted for most of the nation's history, the First Amendment placed no limitation on a public employer's ability to restrict or otherwise take action against a public employee on the basis of the employee's speech.  The First Amendment was thought to apply when the government acted as sovereign with respect to citizens, but not when it acted as employer with respect to employees.  In the latter capacity, the government was treated like any other employer.  As described by Justice Holmes, a policeman "may have a constitutional right to talk politics, but he has no constitutional right to be a policeman."  *McAuliffe v. Mayor of New Bedford*, 29 N.E. 517, 517 (Mass. 1892).

For many years, "Holmes' epigram expressed this Court's law."  *Connick*, 461 U.S. at 144.  Indeed, as recently as 1952, in *Adler v. Board of Education*, 342 U.S. 485 (1952), the Court relied on the principle that public school teachers "have the right under our law to assemble, speak, think, and believe as they will," but "have no

26

right to work for the State in the school system on their own terms." *Id.* at 492. The Court modified its view, however, in "a series of cases arising from the widespread efforts in the 1950's and early 1960's to require public employees, particularly teachers, to swear oaths of loyalty to the state and reveal the groups with which they associated." *Connick*, 461 U.S. at 144 (citations omitted). Thus, 15 years after *Adler*, the Court explained that "constitutional doctrine which has emerged since that decision has rejected its major premise," which was that "public employment, including academic employment, may be conditioned upon the surrender of constitutional rights which could not be abridged by direct government action." *Keyishian v. Bd. of Regents*, 385 U.S. 589, 605 (1967).

In the loyalty-oath cases, the Court invalidated statutes and actions that conditioned public employment on general oaths of loyalty and the disclosure of private associations. Those decisions thus preserved public employees' right "to participate in public affairs." *Connick*, 461 U.S. at 144-45. The Court's subsequent decision in *Pickering* "followed from this understanding of the First Amendment." *Id.* at 145.

## 2.     The "*Pickering* Balance" and public employee speech.

The plaintiff in *Pickering* was a public-school teacher who was fired for writing a letter to a newspaper that criticized the way the school board had attempted to raise revenue.  In upholding the teacher's First Amendment claim, the Court said that, insofar as the lower court had concluded that public-school teachers "may constitutionally be compelled to relinquish the First Amendment rights they would otherwise enjoy as citizens to comment on matters of public interest in connection with the operation of the public schools," the decision rested on a premise that had been rejected by the Court.  391 U.S. at 568.

At the same time, the Court recognized that "it cannot be gainsaid that the State has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general."  *Id.*  To resolve a First Amendment claim in this type of case, the Court said, it is thus necessary to balance "the interests of the [employee], as a citizen, in commenting upon matters of public concern" and "the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees."  *Id.*

In striking the balance in the plaintiff's favor in *Pickering*, the Court described the case before it as one in which a teacher made "public statements upon issues then

28

currently the subject of public attention" that were "critical of his ultimate employer" but did not "impede[] the teacher's proper performance of his daily duties in the classroom" or "interfere[] with the regular operation of the schools generally." *Id.* at 572-73. Under these circumstances, the Court concluded that "the interest of the school administration in limiting teachers' opportunities to contribute to public debate is not significantly greater than its interest in limiting a similar contribution by any member of the general public." *Id.* at 573. Making a similar point later in the opinion, the Court said that, "in a case such as the present one, in which the fact of employment is only tangentially and insubstantially involved in the subject matter of the public communication made by a teacher," the employee must be regarded as "the member of the general public he seeks to be." *Id.* at 574.

> **3.** **From *Connick* to *Garcetti*, under the "*Pickering* Balance" test only public employee speech made "as a citizen" and "on a matter of public concern" raises the possibility of a First Amendment Claim.**

Fifteen years after *Pickering*, in *Connick*, the Court "return[ed] to th[e] problem" of striking a balance between the interests of a public employee and those of a public employer. *Connick*, 461 U.S. at 140. In rejecting the First Amendment claim in *Connick*, the Court explained that "[t]he repeated emphasis in *Pickering* on the right of a public employee 'as a citizen, in commenting upon matters of public

concern,' was not accidental." *Id.* at 143. That language, the Court said, "reflects both the historical evolvement of the rights of public employees, and the common sense realization that government offices could not function if every employment decision became a constitutional matter." *Id.*

Thus, *Connick* instructed that when the public employee speech at issue is not speech expressed "as a citizen upon matters of public concern," any First Amendment claim should be rejected without the need for any balancing of the interests of the employee and the employer. *Id.* at 147. *Connick* also made clear that the responsibility of federal courts is merely to "ensure that citizens are not deprived of fundamental rights by virtue of working for the government." *Id.*

Just last term, the Court revisited and further clarified the *Pickering* test in *Garcetti*. The *Garcetti* case was brought by Richard Ceballos, a deputy district attorney in Los Angeles. 126 S.Ct. at 1955. Ceballos was contacted by a defense attorney concerning a case being prosecuted by the district attorney's office. *Id.* The defense attorney believed there were inaccuracies in the affidavit of a deputy sheriff who obtained a search warrant critical to the prosecution's case. *Id.* Ceballos investigated the case, reached the conclusion that the search warrant might have been improperly obtained, and wrote a memorandum to his supervisors recommending that the case be dismissed. *Id.* at 1955-56.

