## NO. 06-51587

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

### AVINASH RANGRA and ANNA MONCLOVA,
**Plaintiff-Appellants,**

### VS.

### FRANK BROWN and GREG ABBOTT,
**Defendant-Appellees.**

## APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS, PECOS DIVISION

## REPLY BRIEF OF APPELLANTS RANGRA AND MONCLOVA

DICK DeGUERIN
Texas Bar No. 05638000
DeGUERIN, DICKSON & HENNESSEY
1018 Preston Avenue, Seventh Floor
Houston, Texas 77002
Telephone: 713-223-5959
Facsimile: 713-223-9231

ARVEL RODOLPHUS PONTON III
Texas Bar No. 16115170
2301 North Highway 118
P.O. Box 9760
Alpine, Texas 79831
Telephone: 432-837-0990
Facsimile: 432-837-0971

ATTORNEYS FOR APPELLANTS, RANGRA
AND MONCLOVA

## NO. 06-51587

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

## AVINASH RANGRA and ANNA MONCLOVA,
**Plaintiff-Appellants,**

## VS.

## FRANK BROWN and GREG ABBOTT,
**Defendant-Appellees.**

## APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## PECOS DIVISION

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

The undersigned counsel of record certifies that the following listed persons have an interest in the outcome of this case. These representations are made in order that the Judges of this Court may evaluate possible disqualification or recusal.

1.    Avinash Rangra
      Plaintiff/Appellant

2.    Anna Monclova
      Plaintiff/Appellant

3.    Dick DeGuerin
      Texas Bar No. 05638000
      DeGUERIN, DICKSON & HENNESSEY
      1018 Preston Avenue, Seventh Floor
      Houston, Texas 77002
      Attorney for Plaintiff/Appellants Avinash Rangra and Anna Monclova

4.    Arvel Rodolphus Ponton III
      Texas Bar No. 16115170
      2301 North Highway 118
      P.O. Box 9760
      Alpine, Texas 79831
      Attorney for Plaintiff/Appellants Anna Monclova and Avinash Rangra

5.    Dennis Olson
      Visiting Professor of Law
      University of Detroit Mercy School of Law
      651 East Jefferson Avenue
      Detroit, Michigan 48226
      Consultant for Messrs. DeGuerin and Ponton

6.    Frank D. Brown
      District Attorney for the 83d Texas Judicial District
      Defendant

7.    Greg Abbott
      Attorney General of Texas
      Defendant

8.    J. Steven Houston
      P.O. Box 396
      Marathon, Texas 79842
      Attorney for Defendant/Appellee Frank D. Brown

9.   Sean Jordan
     James Todd
     Jeff Rose
     Office of the Attorney General
     State of Texas
     P.O. Box 12548
     Capitol Station
     Austin, Texas 78711
     Attorneys for Defendant/Appellee Greg Abbott



                              _____
                              DICK DeGUERIN
                              Texas Bar No. 05638000
                              DeGUERIN, DICKSON & HENNESSEY
                              1018 Preston Avenue, Seventh Floor
                              Houston, Texas 77002
                              Telephone: 713-223-5959
                              Facsimile: 713-223-9231

                              ARVEL RODOLPHUS PONTON III
                              Texas Bar No. 16115170
                              2301 North Highway 118
                              P.O. Box 9760
                              Alpine, Texas 79831
                              Telephone: 432-837-0990
                              Facsimile: 432-837-0971


                              ATTORNEYS FOR PLAINTIFF /
                              APPELLANTS, AVINASH RANGRA AND
                              ANNA MONCLOVA

# <u>TABLE OF CONTENTS</u>

CERTIFICATE OF INTERESTED PERSONS ....................................................  i

TABLE OF AUTHORITIES..................................................................... vi

CONSTITUTIONAL PROVISIONS AND STATUTES PRESENTED ...............viii

SUMMARY OF THE ARGUMENT ................................................................  2

STANDARD OF REVIEW................................................................................  3

ARGUMENT AND AUTHORITIES ...............................................................  4

I.    The District Court did not err when it determined that Appellants have standing to sue in this case.................................................................................4

     A.    Appellants have suffered, and continue to suffer, an injury through the chilling of their First Amendment rights, thus conferring standing.....4

     B.    This case is not moot as it is capable of repetition, yet evading review.................................................................................................6

          i.    The chilling effect of Section 551.144 on political speech makes this issue "capable of repetition"...................................7

          ii.    This case meets the second prong of the mootness exception...9

II.    The speech at issue is political speech communicated in the elected official's capacity, and not as a public employee....................................................11

     A.    The speech at issue is political speech...............................................11

          i.    Speech from an elected or appointed official is political speech........................................................................................11

B.  Section 551.144 of TOMA is not narrowly tailored to achieve the compelling government interest of preventing corruption or the appearance of corruption.................................................. 11

    i.  Appellees erroneously argue that TOMA creates an intent or effect standard which is proscribed by *Buckley* and more recently in *Wisconsin Right to Life*............................................13

C.  TOMA prevents elected officials from engaging in free discussion of public issues.......................................................................................15

D.  TOMA, as defined in Attorney General Opinions, impermissibly mixes protected and unprotected speech............................................17

III.  Elected officials are not public employees, and as such, are not subject to restricted speech rights...................................................................................19

A.  The public employee cases are inapplicable to the present case as an elected official is not a public employee.............................................19

    i.  Elected officials are not public employees for the purposes of the First Amendment.................................................................21

    ii.  The Appellees' reliance upon *Garcetti* is misplaced................23

    iii.  *Scott v. Flowers* is distinguishable from the current action......25

CONCLUSION .......................................................................................... 27

CERTIFICATE OF SERVICE.................................................................. 31

CERTIFICATE OF COMPLIANCE ......................................................... 32

APPENDIX A .......................................................................................A-1

# TABLE OF AUTHORITIES

<u>Constitution</u>

U.S. Const. Amend. I ................................................................*passim*

U.S. Const., Amend. XIV................................................................xvi, 2


<u>Cases</u>

*Adler v. Bd. of Educ.*
    342 U.S. 485 (1952) ................................................................21

*Ashcroft v. Free Speech Coalition*
    535 U.S. 234 (2002)................................................................17, 18

*Buckley v. Valeo*
    424 U.S. 1 (1976)................................................................3, 4, 14

*Center for Individual Freedom v. Carmouche*
    449 F.3d 665 (5th Cir. 2006)................................................5, 6, 8, 9, 12