Ceballos's supervisors chose not to follow his advice, and decided to proceed with the prosecution pending disposition of the defense counsel's motion challenging the warrant. *Id.* at 1956. The trial court held a hearing concerning the motion, at which Ceballos was called as a witness by the defense and recited his observation regarding the sheriff's affidavit. *Id.* The trial court rejected the challenge to the warrant. *Id.* Ceballos subsequently brought suit alleging that, after these events, he was subjected to adverse and retaliatory employment actions violating his First Amendment rights. *Id.*

The Court began its analysis in *Garcetti* by reaffirming the principle that "[w]hen a citizen enters government service, the citizen by necessity must accept certain limitations on his or her freedom." *Id.* at 1958 (citing *Waters*, 511 U.S. at 671). The Court confirmed that *Pickering* and its progeny "identify two inquiries to guide interpretation of the constitutional protections accorded to public employee speech." *Id.* First, it must be determined if the public employee speech at issue constitutes speech "as a citizen" and "on a matter of public concern." *Id.* The Court explained that these two phrases exist as independent prerequisites which must each be met. *Id.* If neither of these prerequisites are met, the speech is not protected by the First Amendment. *Id.* If both prerequisites are met, the Court stated that "[t]he possibility of a First Amendment claim arises," and the question presented is whether

31

there is an "adequate justification" for the governmental restriction "treating the employee differently from any other member of the general public." *Id.*[8]

Thus, under the *Pickering* test as further defined by *Connick* and *Garcetti*, a public employee's speech expressed as part of their official duties is not protected by the First Amendment.

### B.  Because the Provisions of §551.144 of the TOMA, on Their Face, Only Regulate the Conduct and Speech of Members of a Governmental Body Acting Within Their Official Duties, They Do Not Implicate Speech Protected Under the First Amendment.

Section 551.144 generally prohibits a member of a governmental body from the following actions: (1) knowingly organizing or assisting in organizing an impermissible closed meeting; (2) knowingly closing a meeting to the public (or assisting in doing so); and (3) knowingly participating in such an impermissible closed meeting. *See* TEX. GOV'T CODE §551.144(a).  The term "meeting" as used in §551.144 is defined  to mean the following:

> (A) a deliberation between a quorum of a governmental body, or between a quorum of a governmental body and another person, during which public business or public policy over which the governmental

---

8. The Court went on to apply the *Pickering* test to the facts of Ceballos's case.  The Court stated that Ceballos was not acting "as a citizen" when he conducted his daily professional activities, and therefore because Ceballos's "expressions were made pursuant to his duties as a [deputy district attorney]," they did not meet the prerequisites for First Amendment protection and his claim failed. *Id.* at 1959-60.

body has supervision or control is discussed or considered or during which the governmental body takes formal action; or

(B) except as otherwise provided by this subdivision, a gathering:

>(i) that is conducted by the governmental body or for which the governmental body is responsible;
>
>(ii) at which a quorum of members of the governmental body is present;
>
>(iii) that has been called by the governmental body; and
>
>(iv) at which the members receive information from, give information to, ask questions of, or receive questions from any third person, including an employee of the governmental body, about the public business or public policy over which the governmental body has supervision or control.

TEX. GOV'T CODE §551.001(4).

On their face, the provisions of §551.144, and the related definitions in §551.001 of the TOMA,[9] concern a person's official duties. As the district court correctly explained: "Because [any] speech [addressed by §551.144] is uttered entirely in the speaker's capacity as a member of a collective decision-making body, and thus is the kind of communication in which he or she is required to engage as part

---

9. The Act also defines the term "deliberation," as used in the description of a "meeting" under the TOMA, as "a verbal exchange during a meeting between a quorum of a governmental body, or between a quorum of a governmental body and another person, concerning an issue within the jurisdiction of the governmental or any public business." TEX. GOV'T CODE §551.001(2).

33

of his or her official duties, it is not protected by the First Amendment." CR.461; RA.98 (citing *Garcetti*, 126 S.Ct. at 1959-60).

In other words, just as the plaintiff in *Garcetti* did not "act[] as a citizen when he went about conducting his daily professional activities," 126 S.Ct. at 1958, when members of a governmental body undertake actions implicating §551.144 of the TOMA, such as knowingly participating in deliberations of a quorum of the governmental body concerning the public business for which they are responsible, they are not acting "as citizens," but rather as public employees, *id*. Accordingly, as the district court correctly concluded, §551.144 does not regulate or restrict speech protected by the First Amendment. *See id.*; *see also* CR.462; RA.99.