*Connick v. Myers*
    461 U.S. 138 (1983)................................................................20

*Federal Election Comm'n v. Wis. Right to Life, Inc.*
    _ U.S. _, 75 USLW 4503, 2007 WL 1804336 (2007)...1, 3, 4, 7, 9, 12, 14-18

*First Nat'l Bank of Boston v. Bellotti*
    435 U.S. 765 (1978)................................................................3, 12

*Garcetti v. Ceballos*
    126 S.Ct. 1951 (2006)................................................................21, 23

*McAuliffe v. Mayor of New Bedford*
    29 N.E. 517 (Mass 1892)................................................................21

*McConnell v. Federal Election Comm'n*
    540 U.S. 93 (2003)................................................................3, 12

*NAACP v. Button*
    371 U.S. 415 (1963)...................................................................15

*New York Times Co. v. Sullivan*
    376 U.S.254 (1964).............................................................16, 17

*Pickering v. Bd. of Educ.*
    391 U.S. 563.....................................................................20, 21

*Sabri v. United States*
    541 U.S. 600 (2004)..................................................................5

*Scott v. Flowers*
    901 F.2d 201 (5th Cir. 1990)........................................................24

*Sosna v. Iowa*
    419 U.S. 393 (1975)..................................................................8

*Spencer v. Kemna*
    523 U.S. 1 (1998)....................................................................6

*Time Inc. v. Firestone*
    424 U.S. 448 (1976).................................................................12

*Virginia v. Hicks*
    539 U.S. 113 (2003).................................................................16

Statutes

Tex. Gov't Code § 551.144.......................................................*passim*

Opinions of the Texas Attorney General

Tex. Atty. Gen. Op. JC-0451.......................................................13

Secondary Authorities

4 Elliot's Debates on the Federal Constitution 546

## CONSTITUTIONAL PROVISIONS AND STATUTES PRESENTED

U.S. CONST., AMEND I:

> Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

U.S. CONST., AMEND XIV, §1:

> All persons born or naturalized in the United States and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

Texas Government Code § 551.144:

Sec. 551.144. CLOSED MEETING; OFFENSE; PENALTY.

(a) A member of a governmental body commits an offense if a closed meeting is not permitted under this chapter and the member knowingly:

(1) calls or aids in calling or organizing the closed meeting, whether it is a special or called closed meeting;

(2) closes or aids in closing the meeting to the public, if it is a regular meeting; or

(3) participates in the closed meeting, whether it is a regular, special, or called meeting.

(b) An offense under Subsection (a) is a misdemeanor punishable by:

(1) a fine of not less than $100 or more than $500;

(2) confinement in the county jail for not less than one month or more than six months; or

(3) both the fine and confinement.

(c) It is an affirmative defense to prosecution under Subsection (a) that the member of the governmental body acted in reasonable reliance on a court order or a written interpretation of this chapter

contained in an opinion of a court of record, the attorney general, or the attorney for the governing body.

NO. 06-51587

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

---

**AVINASH RANGRA and ANNA MONCLOVA,**
**Plaintiffs-Appellants,**

**VS.**

**FRANK BROWN and GREG ABBOTT,**
**Defendants-Appellees.**

---

## APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS, PECOS DIVISION

---

### REPLY BRIEF OF APPELLANTS RANGRA AND MONCLOVA

---

**TO THE HONORABLE COURT OF APPEALS FOR THE FIFTH CIRCUIT:**

This case is about political speech protected by the First Amendment. The First Amendment states, "Congress shall make no law . . . abridging the freedom of speech." U.S. CONST. AMEND. I. "[L]aws targeting political speech are the principal object of the First Amendment." *Federal Election Comm'n v. Wis. Right to Life, Inc.*, __ U.S.__, 75 USLW 4503, 2007 WL 1804336 at *28 (2007) (Scalia, J., concurring in part and concurring in judgment).

# SUMMARY OF THE ARGUMENT

Appellants are presenting a justiciable claim. Standing is conferred upon them as they have suffered an injury in fact, and through the continuing threat of prosecution. Past, present, and future threat of injury remains as the Attorney General's opinions and the discretion of the District Attorney chill the Appellants' core political speech. Further, this case is not moot as it is capable of repetition, yet evading review. Appellants intend to communicate about public issues in the future, and while this specific circumstance may not arise in the future, communication by emails is common, and courts have not been hesitant to reject mootness when timeframes are short (such as City Council terms), or where the issue is of such importance, that review is deemed necessary to properly answer a challenge.

The speech communicated by an elected official is political speech. TOMA seeks to abridge the Appellants protected political speech. Such attempted regulation falls under strict scrutiny. TOMA's laudable goal is the prevention of corruption or the appearance of corruption. Courts have long recognized this goal as compelling. However, Section 551.144, as defined through various Texas Attorney General Opinions, and through the "absolute" discretion of prosecutors, is not narrowly tailored to achieve TOMA's goal. TOMA bans protected political speech as a means to ban unprotected speech. This act is expressly prohibited

through earlier cases of both this Court and the Supreme Court. When there is a question of what is or is not protected speech, the tie goes to the speaker, and not the censor.

Finally, for the purposes of the First Amendment, elected officials are not public employees. Reliance upon the public employee cases is erroneous as the two positions are not the same. The cases are easily distinguished, as well as the positions themselves. The public employee is a servant, working in a service capacity. The public employee cases are concerned with how a subordinate employee acts, and in what capacity they are acting in. The elected official is an advocate for those who elect him or her. The official's position is to act in the best interests of those who placed the official in office. As an advocate, the official's speech is political, and therefore protected by the First Amendment.

## STANDARD OF REVIEW

The speech at issue in this case is political speech. As such, it is subject to strict scrutiny. *See Buckley v. Valeo*, 424 U.S. 1, 44-45 (1976); *see also Wis. Right to Life, Inc.*, 2007 WL 1804336 at *11; *McConnell v. Federal Election Comm'n*, 540 U.S. 93, 205 (2003). Strict scrutiny requires "the *Government* must prove [the challenged statute] furthers a compelling interest and is narrowly tailored to achieve that interest." *Wis. Right to Life, Inc.*, 2007 WL 1804336 at *11 (citing *First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 786 (1978)). It is undisputed

that the Texas Open Meetings Act (TOMA), specifically TEX. GOV'T CODE § 551.144 (Vernon 2006), serves the legitimate governmental interest of "preventing corruption, or the appearance of corruption." *See Wis. Right to Life*, 2007 WL 1804336 at \*18; *see also Buckley* 424 U.S. at 14. The issue before this Court is whether TOMA is narrowly tailored to achieve that compelling interest.