### C. The *Pickering* Test, as Further Defined by *Connick* and *Garcetti*, Applies to Elected Public Officials.

Appellants attempt to evade *Garcetti* by asserting that the *Pickering* test is inapplicable to elected officials. *See* Appellants' Br. 38-39. But because both this Court and other federal courts have routinely applied the *Pickering* test to elected public officials, this contention is without merit.

In *Scott v. Flowers*, 910 F.2d 201 (5th Cir. 1990), this Court recognized that *Pickering* applies to elected officials, and is not limited to non-elected public employees. The *Scott* case involved an elected justice of the peace who wrote an

34

"open letter" to officials in his county raising concerns about injustices he perceived in his county's judicial system. *Id.* at 203-04. The letter was circulated to the local press, and resulted in several newspaper articles concerning the issue raised in the judge's letter. *Id.* at 204. Subsequently, based on these actions, the Texas Commission on Judicial Conduct issued a formal public reprimand of the judge. *Id.* The judge filed suit against the members of the Commission, alleging that his letter, and comments to reporters connected with the letter, were protected speech for which he could not constitutionally be subject to discipline. *Id.* at 205.

In resolving the elected official's First Amendment claim in *Scott*, the Court applied the *Pickering* test that is typically applied in public employee speech cases. *See id.* at 210-13. The Court began its *Pickering* analysis by concluding that the judge's open letter, as well as his comments to the press connected with the letter, "addressed matters of legitimate public concern," *id.* at 211, and that, "in airing his views on the administration of the [county's] justice system, [the elected judge] was speaking not as an employee about matters of merely private interest, but rather as an informed citizen regarding a matter of great public concern." *Id.* (internal quotation omitted).

Based on these conclusions, the Court reasoned that the case presented a potential First Amendment violation, and went on to apply the last step of the

*Pickering* test.  Specifically, the Court considered whether "[the judge's] right to speak [was] outweighed by the state's asserted interest in promoting the efficiency and impartiality of its judicial system."  *Id.*

At this point in its analysis, the Court acknowledged that an elected official like the judge was not a "typical" public employee because he was "chosen directly by the voters of his justice precinct, and, at least in ordinary circumstances, removable only by them."  *Id.* at 211-12.  Nonetheless, the Court did not — as Appellants seem to suggest— reject the application of *Pickering* to elected officials or conclude that they are not "public employees."  The Court instead weighed the judge's status within the *Pickering* test, stating that because "it was not unexpected that [an elected judge] . . . would be willing to speak out against what he perceived to be serious defects in the administration of justice in his county," the Commission carried a more difficult burden under *Pickering* to "demonstrate that its concededly legitimate interest in protecting the efficiency and impartiality of the state judicial system outweigh[ed] [the judge's] first amendment rights."  *Id.* at 212.  The Court ultimately concluded that the Commission's interest did not outweigh the judge's free speech interest, and held that the Commission could not constitutionally reprimand him for his actions.  *Id.* at 213.

Because this Court has made clear that the *Pickering* public employee speech test applies to elected officials, the district court properly applied *Pickering*—as further defined by *Garcetti*—to the claims made by Appellants.[10]

### D.     Appellants' Reliance upon the *Wood* and *Bond* Cases is Misplaced.

Appellants also argue that two pre-*Pickering* decisions support their contention that, as elected officials, their speech on matters of public concern should be exempt from the TOMA.  Appellants particularly rely upon *Wood v. Georgia*, 370 U.S. 375 (1962), and *Bond v. Floyd*, 385 U.S. 116 (1966).  *See* Appellants' Br. 38-39.  But these cases do not stand for the principle argued by Appellants — that even when going about their official duties, as opposed to speaking as private citizens — elected officials' speech is protected under the First Amendment.

The *Wood* case involved a sheriff who submitted written statements to the local press criticizing the handling of a criminal matter that was pending before a grand jury.  *Wood*, 370 U.S. at 380-81.  The sheriff was cited for contempt, and at the ensuing hearing it was stipulated that, in making his written statements he was acting as a private citizen, and not as the sheriff.  *Id.* at 382.  In deciding that the sheriff

---

10.   Since it was issued last year, federal courts are routinely applying *Garcetti* to elected officials. *See, e.g.*, *Hartman v. Register*, No. 1:06-CV-33, 2007 WL 915193, at *6 (S.D. Ohio March 26, 2007) (applying *Garcetti* to the elected chairman of a township board of trustees); *Hogan v. Township of Haddon*, No. 04-2036 (JBS), 2006 WL 3490353, at *7 (D.N.J. Dec. 1, 2006) (applying *Garcetti* to an elected township commissioner).

37

could not be held in contempt consistent with the First Amendment, the Court's decision turned on the fact that the sheriff's political speech to the press had no bearing on and did not impede his official duties as a sheriff, and that he should be permitted to make known to the public his personal political beliefs. *Id.* at 394-95.