## ARGUMENT AND AUTHORITIES

**I. The District Court did not err when it determined that Appellants haves standing to sue in this case.**

    **A. Appellants have suffered, and continue to suffer, an injury through the chilling of their First Amendment rights, thus conferring standing.**

The District Court did not err in determining that Appellants had standing to sue in Federal Court. (Conclusions of Law ¶¶ 6-10). Appellees have asserted that Appellants do not have an injury in fact which would establish standing. Appellees argue first that there is no credible threat of prosecution for the 2004 e-mails as the statute of limitations has run. This assertion clearly misstates the Appellants position since the challenge to TOMA is both as-applied; and it is a facial challenge to the statute. Appellants assert that relief is necessary as their First Amendment rights are chilled by the strict liability statute set forth in TOMA. While it is undisputed that Rangra and Monclova have no credible threat of prosecution from the October 2004 e-mails, there is a credible threat of prosecution

for any future communication that may take place. It is because of the overbreadth and vagueness of § 511.144 that their speech was, and remains, chilled.

Only a year ago, this Court reiterated the long-standing policy of viewing facial challenges in the first Amendment context differently than in other contexts. *Center for Individual Freedom v. Carmouche*, 449 F.3d 665, 660 (5th Cir. 2006).The Court frankly acknowledged the judiciary's typical reticence to entertain facial challenges, *see Sabri v. United States,* 541 U.S. 600 (2004), but then dismissed those fears when faced with the larger threat of speech suppression. *Carmouche,* 449 F.3d at 660. *Carmouche* involved a facial challenge to the Louisiana Campaign Finance Disclosure Act. *Id.* at 655. Plaintiff sought to have the statute declared unconstitutional on account that it chilled its First Amendment rights, namely its right to "run television and radio advertisements that...would refer to the positions of the candidates on issues of importance to the Center." *Id.* Defendants claimed that Plaintiff had no standing to bring the suit as it had not suffered an injury-in-fact, and the case was moot due to the completion of a recent election. *Id.* at 659. Following precedent, this Court held that "a chilling of speech because of the mere existence of an allegedly vague or overbroad statute can be sufficient injury to support standing. *Id.*

The same rings true in the present issue. Appellants' political speech is chilled due to the overbreadth and vagueness of § 551.144. The strict liability of

the statute, combined with the sweeping discretion of those who enforce it, acts to chill the First Amendment rights of those it governs. In *Carmouche*, the Plaintiff was not willing "to expose itself to civil and criminal penalties" and was thus "forced to refrain from speaking." *Id.* In this case, Appellants share the same fear of criminal prosecution for exercising their First Amendment rights, and therefore they have had to refrain from doing normal activities, such as exchanging e-mails, that is necessary to conduct the business to which the voters of Alpine, Texas elected them to do. Therefore, the assertion that no standing exists since no prosecution can come from the original e-mails is misplaced. Appellants are claiming that their speech is chilled by TOMA, thereby satisfying the injury requirement for standing. The chilling effect of TOMA causes the injury, and this Court can redress the injury by providing the relief requested. Therefore, Appellants have standing in this case.

### B. This case is not moot as it is capable of repetition, yet evading review.

Appellees assert that since Monclova is no longer a member of the City Council, her claim is moot. This argument again fails under this Court's holding in *Center for Individual Freedom*. This Court recognized that "[g]enerally, any set of circumstances that eliminate actual controversy after commencement of the lawsuit renders that action moot." *Id.* at 661. However, a case is not moot if it is "capable

of repetition, yet evading review." *See Spencer v. Kemna*, 523 U.S. 1, 17-18 (1998). The exception applies where "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration; and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Id.*; *see also Wis. Right to Life, Inc.*, 2007 WL 1804336 at *9.

### i. The chilling effect of Section 551.144 on political speech makes this issue "capable of repetition."

*Wis. Right to Life* concerned a challenge to a statute which prohibited express advocacy ads that ran in a certain time frame prior to an election. *Id.* at *6-8. Wisconsin Right to Life (WRTL) wished to run issue ads within the time frame, and sued the FEC in order to declare the statute at issue unconstitutional as violative of WRTL's free speech. *Id.* The FEC argued that the case was moot since the elections before which the issue ads were to run had already been completed, and therefore there was no case or controversy. *Id.* at *9.

The Supreme Court, in determining that the case was not moot, declared that the case was "capable of repetition, yet evading review." *Id.* at *9-10. The Court held that the two year window between blackout periods before elections was not enough to have the case fully litigated. *Id.* at *10. Further, the Court continued, stating that "groups like WRTL cannot predict what issues will be matters of public concern during a future blackout period." *Id.* Therefore, it could not be said with any certainty that the issue which WRTL opposed would not arise again,

7

therefore making the case "capable of repetition." This position reiterated the Court's long-standing approach to doctrine of capable of repetition but evading review: "In cases in which the alleged harm would not dissipate during the normal time required for resolution of the controversy, the general principles of Art. III jurisdiction require that the plaintiff's personal stake in the litigation continue throughout the entirety of the litigation." *Sosna v. Iowa*, 419 U.S. 393, 402 (1975).

In *Carmouche,* this Court declared that the issue presented was capable of repetition. *Center for Individual Freedom*, 449 F.3d at 661, noting that "controversy surrounding election laws . . . is one of the circumstances in which the Supreme Court has found that full litigation can never be completed before the precise controversy . . . has run its course." *Id.*

The same holds true in the present case. It would be hard pressed to assert that this case could be fully litigated before the expiration of the terms of Alpine City Council members. In fact, as Appellees have noted, Appellant Monclova's term has expired,[1] and Appellant Rangra has run for, and been re-elected to his seat on the City Council. The two year limitations for the misdemeanor has run. However, there has been continuing injury in fact, through the chilling of protected speech, through the overarching spectre of prosecution for communicating

---

[1] Two additional factors also establish the continuing vitality of Monclova's claim. First, the criminal sanctions of TOMA are not limited to members of the public body. See Tex. A.G. Op. XXXXX . Monclova, as a non-office holding citizen is still subject to criminal sanction if she conveys information to a quorum of the city council. Second, Monclova remains free to run for office and become a member of the city council again.

publicly. As in *Carmouche*, cases where political speech is being abridged have lengthy litigation associated with it, thereby making the instant case "capable of repetition."