Similarly, the *Bond* case involved an elected representative who made public statements concerning his personal beliefs about — and particularly criticisms of — the Vietnam war. *Bond*, 385 U.S. at 121-22. As a result of these statements, the Georgia House of Representatives excluded Bond from the House based on their view that he could not, with sincerity, take the appropriate oaths of loyalty to enter office. *Id.* at 123, 132. In upholding Bond's First Amendment claim, the Court's decision again turned on the fact that Bond made public statements concerning his personal views on matters of public concern. *Id.* at 136.

Neither *Bond* nor *Wood* stand for the principle advocated by Appellants: that elected officials, acting within their official duties, have a First Amendment right to conduct public business in private. Rather, these cases stand for the principle — inapplicable here but recognized under *Pickering* and its progeny — that when public employees engage in speech "as citizens" on matters of public concern, restrictions or adverse government action associated with such speech raises potential First Amendment claims. But because §551.144 concerns only conduct and speech

38

activities of members of a governmental body acting in their official capacity, rather than as private citizens, *Bond* and *Wood* are inapposite.[11]

**III.    IF §551.144 OF THE TOMA REGULATES SPEECH PROTECTED BY THE FIRST AMENDMENT, THE DISTRICT COURT'S DECISION SHOULD BE AFFIRMED BECAUSE THE STATUTE IS NEITHER OVERBROAD NOR VOID FOR VAGUENESS.**

The application of the *Pickering* public employee speech test, particularly after the Supreme Court's recent *Garcetti* decision, confirms that Appellants failed to state a cause of action for a violation of speech rights protected by the First Amendment. *See supra* Section II.  But even if the Court determines that Appellants' suit is not foreclosed under *Pickering*, their overbreadth and vagueness challenges to §551.144 of the TOMA are without substantive merit.

Appellants assert a facial challenge to §551.144 of the TOMA, *see* Appellants Br. 23, and base this challenge on the twin First Amendment doctrines of overbreadth and vagueness.  *See*, *e.g.*, Appellants' Br. 28-34.  Under the overbreadth doctrine, when a law punishes a substantial amount of protected free speech, judged in relation to the statute's plainly legitimate sweep, the law may not be enforced "[u]ntil and

---

11.   Appellants also contend that §551.144 is unconstitutional because nothing in the *Pickering* line of cases or the public employee speech doctrine "permits the state to imprison employees or officeholders."  Appellants' Br. 37.  But whether a statute has criminal or civil penalties has nothing to do with whether the underlying conduct is protected by the First Amendment.  *See*, *e.g.*, *Home Depot, Inc. v. Guste*, 773 F.2d 616, 628 (5th Cir. 1985) ("the fact that a statute imposes criminal penalties in no way changes the rule that a statute challenged as facially vague must be vague in all its applications before it will be held unconstitutional").

unless a limiting construction or partial invalidation so narrows it as to remove the seeming threat or deterrence to constitutionally protected expression." *Broadrick*, 413 U.S. at 613. To survive a vagueness challenge, a statute must "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). Because §551.144 does not punish a substantial amount of protected free speech judged in relation to its legitimate sweep, and because it provides sufficient guidance to an ordinary person to understand the conduct it prohibits, the statute is neither overly broad nor void for vagueness.

### A.    Section 551.144 of the TOMA Is Not Overly Broad.

As the district court observed, overbreadth and vagueness are related but distinct concepts. CR.463; RA.100 (citing *J&B Entm't, Inc.*, 152 F.3d at 366.). And, "in cases involving a facial challenge to the overbreadth and vagueness of a statute, a court should first consider whether the statute is overbroad, and, assuming that it is not, then whether it is unconstitutionally vague." *CISPES*, 770 F.2d at 472 (citation omitted).

40

1.      **The overbreadth doctrine is "strong medicine" that is applied "only as a last resort" to strike down a statute on its face.**

The traditional rule is that courts will not assess the constitutionality of a statutory provision apart from its particular applications.  *See Broadrick*, 413 U.S. at 610.  The overbreadth doctrine "is one of the few exceptions to this principle and must be justified by 'weighty countervailing policies.'" *New York v. Ferber*, 458 U.S. 747, 768 (1982) (quoting *United States v. Raines*, 362 U.S. 17, 22-23 (1960)).

The doctrine originated in *Thornhill v. Alabama*, 310 U.S. 88 (1940), when the Court "concluded that the very existence of some broadly written statutes may have such a deterrent effect on free expression that they should be subject to challenge even by a party whose own conduct may be unprotected." *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 798 (1984).  The Court has observed: "This exception from the general rule is predicated on 'a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression.'" *Id.* at 799 (quoting *Broadrick*, 413 U.S. at 612).  The Court has also acknowledged, however, that "[b]ecause of the wide-reaching effects of striking down a statute on its face . . . we have recognized that the overbreadth doctrine is 'strong medicine' and have employed it with

41

hesitation, and then 'only as a last resort.'" *Ferber*, 458 U.S. at 769 (quoting *Broadrick*, 413 U.S. at 613).