### ii. This case meets the second prong of the mootness exception.

The second prong of the mootness exception is that the case must be "evading review." *Id.* at 662. Appellees assert a similar argument to the one that the Supreme Court rejected in *Wis. Right to Life.* Appellees assert that since Appellants have disclaimed any intent to violate TOMA in the same form, this case is moot. In *Wis. Right to Life*, the FEC argued "that in order to prove likely recurrence of the same controversy, WRTL must establish that it will run ads in the future sharing all the same characteristics that the district court deemed relevant." *Wis. Right to Life, Inc.*, at *10. The Court expressly rejected this argument stating that the FEC was "ask[ing] too much." *Id.*. The Court held that "[r]equiring repetition of every legally relevant characteristic . . . down to the last detail . . . would effectively overrule [the appropriateness of the exception] by making this exception unavailable." *Id.* The Court stated, "[h]istory repeats itself, but not to the level of specificity demanded by the FEC." *Id.* The Court concluded that since WRTL stated an intention to run similar ads within the blackout period proscribed by the statute, this satisfied the second prong of the mootness exception. In this

case, appellants have asserted their desire to freely communicate, and their fear of doing so.

In *Carmouche*, this Court stated that "the Court does not always focus on whether a particular plaintiff is likely to incur the same injury." *Center for Individual Freedom,* 449 F.3d at 662. This Court has recognized that even if a person is no longer subject to a challenged statute, that does not automatically render the party's claim moot. This Court stated, "[t]hus, even if it were doubtful that the Center would again attempt to engage in election-related speech in Louisiana, precedent suggests that this case is not moot, because *other individuals certainly will be affected by the continuing existence of the CFDA.*" *Id.*

This line of reason stands true in the present case. TOMA is not a statute that will affect only certain members of decision making bodies. Rather, TOMA's reach is far, extending to almost every decision making body in Texas, save for the Texas Legislature. While Appellant Monclova may not run for city council again, this case is not moot because other individuals across Texas certainly will be affected by the continuing existence of TOMA. *See e.g. Amicus Curiae Br.* Rangra and Monclova, in their affidavits attached to the original Complaint, noted that they wished to speak out on public matters, but were afraid to because of the threat of prosecution. In short, the mootness doctrine does not apply to the instant case

As to Appellant Rangra, the case is not moot for he still serves on the city council of Alpine and is very much subject to the challenged provisions of TOMA. He asserts that his speech is chilled due to the vagueness of the law as it now stands, and that his speech continues to be chilled. While Rangra disclaimed any intention of violating TOMA while he remains in office, he does not have control over the communications sent to him, be it by e-mail, telephone, or regular post. This case involves the passive receipt of e-mail constituting a criminal violation of TOMA. Rangra, by remaining on the council, certainly falls within the "capable of repetition, yet evading review" exception.

## II. The speech at issue is political speech communicated in the elected official's capacity, and not as a public employee.

### A. The speech at issue is political speech.

The Texas Open Meetings Act (TOMA) deals with regulating the speech of members of decision-making bodies. The laudable goal of TOMA is the suppression of corruption, or the appearance of corruption. However, through the interpretations of the Texas Attorney General, and decisions of Texas courts, TOMA impermissibly regulates political speech that is protected by the First Amendment, and is not narrowly tailored to achieve its goal of preventing corruption.

### i. Speech from an elected or appointed official is political speech.

The business of an elected official is, necessarily, public business. The electorate is comprised of the official's fellow citizens, and the official is elected for the sole purpose of managing public affairs. Logically, any speech from an elected official, in his capacity as an official, is going to concern public business. The citizens who place the official in their office are expecting that the official is going to advocate for them, thus making the speech "political." To argue otherwise would be to claim that once elected, an official performs his or her duty in a wholly self-serving manner. This, of course, would defeat the purpose of having a representative form of government.

The issue of political speech most often appears in campaign finance and election cases. However, the one constant in all cases concerning political speech is the notion that the speech is advocacy for something, be it a candidate, an issue, or policy. *See Wis. Right to Life*, 2007 WL 1804336 (2007); *Bellotti*, 435 U.S. 765 (1978); *McConnell*, 540 U.S. 93 (2003); *Center of Individual Freedom v. Carmouche*, 449 F.3d 655 (5th Cir. 2006). Justice Brennan recognized that the First Amendment covers all speech "concerned with governmental behavior, policy or personnel, whether the governmental unit involved is executive, legislative, judicial or administrative." *Time, Inc. v. Firestone*, 424 U.S. 448, 478 (1976) (Brennan, J., dissenting) (internal quotations omitted). The speech at issue

12

is advocating the setting of a special meeting concerning a water project. Appellants, by nature of their elected positions, are charged by their constituents with the task of overseeing such projects and ensuring that such projects are run efficiently. Appellants are charged with effectively advocating their constituents' positions as it relates to all city projects. As such, this speech must be seen to qualify as "political speech."

### B. Section 551.144 of TOMA is not narrowly tailored to achieve the compelling government interest of preventing corruption or the appearance of corruption.

Since an elected official's speech is political speech, strict scrutiny requires that any regulation of such speech to be narrowly tailored to achieve its purpose of preventing corruption or the appearance of corruption. The Attorney General has taken the liberty to expand the reach of Section 551.144 many times. Section 551.144 is a strict liability statute and the Attorney General, state courts, and District Attorneys have taken the liberty of the strict liability nature of the statute to expand its reach to cover a myriad of protected political speech.

The Texas Attorney General has already noted that TOMA imposes strict liability. Tex. Atty. Gen. Op. JC-0451 at 6. With the absence of scienter, TOMA's regulation of speech is up to the discretion of prosecutors, who rely heavily upon the opinions of the Attorney General which have been detailed in both Appellant's

brief and the brief of *amicus curiae*. These opinions broaden the scope of an already overbroad statute.

Given the ever-expanding nature of Section 551.144, elected officials are no longer sure as to what will and will not constitute criminal activity. *(See also* testimony of Charles McNabb, El Paso City Attorney, and John Montford).The statute, while serving a laudable purpose, chills the speech of those who only seek to do the job to which they were elected to do. This chilling effect emanates from the fact that Section 551.144 is not narrowly tailored to preventing corruption.