A party bringing a facial challenge, even one under the First Amendment, "bears the burden of demonstrating" a statute's unconstitutional overbreadth. *Virginia v. Hicks*, 539 U.S. 113, 122 (2003). To meet that burden, it is not enough to show some overbreadth. Rather, "the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Broadrick*, 413 U.S. at 615.

> **2.     Texas interprets and enforces the TOMA, including §551.144, according to its purpose and unambiguous terms.**

As the Supreme Court has stated: "[A] federal court must determine what a state statute means before it can judge its facial constitutionality," *Broadrick*, 413 U.S. at 618 n.16, and in making such determination, federal courts look to relevant interpretations of the statute provided by both state courts and other state officials or agencies authorized to interpret the statute.[12]

---

12. *See, e.g.*, *Broadrick*, 413 U.S. at 618-19 (in analyzing a facial challenge to an Oklahoma statute, the Court considers the Oklahoma Attorney General and the Oklahoma State Personnel Board's interpretations of the statute); *Gooding v. Wilson*, 405 U.S. 518, 525-26 (1972) (in analyzing a facial challenge to a Georgia statute, the Court considers decisions of the state appellate courts interpreting the relevant statutory language).

Here, the language of the TOMA (including §551.144 and relevant definitions in the statute), together with the provisions of the state Code Construction Act, as well as opinions of the Texas Attorney General and Texas courts, all provide significant guidance in understanding the challenged statute.  Simply put, Texas interprets and enforces the TOMA, including §551.144, according to its purpose and unambiguous terms.  A member of a governmental body violates §551.144 when he knowingly circumvents, or aids in circumventing, the TOMA's requirement that meetings of a quorum of a governmental body to consider  public issues and policy under its control must be conducted openly before the public, and not secretly behind closed doors.  *See* TEX. GOV'T CODE §§551.001-.002, .144.

Texas's Code Construction Act provides that, in interpreting §551.144, the Court should presume that the Texas Legislature intended to comply with both the United States Constitution and the Texas Constitution when it enacted this statutory provision.  TEX. GOV'T CODE §311.021.  Likewise, to the extent any question is raised regarding ambiguity or lack of clarity in §551.144, the Code Construction Act dictates that the Court should interpret any such alleged ambiguity in the context of, *inter alia*, the object sought to be attained by the statute and administrative construction of the statute.  *Id.* §311.023.

43

The Texas Supreme Court has confirmed both its understanding of the purpose of the TOMA and how its provisions should be interpreted. The court has acknowledged that the TOMA was enacted "for the purpose of assuring that the public has the opportunity to be informed concerning the transactions of public business." *Acker v. Tex. Water Comm'n*, 790 S.W.2d 299, 300 (Tex. 1990) (internal quotation omitted). It further observed that the TOMA ensures that: "[t]he executive and legislative decisions of our governmental officials as well as the underlying reasoning must be discussed openly before the public rather than secretly behind closed doors." *Id.* And the court confirmed that it has "demanded exact and literal compliance with the terms of [the TOMA]." *Id.* (citation omitted).

Nor has the Texas Supreme Court construed the TOMA so as to create any ambiguity or overbreadth in the statutory requirements enforced by §551.144 — *i.e.*, that a quorum of members of a governmental body may not deliberate in private about public business over which they have control. Interpreting the relevant provisions of the TOMA forbidding closed meetings and defining the term "meeting," the court stated that "[w]hen a majority of a public decisionmaking body is considering a pending issue, there can be no 'informal' discussion. There is either formal

consideration of a matter in compliance with [the TOMA] or an illegal meeting." *Id.*[13]

Texas courts have also held that, when a member of a governmental body engages in speech as part of his official duties, he is not acting as a private citizen, and compliance with the TOMA does not violate the First Amendment. In *Hays County Water Planning P'ship v. Hays County*, 41 S.W.3d 174 (Tex. App.—Austin 2001, pet. denied), a Texas appellate court considered whether statements made by an elected official at a meeting of a county commissioner's court were protected by the First Amendment and therefore not subject to restriction under the TOMA. *Id.* at 181.[14]   The court rejected this argument, concluding that the commissioner's remarks at the meeting of the governmental body "were not those of a private citizen but of an elected official," and under such circumstances "requiring compliance with [the TOMA] [did] not violate the First Amendment." *Id.* at 182.