> **i.** **Appellees erroneously argue that TOMA creates an intent or effect standard which is proscribed by *Buckley* and more recently in *Wisconsin Right to Life*.**

Appellees assert that one can only violate Section 551.144 if he or she does so "knowingly." *See* Appellees' Br. 47-48; *see also* Tex. Gov't Code § 551.144. There is a lot of sleight of hand in Appellees' use of the word "knowingly". Under the Act as interpreted by the Texas courts, and by the Attorney General, one need only know that he engages in an act – i.e., one cannot be comatose. For the purposes of §551.144, that knowing act can be the receipt of information. One need not know that this is an illegal meeting or that others on the council are also receiving the same information (which makes it an illegal meeting). This is the only way that the Attorney General and the District Attorney could have asserted criminal liability for Appellant Monclova – a position they have never abandoned

although they would like the Court to pretend that it has nothing to do with a threat of prosecution. It is also the only way there can be a violation of § 551.144 in scenario number nine from the AG's training video. Trial Exhibits 4a, 4b.

This situation is analogous to the one faced by the Supreme Court in *Buckley v. Valeo.* In this election campaign case, the Court was asked to distinguish between the discussions of issues and advocacy of election or defeat of candidates. *Buckley*, 424 U.S. at 43. The Court stated that determining this issue in terms of "intent and of effect" would afford "no security for free discussion." *Id.*; *see also Wis. Right to Life Inc.*, 2007 WL 1804336 at *13. The Attorney General, through its opinions, has attempted to apply such an intent and effect based standard through its concerns for actual corruption, or the appearance of corruption. It seeks to limit the free discussion of public officials because some discussion might be seen as an example of corruption. The Attorney General implies that any communication by an elected official falls within the scope of the strict liability provision of TOMA, and is therefore banned. The effect of this line of reasoning is that elected officials are hesitant, to say the least, to speak to anther official concerning public business, for it could be construed as criminal.

The Supreme Court declined to adopt this intent and effect view in *Wisconsin Right to Life.* Chief Justice Roberts stated that "[a]n intent based standard blankets with uncertainty whatever may be said, and offers no security for

free discussion." *Wis. Right to Life*, *Inc.*, 2007 WL 1804336 at *13 (quoting *Buckley*, 424 U.S. at 43) (internal quotations omitted). An elected official must be allowed to have free discussion of public issues in order to best serve his constituents. "First Amendment freedoms need breathing space to survive . . . [a]n intent test provides none." *Wis. Right to Life, Inc.*, 2007 WL 1804336 at *14 (quoting *NAACP v. Button*, 371 U.S. 415, 433 (1963)).

### C.    TOMA prevents elected officials from engaging in free discussion of public issues.

Speech on public issues is protected unless one is an employee whose speech is at the behest of the public employer, is part and parcel of the employment, and results in a product that is itself government speech. The test is strictly employer/ employee, as in the private world of business—keep the boss happy, or face the consequences. That test by its own terms excludes elected office holders – they have no mandated speech at the behest of their employers and, until the body acts as a body, their positions do not constitute the government's speech. As discussed, *supra*, the communication of an elected official is political speech since the official's duty is to advocate for its constituents. In order to achieve this purpose, an elected official must be allowed to freely discuss public issues in order to best serve the public.

"To safeguard this liberty [of free discussion], the proper standard . . . must be objective, focusing *on the communication* rather than amorphous considerations

of intent and effect." *Wis. Right to Life, Inc.*, 2007 WL 1804336 at *14 (citing *Buckley*, 424 U.S. at 43-44) (emphasis added). "[The proper standard] must entail minimal, if any discovery, to allow parties to resolve disputes quickly without chilling speech through the threat of burdensome litigation." *Id* (citing *Virginia v. Hicks*, 539 U.S.113 (2003)). The Court further stated that the standard "must eschew the open-ended rough-and-tumble of factors, which invites complex argument . . . and a virtually inevitable appeal." *Id.* To put it in other words, the proper standard for challenging statutes on a First Amendment basis **"must give the benefit of the doubt to protecting rather than stifling speech."** *Id.* (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 269-70 (1964).

The Court in *Wis. Right to Life* correctly reasoned that in the context of regulated speech, the substance of the communication should be the focus of the inquiry, and not any possible intent and effect. *Id.* In the present case, the elected officials cannot communicate about setting an open meeting without possibly committing a criminal act. Since the statute is not narrowly tailored, overbroad and vague, the discretion to prosecute rests on the subjective decision of a prosecutor. TOMA runs in opposite of the Court's reasoning by seeking to stifle speech rather than to protect it. The Attorney General's opinions and threatened prosecutions chill core political speech by opening the door to trial when an official engages in any form of communication, including, as in this case, the passive receipt of e-

mails. This case involves free discussion by public officials, and as such, the First Amendment requires that the benefit of the doubt goes to the protection of such free speech. *New York Times Co.*, 376 U.S. at 269-70.

### D. TOMA, as defined in Attorney General opinions, impermissibly mixes protected and unprotected speech.

In *Wis. Right to Life*, the issue of banning protected speech as a means to ban unprotected speech was revisited in the context of campaign finance reform. *Wis. Right to Life, Inc.*, 2007 WL 1804336 at *17. The issue was whether advertisements, which could be reasonably interpreted to be advocacy ads, could be banned as a means to banning express advocacy ads. *Id.* The Court reiterated its holding in *Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002), again declining the invitation to allow governments to mix protected and unprotected speech as a means to regulate solely unprotected speech. *Id.*

"The Government may not suppress lawful speech as the means to suppress unlawful speech. Protected speech does not become unprotected merely because it resembles the latter. The Constitution requires the reverse." *Ashcroft v. Free Speech Coalition*, 535 U.S. 234 at 255 (2002). In *Ashcroft,* the issue before the Court was whether the Government could prohibit virtual child pornography as it was difficult to distinguish from actual child pornography. *Id.* at 240. The Court rejected the idea that protected speech (virtual child pornography) could be banned

as a means to ban unprotected speech (actual child pornography). *Id.* at 255; *see also Wis. Right to Life, Inc.*, 2007 WL 1804336 at *17.