Finally, the Texas Court of Criminal Appeals has made clear that §551.144's requirement that a member of a governmental body only violates the TOMA when he acts "knowingly" does not require that the individual knew their conduct violated the

---

13.   These provisions are now found at §§551.001-002 of the Texas Government Code.

14.   In fact, the state trial court had agreed with the argument, stating that "the subject matter of the [commissioner's] presentation was a matter of public concern.  As such, it is protected First Amendment speech." *Id.*

Act, but rather only that he knew he was undertaking the actions forbidden by §551.144. *Tovar v. State*, 978 S.W.2d 584, 586-87 (Tex. Crim App. 1998). Thus, for example, it is clear under *Tovar* that a member of a governmental body who (1) knowingly attends a meeting of a quorum of that body where public business or policy under the control of the body is discussed (and the public is excluded), and (2) the meeting is not otherwise permitted under the TOMA will be subject to the provisions of §551.144, even if he did not know that attending the meeting violated the Act. *See id.*

> **3.     The district court correctly concluded that Appellants did not and cannot establish that §551.144 should be struck down on its face under the overbreadth doctrine.**

The "plainly legitimate sweep" of §551.144 of the TOMA is considerable. It prohibits members of a governmental body from knowingly circumventing, or aiding in circumventing, the TOMA's requirement that meetings of a quorum of a governmental body to consider public issues and policy under its control must be conducted openly before the public, and not privately. *See* TEX. GOV'T CODE §§551.001, .144. Section 511.144, on its face, does not purport to restrict speech made by a single member of a governmental body "as a citizen," and does not substantially restrict speech protected by the First Amendment. *See Garcetti*, 126 S.Ct. at 1958.

In order to sustain their overbreadth challenge, Appellants must demonstrate that when judged in relation to its considerable legitimate sweep, §551.144 nonetheless punishes a substantial amount of protected free speech. *Broadrick*, 413 U.S. at 615. Appellants cannot, however, meet this burden of proof, because §551.144 only restricts speech expressed as part of a member of a governmental body's official duties — *i.e.* speech that *Garcetti* instructs is not protected under the First Amendment. *See supra* Section II.

Unable to articulate what "substantial amount of protected free speech" is prohibited by §551.144 of the TOMA, Appellants have premised their principal overbreadth argument on an erroneous construction of the statute that has no basis in Texas law — their view that §551.144 has no "scienter" requirement. *See* Appellants' Br. 11-16. This is simply wrong. The statute only prohibits conduct that is undertaken "knowingly," *see* TEX. GOV'T CODE §551.144(a), and Texas courts have recognized that the statutory term "knowingly" constitutes a scienter requirement.[15] Indeed, the Latin root of "scienter" means "knowingly," BLACK'S LAW DICTIONARY 1373 (8th ed. 2004), and the term is now defined as: "A degree of

---

15.  *See, e.g.*, *Tracker Marine, L.P. v. Ogle*, 108 S.W.3d 349, 353 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (collecting state consumer protection statutes, and noting that "The mental state required for a violation varies from intentionally, to knowingly, to no apparent scienter requirement at all."); *Clark v. State*, 12 S.W.2d 792, 793 (Tex. Crim. App. 1928) ("[W]e know of no instance where this court has held it necessary to allege that an act was 'knowingly' done, save where scienter was made an ingredient of the offense by statute.").

47

knowledge that makes a person legally responsible for the consequences of his or her act or omission; the fact of an act's having been done knowingly, esp. as a ground for civil damages or criminal punishment," *id.* The scienter requirement in §551.144 limits the reach of the statute to those situations where a public official *knows* he is engaging in the conduct that violates TOMA's open government requirements. The reach of the statute does not include accidents.

Appellants also argue that the facts underlying Rangra and Monclova's case illustrate that §551.144 is overbroad because "the receipt of an e-mail suffices to violate the law." Appellants' Br. 24. But this argument mischaracterizes both the plain language of the statute and the facts of this case.

Under §551.144, simply receiving an e-mail from a fellow member of a governing body does not — in and of itself — violate the statute. Rather, to run afoul of §551.144, a member must knowingly *act* to circumvent the TOMA's prohibition on closed meetings. *See* TEX. GOV'T CODE §551.144. Although Texas courts and the Attorney General have confirmed that a quorum of a governmental body can meet for the purposes of §551.144 without being physically present at the same place at the same time,[16] the Act only punishes members of a governing body who knowingly *take*

---

16. *See Hitt v. Mabry*, 687 S.W.2d 791, 798 (Tex. App.—San Antonio 1985, no writ) (affirming an injunction entered by the trial court prohibiting school district's board of trustees from arriving at a decision involving public business or public policy under their control by way of private

*action* to organize, aid in organizing, or participate in an impermissible closed meeting. *See* TEX. GOV'T CODE §§551.001-002, .144.