By incorporating protected speech into its strict liability provision, Section 551.144 of TOMA effectively uses an elected official's protected political speech and free discussion as a means to ban unprotected speech. TOMA creates such a grey area on what is permissible and what is impermissible, that the only way of ensuring no criminal liability is to have no discussion at all. This is a ban on protected speech. Both *Ashcroft* and *Wis. Right to Life* prohibit this "mixing" as a means to ban unprotected speech. *Id.*; *Ashcroft*, 535 U.S. at 255. The interpretations of TOMA by the Attorney General have muddied the waters so much, that there is no sensible way of distinguishing what is and is not criminal speech under the Act. *See Wis. Right to Life, Inc.*, 2007 WL 1804336 at *25 (Scalia, J., concurring in part and concurring in judgment) (stating "[i]n this critical area of political discourse, the speaker cannot be compelled to risk felony prosecution with no more assurance of impunity than his prediction that what he says will be found susceptible of some reasonable interpretation other than as an appeal against a specific candidate). Therefore, if TOMA's strict liability provision is to survive, public policy demands that there be some bright-line test, as opposed to the constantly shifting opinions of the Texas Attorney General or the three

hundred plus district attorneys who hold the "absolute discretion", RR. 36 (testimony of Frank Brown), to prosecute elected officials under TOMA.

## III. Elected officials are not public employees, and as such, are not subject to restricted speech rights.

### A. The public employee cases are inapplicable in the present case as an elected official is not a public employee.

Appellees erroneously assert that elected officials are public employees so far as the First Amendment is concerned. Relying primarily on the well-documented public employee cases, Appellees seek to equate an elected official, who earns little wage and whose position is not their livelihood, to a public employee (i.e. court clerk, probation officer, or parks and recreation employee) who relies on a public employer for a living. Elected officials, in the context of TOMA, are not public employees as Appellees assert, and Appellees' use of *Pickering/Connick/Garcetti* is distinguishable from the present action. Most important to note is that the actual or threatened act in *Pickering, Connick,* and *Garcetti* was adverse employment action, and not possible imprisonment as in the case at hand.

*Pickering* concerned a teacher who was terminated from his employment on account of a letter he wrote which attacked bond issue proposals by the school board. *Pickering v. Bd. of Educ.*, 391 U.S. 563, 566 (1968). The Court in *Pickering* had to resolve the issue of whether Pickering's free speech was violated by the

adverse employment action. *Id.* at 566-69. In resolving that his freedom of speech was violated, the *Pickering* court laid out the two part test in which the speaker must be speaking "as a citizen" on "matters of public concern." *Id.* at 568. Pickering's speech was analogous to that of an elected public official—speaking as a citizen, (or citizen- elected by his fellow citizens), on matters of public concern. Rangra's speech, like Pickering's, is protected. Rangra is a public citizen elected by the public; he is not a public employee working for a boss who can fire him for insubordination. Rangra's speech, as a public official, is pure political speech, and as such, is protected by the First Amendment.

*Connick* was a case in which the District Attorney of Orleans Parish, Harry Connick, terminated an employee for refusing to accept a transfer to a different section of criminal court, and for insubordination in typing and circulating a questionnaire among fifteen fellow employees.[2] *Connick v.* Myers, 461 U.S. 138 (1983). The Court was once again called upon to answer the issue of whether this public employee's free speech rights were violated. Unlike *Pickering*, the Court did not find that the speech was communicated "by a citizen" on a "matter of public concern." *Id.* at 147; *see also Pickering*, 391 U.S. at 568. The court held that the speech at issue was a matter of personal interest, and, therefore, as she was

---

[2] The questionnaire questioned employees' views concerning the "office transfer policy, office morale, the need for a grievance committee, the level of confidence in supervisors, and whether employees felt pressured to work on political campaigns." *Connick*, 461 U.S. at 141.

speaking in her capacity as a district attorney, her speech could be restricted by her employer. *Connick,* 461 U.S. at 147-48.

*Garcetti* was a case in which another assistant district attorney felt that he was the target of adverse employment action on account of his testimony for the defense in a criminal prosecution. *Garcetti v. Ceballos*, 126 S.Ct. 1951, 1956-57. Ceballos had written a memorandum recommending the dismissal of the case in which he testified. *Id.* Ceballos claimed that on account of his testimony, he was subjected to adverse employment decisions, and claimed that his First Amendment rights were violated. *Id.* at 1956. The Court determined that his free speech rights were not violated, for his communication was not as an ordinary citizen, but rather as a part of his official duties as an assistant district attorney. *Id.* at 1961.

### i.    Elected officials are not public employees for the purposes of the First Amendment.

A public employee, such as a teacher or assistant district attorney, serves at the pleasure of an employer such as a school board or the District Attorney.  An elected official, such as Appellants, serves at the pleasure of the public whom they represent. A public employee and elected official, while both dealing in public service, are not analogous in their positions. A public employee can be fired for saying something stupid about their supervisor. A public official can say all the stupid things he wants to, and must merely face the voters in two years time.

A public employee serves at the direction of a supervisor. The public employee performs his or her duties in the context of a directive of the one whom they work for. For instance, a school teacher will form his or her curriculum for a class based upon directives from not only the school's principal, but also the school board of the district. If the teacher fails to comply with the directives handed down to them, the teacher will no longer be employed, for they are subordinate to his or her supervisor. Appellees correctly assert that there is no fundamental right to public employment. Appellees' Br. at 26 (citing *McAuliffe v. Mayor of New Bedford,* 29 N.E. 517 (Mass. 1892); *Adler v. Bd. of Educ.,* 342 U.S. 485 (1952). A pubic employee will almost always go through the same hiring process as if he or she was applying with a private employer.

On the other hand, the elected official almost always serves as a subordinate to no one except the electorate. The directives to which they work towards stem from determining what is in the best interests of their constituents. The elected official does not work for a supervisor, rather, the nature of an elected official's position requires one thing: *to advocate her constituents' positions, and work diligently to best represent her constituents.* The primary difference between the elected official and the public employee is that the public employee works predominantly in a service capacity, implementing the policies set by others, while the elected official is chosen as an advocate and policymaker.

The speech of a public employee can be restricted as long as it is communicated in the employee's professional capacity, and not as a private citizen. The reasoning is simple; if the employee speaks in his or her professional capacity, the employee will most likely be seen as speaking for the entity for which the employee is working for. Elected officials must be able to discuss public issues freely, for they are expected to be able to communicate their positions on the issues not only to the electorate, but to other elected officials as well. They are not employees.