Appellants also exaggerate the circumstances of their own case. Monclova was never prosecuted in connection with the October 2004 e-mail exchange, and the uncontroverted testimony of Appellee Brown establishes that she was advised repeatedly that she was not under any threat of prosecution. RR.44. Rangra, on the other hand, acknowledged receiving Katie Elms-Lawrence's e-mail and then sending a response e-mail to her the next day, copying the two other council members (Monclova and Payne) that were copied on Elms-Lawrence's original mail. CR.66; RA.21. Because Rangra and Elms-Lawrence sent e-mails to a quorum of the city council discussing public business over which the council had control, their *actions* at least arguably invoked the provisions of §551.144. It is surely possible for an e-mail to violate the statute; the relevant question is whether a particular e-mail *did* violate the statute, and if so, whether it was also protected speech under the First Amendment. *See supra* Section II.

---

informal meetings or conferences, including telephone polls of members of the board); Op. Tex. Att'y Gen. No. DM-95 (1992), 1992 WL 525150, at 3-4 (noting that after *Hitt* it is clear that the requirements of the TOMA cannot be evaded simply by avoiding the physical presence of a quorum in a single place at a single time).

But even if §551.144 could not have been constitutionally *applied* to Rangra based on the First Amendment, a single impermissible application cannot sustain this *facial* overbreadth challenge. The Supreme Court has explained that although "[t]he concept of 'substantial overbreadth' is not readily reduced to an exact definition," it is nonetheless clear "that the mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." *Vincent*, 466 U.S. at 800. Rather, "there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the court," in order to sustain an overbreadth challenge. *Id.* at 801. And this is so because "there comes a point at which the chilling effect of an overbroad law, significant though it may be, cannot justify prohibiting all enforcement of that law." *Hicks*, 539 U.S. at 119. In this regard, the Court has admonished that "there are substantial social costs *created* by the overbreadth doctrine when it blocks application of a law to constitutionally unprotected speech, or especially constitutionally unprotected conduct." *Id.* Appellants have not and cannot meet the significant burden of proof to establish that §551.144 should be struck down in its entirety under the First Amendment overbreadth doctrine.

## B.    The District Court Correctly Concluded That §551.144 Is Not Void for Vagueness.

A statute is not void for vagueness if it "give[s] the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Grayned*, 408 U.S. at 108.  The Constitution, however, neither imposes "impossible standards of clarity," *Kolender v. Lawson*, 461 U.S. 352, 361 (1983) (internal quotation marks and citation omitted), nor requires "mathematical certainty" from statutory language.  *Grayned*, 408 U.S. at 110.  Instead, if it is "clear what the [statute] as a whole prohibits," it will not be declared unconstitutionally vague.  *Id.* Thus, "speculation about possible vagueness in hypothetical situations not before the Court will not support a facial attack on a statute when it is surely valid in the vast majority of its intended applications."  *Hill v. Colorado*, 530 U.S. 703, 733 (2000) (internal quotation marks and citation omitted).

Appellants argue that §551.144 is "so unclear that ordinary people cannot decipher what is prohibited, and it lacks minimal guidelines by which to govern law enforcement."    Appellants' Br. 33.    But in support of this broad contention, Appellants mention only two examples of the statute's purportedly unconstitutional vagueness, neither of which provide support for their facial attack on the statute.

51

First, Appellants point to the fact that the Texas Government Code now requires each elected or appointed public official who is a member of a governmental body subject to the Open Meetings Act to complete a course of training under the Act. *Id.* (citing TEX. GOV'T CODE §551.005). Second, Appellants contend that the lack of "minimal guidelines" in §551.144 is established by Attorney General Opinion JC-0169 (2000), which addressed the question whether a governmental body may permit members of the public to offer comments at public meetings regarding matters not specified in the posted meeting notice. *Id.* (citing Op. Tex. Att'y Gen. No. JC-0169 ( 2000), 2000 WL 52817).

If the Court were to accept Appellants' first proposition — that the fact that the Act requires training for members of governmental bodies subject to its provisions means it is unconstitutionally vague — the repercussions of such a decision are significant, to say the least. At a minimum, this would mean that the TOMA in its entirety, rather than just §551.144, would necessarily be void for vagueness. And such a decision would have broad-ranging ramifications outside the context of the TOMA. The Texas Legislature often requires officials to be trained on the requirements of statutes. For example, in 1999, the Legislature mandated that all state agency employees receive training every two years on "employment discrimination, including employment discrimination involving sexual harassment."

52

TEX. LABOR CODE §21.010.  But the Texas Commission on Human Rights Act, TEX. LABOR CODE ch. 21, is not therefore unconstitutionally vague.  *Cf. United States v. Lanier*, 520 U.S. 259, 264-65 (1997) (criminal analog to 42 U.S.C. §1983 gave defendant fair warning of prohibition of sexual harassment).  The Court should reject Appellants' invitation to equate training on a statute's requirements with the facial invalidity of the statute under the vagueness doctrine.