### ii.    The Appellees' reliance upon *Garcetti* is misplaced.

Justice Kennedy's opinion in *Garcetti* is very careful to limit the scope of that decision. In that case, the government's ability to punish speech arises neither because the speech is related to work nor because it occurs at work. The government's supervisory capacity arises when the speech triggering job action was made at the behest of the employer and was part and parcel of the employee's work duties. *Garcetti,* 126 S.Ct. 1959-60. Thus, Ceballos, an attorney with responsibility to write memoranda regarding pending criminal cases, could not claim a First Amendment right to write such memoranda as he wished without any potential impact on his terms of employment. *Id.*  Looking at the case from another perspective, the memoranda written by Ceballos were official office documents and constituted the government's speech not his own. His job was to write them to

reflect office policy, and his inability to do this to the satisfaction of his employer was not a First Amendment issue.

To understand *Garcetti* is to see its utter inapplicability to the instant case. Rangra and Monclova were elected officials, who are under no obligation to produce a written or oral work product of any sort. Their supervisors are the electors – to whom they are solely responsible for their performance or non-performance. To hold that elected officeholders are government employees any time they acquire information and are thus subject to prosecution at the sole discretion of law enforcement personnel for receiving or disseminating information would be an egregious imposition on the speech rights of the officeholders and their constituents. This is the position that prompted wide discussion in the trial court about the legality of a mayor's state of the city speech, the wisdom of a council member revealing his position to a local newspaper, and other things the state wishes to dismiss as a parade of horribles.

### iii. *Scott v. Flowers* **is distinguishable from the current action.**

Appellees seem to suggest that this Court's holding in *Scott v. Flowers*, 910 F.2d 201 (5th Cir. 1990) holds that all elected officials are considered public employees. This analysis simply does not hold water. Appellees assert that this Court stated that an "elected official like [a] judge [is] not a 'typical' public

employee." Appellees' Br., 36 (quoting *Scott*, 910 F.2d at 211-12). However, a further reading of the opinion shows that this Court distinguishes elected judges from other elected officials. *Scott*, 901 F.2d at 212 (stating "[a]s the Commission correctly points out, we have recognized that the state may restrict the speech of elected *judges* in ways it may not restrict the speech of other elected officials.") (emphasis in original). This Court recognized that there is a difference between an elected judge in Texas, and an elected official. As discussed *supra*, the elected official stands as an advocate for the people who elect him or her. The very position, be it city councilman or city manager, requires that the official be concerned with, and advocate for, the best interests of the citizens for whom he or she represents. As such, this mandate upon the elected official requires that the official be free to discuss public issues, and TOMA proscribes this necessary function, and places criminal liability upon it. Elected judges, on the other hand, are not concerned with advocating for the positions of those who elected him or her. A judge concerns him or herself with the administration of justice among the political division that they are elected or appointed to. For a Judge to speak out publicly on matters pending before him, may subvert the due administration of justice. Different rules apply to judges that all the other public officials in Texas. Thus, this Court's opinion in *Scott* does state not that all elected officials are public employees, as Appellees would like to claim.

## CONCLUSION

To prosecute public officials in Texas for the crime of talking to each other and their constituents (who elected them to talk about public issues) is a throwback to the Sedition Act of 1798. The Act made it a crime to "write, print, utter, or publish...any false, scandalous and malicious writings against the government of the United States..." The Act was used by the Federalist Party to stay in power, and punish their opponents. The Act was so broadly written, that the prosecutors (the Federalists) could, and did, interpret it to suit their aim, to punish their political enemies. See "*Make No Law*, Anthony Lewis 1991, pages 56-66). James Madison and Thomas Jefferson opposed the law. Jefferson wrote a law, passed by the Virginia legislature, to foil the Sedition Act. The Virginia resolutions protested against "the palpable  and alarming infractions of the Constitution", with the law being "a power not delegated by the Constitution but, on the contrary, expressly and positively forbidden by one of the amendments thereto – a power which, more than any other, ought to produce universal alarm, because it is leveled against the **right of freely examining public characters and measures, and of free communication among the people thereon, which has ever been justly deemed the only effectual guardian of every other right."** (Emphasis added). 4 Elliot's Debates on the Federal Constitution 546-80, at 553,554, 569, and 570. Ten people

were imprisoned for political speech under the Sedition Act. It expired, and President Jefferson remitted fines of those convicted.

Making a crime of political speech was roundly condemned after 1800, but now the Texas Legislature has criminalized political speech. For what can a public official in Texas do, after election, but talk about the pressing issues of the day? Is that not why his fellow citizens elected him? To put into words and action their prejudices and feelings? Now a clever Texas prosecutor can put into jail a political enemy for the crime of political speech – talking about public issues not at a meeting, but on the street corner, in a cafe, at his place of employment, at his church. There can be no clearer violation of the First Amendment than to suppress core political speech. *See Sullivan*, 376 U.S. at 275 (stating "[t]he right of free public discussion of the stewardship of public officials was thus, in Madison's view, a fundamental view of the American form of government").

We are not talking about Texas public officials *deciding* an issue on the street corner or cafe. We are talking about them discussing, debating, giving and receiving information – the very thing they were elected to do.

Appellants, and public officials across Texas, are under a continued threat of prosecution through TOMA. As established by precedent and the conclusion of the District Court, standing is conferred in this case. Further, as this case involves the suppression of the political speech of elected officials, TOMA is not narrowly

tailored to achieve the goal of preventing corruption or the appearance of corruption. Finally, for the purposes of the First Amendment, an elected official is not a public employee, and therefore the *Pickering* test and the reasoning of *Connick* and *Garcetti* are inapplicable.

Chief Justice Roberts recognized the difficulty of determining when a government may ban political speech in *Wis. Right to Life.* He recognized that most free speech cases will forget the words that are at issue, that "Congress shall make no laws . . . abridging the freedom of speech." In the present case, TOMA expressly bans elected officials from having free discussion of the issues that they are, necessarily, elected to decide. It is undisputed that open government demands that decisions be made in the open, and that the public has full opportunity to know what is decided, and the reasons behind it. However, TOMA proscribes speech that ultimately bans an elected official from gathering the necessary information, thereby almost rendering the elected official ineffective. Due to its overbreadth and vagueness, TOMA, through the various interpretations by the Texas Attorney General and the discretion of the various District attorneys, muddies the water as to what speech qualifies as a criminal act, and what does not. Chief Justice Roberts put it very eloquently that the benefit of doubt must go to speech, and not the speaker, for, as he stated in *Wisconsin Right to Life*, "[t]he First Amendment's

command that 'Congress shall make no laws . . . abridging the freedom of speech' demands at least that."

In Texas, TOMA must fall, because the First Amendment's command, that "congress shall make no laws… abridging the freedom of speech", demands at least that.