Appellants' contention that reviewing Attorney General Opinion JC-0169 leads to the conclusion that §551.144 of the TOMA must be struck down as unconstitutionally vague is equally without merit.  The opinion concerned the notice requirements under the Act, which requires that '[a] governmental body shall give written notice of the date, hour, place, and subject of each meeting held by the governmental body." TEX. GOV'T CODE §551.041. The opinion request presented the question whether a governmental body may permit members of the public to offer comments at public meetings regarding matters not specified in the posted meeting notice.  Op. Tex. Att'y Gen. No. JC-0169, 2000 WL 52817, at 1.

The opinion observes that a governmental body typically can learn in advance the subject matter of the reports or briefings to be given at its meetings by employees or consultants, and therefore without difficulty provide notice of the subject matter of such presentations.  *Id.* at 3.  The opinion goes on to explain that, unlike such

briefings and presentations, public-comment sessions pose unique difficulties for the governmental body in predicting the subject matter of citizen comments and questions, yet these public comment sessions have traditionally formed a part of public meetings. *Id.* Because the Attorney General discerned no legislative intent to abolish public-comment sessions, his opinion concludes that these sessions are permitted under the Act, and the notice may reflect this portion of the meeting as, *inter alia*, a "public comment" portion of the meeting. *Id.*

Attorney General Opinion JC-0169 certainly does not illustrate that the TOMA, and particularly §551.144, is incomprehensible or lacking in "minimum guidelines." Rather, it only reflects the fact that because the language of the TOMA is not framed with "mathematical certainty," *Grayned*, 408 U.S. at 110, questions will arise regarding the application of the statute to particular events and circumstances.

Section 551.144 is a statute with a readily understandable and constitutionally unproblematic center. It prohibits exactly what it was intended to prohibit: the knowing circumvention by members of a governmental body of the TOMA's requirement that consideration of public issues and public policy controlled by that body must be conducted in public, and not in secret. In sum, it is not a statute that "simply has no core." *Smith v. Goguen*, 415 U.S. 566, 578 (1974). The district court correctly rejected Appellants' vagueness challenge.

54

**CONCLUSION**

For these reasons, Appellees pray that the Court hold that the case does not present a justiciable controversy and enter a dismissal order, or alternatively, that the order of the District Court be affirmed in all respects.

Respectfully submitted,

GREG ABBOTT
Attorney General of Texas

KENT C. SULLIVAN

First Assistant Attorney General

DAVID S. MORALES

Deputy Attorney General for Civil Litigation

R. TED CRUZ

Solicitor General

_____

SEAN D. JORDAN
Deputy Solicitor General
Texas Bar No. 00790988

JAMES TODD
Assistant Attorney General

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC-059)
Austin, Texas 78711-2548
[Tel.]: (512) 936-1700
[Fax]: (512) 474-2697

COUNSEL FOR APPELLEE GREG ABBOTT

J. STEVEN HOUSTON


_____
P.O. Box 388
Marathon, Texas 79842
State Bar No. 10054300
[Tel.]: (432) 386-6054
[Fax]: (432) 386-4203

COUNSEL FOR DEFENDANT FRANK D. BROWN

## CERTIFICATE OF SERVICE

The undersigned counsel of record does hereby certify that two true and correct copies of Appellees' Brief, along with a computer readable disk copy of the brief, was served via UPS (Next Day Air Delivery), on June 22, 2007, to:

Dick DeGuerin
DEGUERIN, DICKSON & HENNESSEY
1018 Preston Ave., 7th Floor
Houston, Texas 77002

Arvel Rodolphus Ponton, III
2301 N. Highway 118
P.O. Box 9760
Alpine, Texas 79831

Counsel also certifies that on June 22, 2007, Appellees' Brief, 7 paper copies thereof, and one computer-readable disk copy in Adobe Portable Document Format, was dispatched to the clerk, as addressed below, via UPS (Next Day Air Delivery):

Mr. Charles R. Fulbruge III, Clerk
U.S. Court of Appeals for the Fifth Circuit
600 Maestri Place
New Orleans, Louisiana 70130

_____
SEAN D. JORDAN

58

## CERTIFICATE OF COMPLIANCE
With Type-Volume Limitation, Typeface Requirements,
and Type Style Requirements

1.  This brief complies with the type-volume limitation of FED. R. APP. P.
    32(a)(7)(B) because:

    [X] this brief contains 12,829 words, excluding the parts of the brief exempted
    by FED. R. APP. P. 32(a)(7)(B)(iii), *or*

    [ ] this brief uses a monospaced typeface and contains [*state the number of*]
    lines of text, excluding the parts of the brief exempted by FED. R. APP. P.
    32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5)
    and the type style requirements of FED. R. APP. P. 32(a)(6) because:

    [X] this brief has been prepared in a proportionally spaced typeface using
    *WordPerfect for Windows, version 11* in *Times New Roman 14-point type
    face*, or

    [ ] this brief has been prepared in a monospaced typeface using [*state name
    and version of word processing program*] with [*state number of
    characters per inch and name of type style*].


_____
Sean D. Jordan
COUNSEL FOR APPELLEE GREG ABBOTT

Dated: June 22, 2007

59