Respectfully submitted,

_____
DICK DeGUERIN
Texas Bar No. 05638000
DeGUERIN, DICKSON & HENNESSEY
1018 Preston Avenue, Seventh Floor
Houston, Texas 77002
Telephone: 713-223-5959
Facsimile: 713-223-9231

ARVEL RODOLPHUS PONTON III
Texas Bar No. 16115170
2301 North Highway 118
P.O. Box 9760
Alpine, Texas 79831
Telephone: 432-837-0990
Facsimile: 432-837-0971

ATTORNEYS FOR PLAINTIFFS/
APPELLANTS, AVINASH RANGRA
AND ANNA MONCLOVA

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the ___ day of July, 2007, via United States first class mail, the original and seven true copies of the foregoing Reply Brief for Appellants and an electronic disk containing the Brief have been filed with the Clerk for the United States Court of Appeals for the Fifth Circuit.

> Charles R. Fulbruge III
> Clerk of the Court
> United States Court of Appeals for the Fifth Circuit
> 600 Camp Street
> New Orleans, Louisiana 70130

I hereby certify that on the ___ day of July, 2007, via United States first class mail, postage prepaid, two true and correct copies of the Reply Brief for Appellants and an electronic disk containing the Brief have been served on the following counsel:

> J. Steven Houston
> P.O. Box 396
> Marathon, Texas 79842
>
> Sean Jordan
> James Todd
> Jeff Rose
> Office of the Attorney General
> State of Texas
> P.O. Box 12548
> Capitol Station
> Austin, Texas 78711

_____
DICK DeGUERIN

## CERTIFICATE OF COMPLIANCE

1.    This brief complies with the type-volume limitation of Fed. R. App. P.

32(a)(7) because this brief contains 6,984 words, excluding the parts of the brief

excepted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P.

32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this

brief has been prepared in a proportionally spaced typeface using Microsoft Word,

Times New Roman, font size 14, and size 12 for footnotes.


_____        _____
Date                          DICK DeGUERIN
                              Texas Bar No. 05638000

## AFFIDAVIT

Before me, the undersigned authority, appeared AVINASH RANGRA, who, after being sworn, deposed and stated that the following is true and correct, and within his personal knowledge:

My name is AVINASH RANGRA. I am a duly elected city council member of the Alpine City Council. I was a member of that body in October 2004. I am one of the plaintiffs in this case.

In February 2005, the Brewster County Grand Jury subpoenaed me to appear to testify regarding an open meetings act violation. I refused, invoking my Fifth Amendment privilege. I was indicted on February 17, 2005. Katie Elms- Lawrence was also indicted that day.

The prosecution was based on the sending and receipt of two emails, on October 21-22, 2005. The emails were informational in nature. They were not decisions or deliberations.

After pretrial hearings, it was shown that all four members of the council on the emails had received one of the emails at issue. The indictment was dismissed on May 5, 2005, against my lawyer's wishes. It was dismissed without prejudice. This means I could be re- indicted in the future for these same acts.

I legitimately fear that I could still be indicted in the future for these same October 2004 emails. 83d District Attorney Frank Brown has done it before, and I am afraid he would do it again.

I am still a member of the Alpine City council. I still want to talk to and discuss public matters with my fellow elected city council members. I would like to communicate with city councilors, and the public, by email, regular mail, telephone, and directly. Because of Mr. Brown's prosecution of me and my fellow councilors, I am afraid to do this. I am afraid to exercise my First Amendment rights to communicate with my fellow councilors, and the public. I am afraid that if I talk to anyone about public matters, except at a city council meeting, I could be indicted and face a criminal prosecution. This threat to me is ongoing and real. But for this threat, I would exercise my First Amendment rights to communicate with the voters and public officials.

I go to the coffee shop, to Sul Ross State University, to the Lion's Club, to my movie theaters, and people ask me about City of Alpine matters. This prosecution chills me, and intimidates me, from talking freely to these people about public matters. I take my responsibilities seriously as a city councilor. Because of Mr. Brown's past prosecution of me, and the threat of future prosecution, I am legitimately afraid to exercise my First Amendment rights. It seems that by virtue of being elected as a public official, I can no longer talk about public matters. This is wrong. I want to be able to freely communicate with the public, and fellow city councilors, about public matters, without fear of Mr. Brown prosecuting me.

Further, affiant sayeth not.

AVINASH RANGRA

State of Texas
County of Brewster

Signed and sealed before me, the undersigned authority, appeared AVINASH
RANGRA, who executed the same for the purposes and consideration set forth therein.

Teresa D. Bentley
Notary Public



TERESA D. BENTLEY
Notary Public
STATE OF TEXAS
My Comm. Exp. 03/26/2007

## AFFIDAVIT

Before me, the undersigned authority, appeared ANNA MONCLOVA, who, after being sworn, deposed and stated that the following is true and correct, and within her personal knowledge:

My name is ANNA MONCLOVA. I am a duly elected city council member of the Alpine City Council. I was a member of that body in October 2004. I am one of the plaintiffs in this case.

In February 2005, the Brewster County Grand Jury subpoenaed me to appear to testify regarding an open meetings act violation. I refused, invoking my Fifth Amendment privilege. I was given testimonial immunity, and testified on February 17, 2005. Avinash Rangra and Katie Elms- Lawrence were indicted that day.

I legitimately fear that I could still be indicted in the future for these same acts, so long as 83d District Attorney Frank Brown does not use my grand jury testimony as a basis to indict me.

I am still a member of the Alpine City council. I still want to talk to and discuss public matters with my fellow elected city council members. I would like to communicate with city councilors, and the public, by email, regular mail, telephone, and directly. Because of Mr. Brown's prosecution of my fellow councilors, I am afraid to do this. I am afraid to exercise my First Amendment rights to communicate with my fellow councilors, and the public. I am afraid that if I talk to anyone about public matters, except at a city council meeting, I could be indicted and face a criminal prosecution. This threat to me is

ongoing and real. But for this threat, I would exercise my First Amendment rights to

communicate with the voters and public officials.

Further, affiant sayeth not.

_Anna Monclova_
ANNA MONCLOVA

State of Texas
County of Brewster

Signed and sealed before me, the undersigned authority, appeared ANNA
MONCLOVA, who executed the same for the purposes and consideration set forth
therein.

_Ida E Valles_
Notary Public



**IDA E. VALLES**
Notary Public, State of Texas
My Commission Exp. 01-18-2007