*Do Not Remove From Record Room*

NO. 06-51587

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

---

AVINASH RANGRA and ANNA MONCLOVA, ALL OTHER PUBLIC OFFICIALS
**Plaintiff-Appellants,**

VS.

FRANK BROWN and GREG ABBOTT,
**Defendant-Appellees.**

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS, PECOS DIVISION

---

**RECORD APPENDIX**

U. S. COURT OF APPEALS
**FILED**
APR 26 2007
CHARLES R. FULBRUGE III
CLERK

U. S. COURT OF APPEALS
RECEIVED
APR 26 2007
NEW ORLEANS, LA.

DICK DeGUERIN
Texas Bar No. 05638000
DeGUERIN, DICKSON & HENNESSEY
1018 Preston Avenue, Seventh Floor
Houston, Texas 77002
Telephone: 713-223-5959
Facsimile: 713-223-9231

ARVEL RODOLPHUS PONTON, III
Texas Bar No. 16115170
P.O. Box 9760
Alpine, Texas 79831
Telephone: 432-837-0990
Facsimile: 432-837-0971

ATTORNEYS FOR APPELLANTS,
RANGRA AND MONCLOVA

NO. 06-51587

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

**AVINASH RANGRA and ANNA MONCLOVA,**
**Plaintiff-Appellants,**

**VS.**

**FRANK BROWN and GREG ABBOTT,**
**Defendant-Appellees.**

## APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS, PECOS DIVISION

## RECORD APPENDIX

DICK DeGUERIN
Texas Bar No. 05638000
DeGUERIN, DICKSON & HENNESSEY
1018 Preston Avenue, Seventh Floor
Houston, Texas 77002
Telephone: 713-223-5959
Facsimile: 713-223-9231

ARVEL RODOLPHUS PONTON, III
Texas Bar No. 16115170
P.O. Box 9760
Alpine, Texas 79831
Telephone: 432-837-0990
Facsimile: 432-837-0971

ATTORNEYS FOR APPELLANTS,
RANGRA AND MONCLOVA

# RECORD APPENDIX

Civil Docket ................................................................................................... 1

Record 2-10 (Complaint) ................................................................................ 12

Record 66 (Original Subject E-mails) ............................................................ 21

Record 68 (State Indictment of Ms. Elms-Lawrence) .................................... 22

Record 70 (State Indictment of Mr. Rangra) ................................................. 23

Record 72 (Dismissal of Indictment of Ms. Elms-Lawrence) ........................ 24

Record 74 (Dismissal of Indictment of Mr. Rangra) ..................................... 25

Record 76-84 (Motion by Ms. Elms-Lawrence to Set Aside Dismissal) ....... 26

Record 88-93 (Memorandum Regarding Motion to Set Aside Dismissal) .... 35

Record 125-147 (State Defendants' Motion to Dismiss) ................................ 41

Record 150-152 (State's List of Open Meetings Laws) ................................. 64

Record 152-158 (Brown's Motion to Dismiss) .............................................. 66

Hearing Transcript 52-53 (Statement of the Court) ....................................... 73

Record 310-311 (Order Setting Case for Trial) ............................................. 75

Record 335-336 (Plaintiffs' Requested Remedy) .......................................... 77

Record 393-394 (Court's Denial of Motion to Dismiss) ................................ 78

Trial Transcript 36-37 (Direct Examination of Mr. Brown) .......................... 80

Trial Transcript 67-68 (Direct Examination of Mr. Rangra) ......................... 82

Trial Transcript 93 (Direct Examination of Ms. Elms-Lawrence) ................. 84

Trial Transcript 198-199 (Statement of Mr. Todd) ......................................... 85

Trial Transcript 201-203 (Statements of Messrs. Todd and Houston) ........... 87

Record 453-467 (Findings of Fact and Conclusions of Law) ......................... 90

Record 468-469 (Notice of Appeal) ................................................................ 105

APPEAL

# U.S. District Court [LIVE]
## Western District of Texas (Pecos)
## CIVIL DOCKET FOR CASE #: 4:05-cv-00075-RAJ
### Internal Use Only

Rangra, et al v. Brown, et al
Assigned to: Judge Robert A. Junell
Demand: $0
Cause: 28:2201 Declaratory Judgement

Date Filed: 09/26/2005
Jury Demand: None
Nature of Suit: 950
Constitutional - State Statute
Jurisdiction: Federal Question

## Plaintiff

**Avinash Rangra**             represented by     **Arvel Rodolphus Ponton, III**
Attorney at Law
2301 N. Highway 118
P.O. Box 9760
Alpine, TX 79831
(432) 837-0990
Fax: 432/837-0971
Email:
rodpontonlaw@hotmail.com
*LEAD ATTORNEY*
*ATTORNEY TO BE*
*NOTICED*

**Dick DeGuerin**
DeGuerin & Dickson
1018 Preston Ave.
7th Floor
Houston, TX 77002
(713) 223-5959
Fax: 713/223-9231
Email: ddeguerin@aol.com

A true copy of the original, I certify.
Clerk, U. S. District Court
By _____ Deputy

*LEAD ATTORNEY*
*ATTORNEY TO BE*
*NOTICED*

### Plaintiff

**Anna Monclova**                    represented by **Arvel Rodolphus Ponton, III**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE*
*NOTICED*

**Dick DeGuerin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE*
*NOTICED*

### Plaintiff

**All Other Public**
*All Other Public Officials.*          represented by **Arvel Rodolphus Ponton, III**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE*
*NOTICED*

**Dick DeGuerin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE*
*NOTICED*

V.

### Defendant

**District Attorney Frank D. Brown**                    represented by **J. Steven Houston**
Attorney at Law
P.O. Box 396

2

Marathon, TX 79842
(432) 386-4488
Fax: (432) 386-4203
Email:
ctyatty@speedexpress.net
*LEAD ATTORNEY*
*ATTORNEY TO BE*
*NOTICED*

**James Carlton Todd**
Office of the Attorney
General
P.O. Box 12548
Capitol Station
Austin, TX 78711
(512) 463-2120
Fax: 512/320-0667
Email:
jim.todd@oag.state.tx.us
*LEAD ATTORNEY*
*ATTORNEY TO BE*
*NOTICED*

**Defendant**

**Texas Atty. General Greg**          represented by **James Carlton Todd**
**Abbott**                                              Office of the Attorney
                                                        General
                                                        State of Texas
                                                        P.O. Box 12548
                                                        Capitol Station
                                                        Austin, TX 78711
                                                        (512) 463-2120
                                                        Fax: 512/320-0667
                                                        Email:
                                                        jim.todd@oag.state.tx.us
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE*
                                                        *NOTICED*

3

**Defendant**

**State of Texas,Board of**          represented by **James Carlton Todd**
**Pardons**                                          (See above for address)
*TERMINATED: 03/17/2006*                              *TERMINATED: 03/17/2006*
                                                      *LEAD ATTORNEY*

| Date Filed | # | Docket Text |
|---|---|---|
| 09/26/2005 | | Case assigned to Judge Robert A. Junell (mb1) (Entered: 09/28/2005) |
| 09/26/2005 | 1 | Index of Complaint. (mb1) (Entered: 09/28/2005) |
| 09/26/2005 | 2 | Complaint filed.Receipt 394985 Filing Fee: $ 250.00 (Pages: 9) (mb1) Modified on 09/29/2005 (Entered: 09/28/2005) |
| 09/26/2005 | 3 | Brief by Avinash Rangra, Anna Monclova, All Other Public in support of complaint [2-1] (mb1) (Entered: 09/28/2005) |
| 10/12/2005 | 4 | Unopposed Motion by Greg Abbott, State Of Texas to extend time to file motion to dismiss in lieu of answer and to exceed page limits for brief. (mb1) (Entered: 10/12/2005) |
| 10/17/2005 | 5 | Order granting motion to extend time to file motion to dismiss in lieu of answer and to exceed page limits for brief,the defendant's have until 11/9/05. [4-1] signed by Judge Robert A. Junell (mb1) (Entered: 10/17/2005) |
| 10/19/2005 | 6 | Unopposed Motion by Frank D. Brown to extend time to file answer. (mb1) (Entered: 10/19/2005) |
| 10/21/2005 | 7 | Scheduling order setting Joining of parties, amending of pleadings on 1/4/06 Deadline for filing of all motions 4/26/06 Discovery cutoff 4/12/06 ; Alternate Dispute Resolution Report due by 5/30/06 ;Bench |

| | | |
|---|---|---|
| | | Trial set for 7/17/06 8:30 a.m. motions signed by Judge Robert A. Junell (mb1) (Entered: 10/25/2005) |
| 10/24/2005 | 8 | Order granting motion to extend time to file answer up to 11/7/05. [6-1] signed by Judge Robert A. Junell (mb1) (Entered: 10/25/2005) |
| 11/03/2005 | 9 | Answer by Frank D. Brown (mb1) (Entered: 11/03/2005) |
| 11/09/2005 | 10 | Motion by Greg Abbott, State Of Texas to dismiss (mb1) (Entered: 11/10/2005) |
| 11/16/2005 | 11 | Motion by Frank D. Brown to dismiss (mb1) (Entered: 11/16/2005) |
| 11/21/2005 | 12 | Court Orders the parties to submit an agreed scheduling order by 12/6/05 signed by Judge Robert A. Junell (mb1) Modified on 11/22/2005 (Entered: 11/22/2005) |
| 12/02/2005 | 13 | Plaintiff's affidavit of Bennett Sandlin, counsel, TML. (mb1) (Entered: 12/02/2005) |
| 12/19/2005 | 14 | Amicus Curiae brief of the freedom of information foundation of Texas in support of State defendant's motion to dismiss. (mb1) (Entered: 12/20/2005) |
| 12/20/2005 | 15 | Order setting Motion hearing motion to dismiss [11-1] for 5:00 3/21/06 signed by Judge Robert A. Junell (mb1) (Entered: 12/20/2005) |
| 01/05/2006 | 16 | Motion by Avinash Rangra, Anna Monclova, All Other Public to extend time to file a reply to defendant's motion to dismiss. (mb1) (Entered: 01/05/2006) |
| 01/10/2006 | 17 | Order denying motion to extend time to file a reply to defendant's motion to dismiss. [16-1] signed by Judge Robert A. Junell (mb1) (Entered: 01/11/2006) |
| 01/12/2006 | 18 | Motion by Avinash Rangra, Anna Monclova, All Other Public to extend time to reply to defendant's |

| | | |
|---|---|---|
| | | motion to dismiss. (mb1) (Entered: 01/12/2006) |
| 01/13/2006 | 19 | Second Motion by Avinash Rangra, Anna Monclova, All Other Public to extend time to reply to defendant's motion. (mb1) (Entered: 01/13/2006) |
| 01/17/2006 | 20 | Order granting second motion to extend time to reply to defendant's motion. [19-1] signed by Judge Robert A. (mb1) (Entered: 01/17/2006) |
| 01/17/2006 | | Mooted motions motion to extend time to reply to defendant's motion to dismiss. [18-1] (mb1) (Entered: 04/11/2006) |
| 01/20/2006 | 21 | Motion by Avinash Rangra, Anna Monclova in opposition to defendant's motion to dismiss. (mb1) (Entered: 01/23/2006) |
| 01/23/2006 | 22 | Order resetting defendant's Motion hearing motion to dismiss [11-1] for 5:00 3/14/06 signed by Judge Robert A. Junell (mb1) (Entered: 01/23/2006) |
| 01/23/2006 | 23 | Order cancelling hearing on motion to dismiss by Defendant signed by Judge Robert A. Junell (mb1) (Entered: 01/23/2006) |
| 01/23/2006 | 24 | Affidavit by Avinash Rangra, Anna Monclova in support of Plaintiffs' reply to State's motion to dismiss (mb1) (Entered: 01/23/2006) |
| 01/30/2006 | 25 | Unopposed Motion by Greg Abbott, State Of Texas to extend time ot file reply in support of motion to dismiss. (mb1) (Entered: 01/31/2006) |
| 02/02/2006 | 26 | Response by Frank D. Brown to plaintiff's motion in opposition to defendant's motion to dismiss. [21-1] (mb1) (Entered: 02/02/2006) |
| 02/10/2006 | 27 | Order granting motion to extend time ot file reply in support of motion to dismiss until 2/24/06. [25-1] signed by Judge A. Junell (mb1) (Entered: 02/13/2006) |
| | | |

| | | |
|---|---|---|
| 02/10/2006 | | Letter received from TML and forwarded a copy to the Judge (mb1) (Entered: 02/13/2006) |
| 02/21/2006 | 28 | Unooposed Motion by State Of Texas to exceed page limits for reply brief. (mb1) (Entered: 02/22/2006) |
| 02/22/2006 | 29 | Order granting motion to exceed page limits for reply brief. [28-1] signed by Judge Robert A. Junell (mb1) (Entered: 02/23/2006) |
| 02/23/2006 | 30 | Response by Greg Abbott, State Of Texas in support of motion to dismiss [10-1] (mb1) (Entered: 02/24/2006) |
| 03/09/2006 | 31 | Motion by Avinash Rangra, Anna Monclova for leave to file response to defendant's reply in support of motion to dismiss. (mb1) (Entered: 03/10/2006) |
| 03/09/2006 | 32 | Response by Avinash Rangra et.al., to defendant's reply in support of motion to dismiss. [30-1] (mb1) (Entered: 03/10/2006) |
| 03/13/2006 | 33 | Response by Greg Abbott, State Of Texas to motion for leave to file response to defendant's reply in support of motion to dismiss. [31-1] (mb1) (Entered: 03/13/2006) |
| 03/14/2006 | 34 | Order granting motion for leave to file response to defendant's reply in support of motion to dismiss. [31-1] signed by Judge Robert A. Junell (mb1) (Entered: 03/15/2006) |
| 03/14/2006 | | Motion hearing held for the following motions: [11-1] (mb1) (Entered: 03/15/2006) |
| 03/14/2006 | 35 | Minutes of proceedings for Motion Hearing conducted on 3/14/06 by Judge Edwards. Court Reporter: Todd Anderson (mb1) (Entered: 03/15/2006) |
| 03/17/2006 | 36 | The Court Order's the plaintiff to submit to defendant Abbott and defendant Brown proposed stipulation signed by Judge Robert A. Junell (Entered: |

| | | 03/17/2006) |
|---|---|---|
| 03/17/2006 | 37 | Agreed Order granting motion to dismiss [11-1], granting motion to dismiss [10-1] signed by Judge Robert A. Junell (mb1) (Entered: 03/17/2006) |
| 03/17/2006 | | Terminated party State Of Texas (mb1) (Entered: 03/20/2006) |
| 04/18/2006 | 38 | Unopposed Motion by Avinash Rangra, Anna Monclova, All Other Public to extend time to file evidence related materials (mb1) (Entered: 04/19/2006) |
| 04/21/2006 | 39 | Order granting motion to extend time to file evidence related materials, by April 25 [38-1] signed by Judge Robert A. Junell (mb1) (Entered: 04/24/2006) |
| 04/24/2006 | 40 | Motion by Frank D. Brown for sanctions (mb1) (Entered: 04/24/2006) |
| 04/25/2006 | 41 | Proposed Exhibit list by Avinash Rangra, Anna Monclova (mb1) (Entered: 04/26/2006) |
| 04/25/2006 | 42 | Proposed / Witness List by Avinash Rangra, Anna Monclova (mb1) (Entered: 04/26/2006) |
| 04/25/2006 | 43 | Plaintiff's proposed stipulated facts. (mb1) (Entered: 04/26/2006) |
| 05/02/2006 | 44 | ORDER denying 40 Motion for Sanctions filed April 24, 2006. Signed by Judge Robert A. Junell. (mb1, ) (Entered: 05/02/2006) |
| 05/02/2006 | 45 | RESPONSE re 40 to Motion for Sanctions filed by Avinash Rangra, Anna Monclova, All Other Public. (mb1, ) (Entered: 05/02/2006) |
| 05/02/2006 | 46 | Plaintiff proposed TOMA section to be declared unconstitutional. (mb1, ) (Entered: 05/02/2006) |
| 05/18/2006 | 47 | RESPONSE to plaintiff's proposed exhibit list, witness list and stipulated facts by defendant's Frank D. |

| | | Brown, Greg Abbott.(mb1, ) (Entered: 05/18/2006) |
|---|---|---|
| 06/27/2006 | | TRANSCRIPT of Proceedings held on 3/14/06. Proceedings Transcribed:motion hearing;motion to dismiss. Court Reporter: Todd Anderson. NOTE: Transcript document is not available online. (mb1, ) (Entered: 06/28/2006) |
| 07/21/2006 | 345-48 346 | Plaintiff's proposed witness list.(mb1, ) (Entered: 07/21/2006) |
| 07/21/2006 | 347-49 365 | Trial Brief submitted by plaintiff's.(mb1, ) (Entered: 07/21/2006) |
| 07/21/2006 | | Plaintiff's exhibit D Expunction Briefs.(mb1, ) (Entered: 07/21/2006) |
| 07/24/2006 | 50 366-368 | MOTION to have witness testify telephinically by Avinash Rangra, Anna Monclova, All Other Public. (mb1, ) (Entered: 07/25/2006) |
| 07/24/2006 | 369-51 370 | Plaintiff's proposed witness list. (mb1, ) (Entered: 07/25/2006) |
| 07/24/2006 | 52 371-374 | Plaintiff's supplement to witness list and request to allow witness John Montford to testify telephonically. (mb1, ) (Entered: 07/25/2006) |
| 07/24/2006 | 53 375 | TRANSCRIPT of Proceedings held on 3/14/06. Proceedings Transcribed:motion to dismiss. Court Reporter: Todd Anderson. NOTE: Transcript document is not available online.(mb1, ) (Entered: 07/25/2006) |
| 07/26/2006 | 54 376-378 | Memorandum in Opposition to Motion re 50 MOTION to have witness testify telephonically. (mb1, ) (Entered: 07/26/2006) |
| 07/26/2006 | 55 379-381 | Defendant Frank Brown's objection to plaintiffs' supplement to witness list and request to allow witness John Montford to testify telephonically. (mb1, ) (Entered: 07/26/2006) |

9

| | | |
|---|---|---|
| 07/26/2006 | | Minute Entry for proceedings held before Judge Robert A. Junell : Bench Trial held on 7/26/2006 (Minute entry documents are not available electronically.).(Court Reporter Todd Anderson.) (mb1, ) (Entered: 07/27/2006) |
| 07/26/2006 | | Minute Entry for proceedings held before Judge Robert A. Junell : Bench Trial completed on 7/26/2006 (Minute entry documents are not available electronically.).(Court Reporter Todd Anderson.) (mb1, ) (Entered: 07/27/2006) |
| 07/26/2006 | 56 | Witness List by Frank D. Brown, Greg Abbott. (mb1, ) (Entered: 07/27/2006) |
| 07/26/2006 | 57 | Exhibit List by Avinash Rangra, Anna Monclova, All Other Public.. (mb1, ) (Entered: 07/27/2006) |
| 08/07/2006 | 58 | NOTICE of intention to take oral and video deposition of John Montford by Avinash Rangra, Anna Monclova (mb1, ) (Entered: 08/07/2006) |
| 08/18/2006 | 59 | NOTICE of intention to take oral deposition of John Montford by Anna Monclova, et.al., (mb1, ) (Entered: 08/22/2006) |
| 08/21/2006 | 60 | TRANSCRIPT of Proceedings held on 7/26/06.Proceedings Transcribed:Bench Trial.Court Reporter:Todd Anderson.NOTE:Transcript document is not available online.(mb1, ) (Entered: 08/22/2006) |
| 08/28/2006 | 61 | ORDER denying request for deposition of Greg Hudson Signed by Judge Robert A. Junell. (mb1, ) (Entered: 08/28/2006) |
| 09/01/2006 | 62 | ORDER regarding defendant's motions to dismiss, both motions are denied. Signed by Judge Robert A. Junell. (mb1, ) (Entered: 09/01/2006) |
| 09/01/2006 | | ***Motions terminated: 21 Motion for Miscellaneous Relief filed by Avinash Rangra,, Anna Monclova,. (mb1, ) (Entered: 09/05/2006) |

| 09/05/2006 | | ***Motions terminated: <u>50</u> MOTION filed by Avinash Rangra,, Anna Monclova,, All Other Public,. mb1, ) (Entered: 09/05/2006) |
|---|---|---|
| 09/11/2006 | ●<u>63</u> | MOTION for Extension of Time to File *Agreed Stipulated Facts* by Avinash Rangra, Anna Monclova. (Ponton, Arvel) (Entered: 09/11/2006) |
| 09/20/2006 | ●<u>64</u> | Plaintiffs' proposed findings of fact.(mb1, ) (Entered: 09/20/2006) |
| 09/21/2006 | ●<u>65</u> | STIPULATION of fact by Greg Abbott, State of Texas,Board of Pardons.(mb1, ) (Entered: 09/21/2006) |
| 09/22/2006 | ●66 | TRANSCRIPT of Proceedings held on 8/23/06. Proceedings Transcribed:oral deposition/video. Court Reporter: Michael Johnson. NOTE: Transcript document is not available online.(mb1, ) (Entered: 09/25/2006) |
| 09/25/2006 | ●<u>67</u> | Proposed Findings of Fact by Frank D. Brown, Greg Abbott *and Conclusions of Law*. (Todd, James) (Entered: 09/25/2006) |
| 09/26/2006 | ●<u>68</u> | Proposed Findings of Fact by Avinash Rangra, Anna Monclova. (mb1, ) (Entered: 09/27/2006) |
| 11/07/2006 | ●<u>69</u> | FINDINGS OF FACT AND CONCLUSIONS OF LAW. Signed by Judge Robert A. Junell. (mb1, ) (Entered: 11/07/2006) |
| 11/30/2006 | ●<u>70</u> | NOTICE OF APPEAL by Avinash Rangra, Anna Monclova, All Other Public. Receipt #401603 Filing fee $ 455.(mb1, ) Modified on 12/5/2006 (mb1, ). (Entered: 11/30/2006) |
| 11/30/2006 | ● | Transmission of Notice of Appeal and Docket Sheet to US Court of Appeals re <u>70</u> Notice of Appeal(mb1, ) (Entered: 11/30/2006) |

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### PECOS DIVISION

**FILED**

SEP 2 6 2005

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
DEPUTY CLERK

**AVINASH RANGRA,**
**ANNA MONCLOVA, &**
**All Other Public Officials in Texas,**
    Plaintiffs

**V.**

**CAUSE NO.**

**FRANK D. BROWN,**
    **83d JUDICIAL DISTRICT**
    **ATTORNEY,**
**GREG ABBOTT,**
    **TEXAS ATTORNEY GENERAL, and**
**THE STATE OF TEXAS,**
    Defendants

**P 05CV ☇75**

## PLAINTIFF'S ORIGINAL COMPLAINT,
## REQUEST FOR INJUNCTIVE RELIEF, &
## REQUEST FOR DECLARATORY JUDGMENT

### A. Parties

1.    Plaintiffs, Avinash Rangra, and Anna Monclova, all citizens of the

State of Texas, are residents of Alpine, Brewster County, Texas. They were, and are,

public officials, being elected to the office of city council members of the City of Alpine,

Texas.

2.    Defendant, Brown, a citizen of the State of Texas, and the 83d Judicial District

Attorney, may be served with process at 209 West Holland Ave., Alpine, Texas 79830.

Defendant, The State of Texas, may be served through the Office of the Attorney

General, Austin, Texas.

3.    There are many nonparties to this suit who will be affected by it and could

potentially have a claim that free speech rights are being chilled. These include all public

officials in Texas, both appointed and elected. This is a declaratory judgment action



under **28 U.S.C. § 2201**, et seq., and **42 U.S.C. § 1983** for the purpose of protecting the

First Amendment, U.S. Const., and **Art. I, Sec. 8, TEX. CONST.** free speech rights of

Plaintiffs, and all others similarly situated, from impairment through the Defendants'

application of the criminal provisions of the Texas Open Meetings Act, **Tex. Govt. Code**

**§ 551**, (hereinafter TOMA). TOMA is overbroad and vague, and vests the Defendant

Brown in his official capacity as District Attorney with excess discretion by which he

may chill and has chilled Plaintiffs' free speech rights. In fact, any governmental official

working in the state of Texas is currently affected by this law, and due to its overbreadth

and vagueness, is currently having his or her free speech rights unduly restricted.

### Introduction

4.      TOMA was originally enacted for a beneficial purpose—to keep public

decisions from being made secretly by public officials. No one disputes that this is a

wonderful concept. The problem addressed herein, however, is that in trying to achieve

this just result, the Texas Legislature has drafted and amended the law such that public

officials in Texas, and even private citizens who speak to them, are subject to prosecution

by District Attorneys across Texas for merely discussing public issues, do not clearly

know what is proscribed, and are having their free speech rights chilled by the threat of

prosecution or actual prosecution of their free speech under TOMA.

### B.  Jurisdiction

5.      Because this is a matter arising under **U.S. Const. Amend. I, 28 U.S.C. § 2201**,

and **42 U.S.C. § 1983**, this court has jurisdiction over this matter pursuant to **28 U.S.C.**

**§§ 1331** and **1343**.

13

3

6.      A substantial part of the events or omissions giving rise to this claim have

occurred in the geographical confines of the Pecos Division of the United States District

Court for the Western District of Texas. Further, Defendant Frank Brown resides in the

Pecos Division of the Western District of Texas, and all defendants are residents of the

State of Texas for purposes of venue. Therefore, venue lies in the Pecos Division of the

Western District of Texas. **28 U.S.C. § 1391.**

### C. Facts

7.      Plaintiffs bring this claim for a declaratory judgment under both **Federal Rule of**

**Civil Procedure 57 and 28 U.S.C. §§ 2201, 2202.**

8.      Plaintiffs Monclova and Rangra serve as members of the Alpine City Council.

Monclova was elected on May 15, 2004, to a term that will end in May, 2006. Rangra

was elected originally on May 3, 2003, and was reelected on May 7, 2005 to a term that

will end in May 2007. Katie Elms- Lawrence, referenced below, is not a plaintiff, as she

is no longer a member of the Alpine City council.

9.      On October 21, 2004, Monclova, Payne (another City council member), and

Rangra received an e-mail from Katie Elms-Lawrence, who at that time was also a

member of the Alpine City Council (copy of email attached).

10.     On October 22, 2004, Rangra responded to the prior day's e-mail from Elms-

Lawrence, copying his response to Monclova and Payne.

11.     A political enemy of Rangra and Elms- Lawrence, fellow city councilmember

Nancy DeWitt (who had been losing city council votes 4-1), sought, via open records

request from Sul Ross State University, (where Rangra was employed as a chemistry

professor), copies of Rangra's emails. She then turned these over to D.A. Brown.

14

4

**12.**     On or about February 10, 2005, Defendant Brown subpoenaed Rangra, Elms, Monclova and Payne to testify before the Brewster County grand jury regarding their receipt of the e-mails. All refused to testify, citing their Fifth Amendment privilege.

**13.**     Rangra and Elms were up for reelection in May 2005. Monclova and Payne were up for reelection in May 2006. A quorum of the Alpine City council was four persons. Brown provided both Monclova and Payne with testimonial immunity from the use of their grand jury testimony in a criminal prosecution for violating the Texas Open Meetings Act. Brown chose to target the two members of the four person quorum who were up for immediate reelection, (Rangra and Elms), rather than the two members who were up for election in 2006.

**14.**     On or about 17 February 2005, Brown sought and obtained a grand jury indictment of Rangra and Elms, alleging a criminal violation of the Texas Open Meetings Act. Brown later stipulated that the prosecution was based on the above exchange of emails.

**15.**     Rangra and Elms defended the prosecution, stating that no crime had occurred, and that TOMA, on its face and as applied, violated the First Amendment rights of Rangra and Elms. Rangra and Elms sought a declaration from the state District judges (the 394th Judicial District Judge recused himself in the Rangra case and a visiting Judge, Hon. Peter Peca, was assigned in that case) in each of their cases that TOMA was unconstitutional on its face and as applied, and that the indictments against them did not allege a crime.

**16.**     Before the Judges could rule on the constitutionality of the statute, on May 5, 2005, Brown dismissed the indictment against Rangra and Elms. In a court hearing held

May 9, 2005, Brown noted that the indictment was dismissed without prejudice. Rangra and Elms complained about the dismissal, seeking to set the dismissal aside, in part because the dismissal was without prejudice, leaving Rangra and Elms subject to prosecution in the future should Brown choose to do so.

17.     Plaintiffs Monclova and Rangra continue to maintain e-mail accounts, receive written materials through the United States Postal Service, and to have informal conversations with citizens and fellow elected officials regarding issues of public interest. This is a case capable of repetition, yet evading review.

### D. Declaratory Judgment

18.     The Plaintiffs request declaratory relief in the form of an injunction against enforcement of the criminal penalties of the act at least until such time as a new drafting of the act can be made by the Texas legislature to correct overbreadth and vagueness problems inherent in the act.

19.     Declaratory relief is necessary to prevent the chilling effect on protected speech of government officials until such time as the act makes clear what is proscribed behavior, and does not infringe upon free speech rights.

20.     Plaintiffs also seek declaratory judgment that the criminal provisions of TOMA are unconstitutional, as being violative of the First Amendment to the United States Constitution, and of Article I, Section 8 of the Texas Constitution.

21.     The plaintiffs, being public servants, are elected representatives of the City of Alpine as city council members. They represent the interests of other elected or appointed public officials in Texas.

16

b

22.     The defendant, Brown, acting as the 83d District Attorney for Brewster County, Texas, under color of law, deprived the plaintiffs of their rights under the First Amendment to the United States Constitution, in violation of 42 USC § 1983, and deprived them of their rights to free speech under Article I, Section 8 of the Texas Bill of Rights.

23.     The plaintiffs' actions/statements involved a matter of political, social, or other concern and are constitutionally protected under the First Amendment. Furthermore, plaintiffs' interests in their statements outweigh any interest of the State of Texas in promoting efficient operation and administration of government services.

24.     The Defendant, Brown, acted intentionally to chill plaintiffs' speech, discredit their reputation, and punish them for exercising their free speech rights.

25.     The attached brief [Plaintiff's Brief in Support of Declaratory Judgment] explains in further detail the necessity of such action.

### E. The Act- TOMA

26.     *Sec. 551.144, TEX. GOVT. CODE*, provides criminal penalties for the violation of the act by public officials, should a public official "participate in a closed meeting". *Sec. 551.001* defines meeting as:

> (A) a deliberation between a quorum of a government al body, or between a quorum of a governmental body and another person, during which public business or public policy over which the governmental body has supervision or control is discussed or considered…
>
> or
>
> (B) a gathering at which the members receive information from, give information to, ask questions of, or receive questions from any third person…

17

Deliberation includes a verbal exchange between a member of a public body and another person. *551.001 (2)*.

Deliberation is no longer limited to verbal exchanges, or face to face meetings. AG Opinion GA-0326 (2005). The Act does not provide fair notice of what is proscribed.

An overly zealous prosecutor may indict and seek to convict a public official for discussing public business with fellow elected officials at a Lions Club meeting, for sending an informational email, for sending a letter stating his position on public matters, for discussing public business at the coffee shop with citizens, or for stating his position on public issues. If a public official states his views on public matters on the radio, and a quorum of his public body listens to the radio, a crime has occurred. If a public official runs for reelection, and mails a flyer to all his constituents (including fellow members of his governing body), that he is opposed to a tax increase, a crime has occurred. If a Jeff Davis County commissioner also sits on the Jeff Davis County Underground Water District Board, attends a water board meeting, and talks to the County Judge about public business, a crime has occurred. If a concerned citizen mails a letter opposing a certain action, to a quorum of a body, a crime has occurred. If a city councilor emails his fellow city councilors a proposed agenda and requests an open meeting, a crime has occurred.

27.    TOMA was originally designed to prevent "closed door meetings", so that the public could participate in observing the public's business being conducted. Plaintiffs agree that no public **decisions** should be made in a smoke filled room. However, TOMA, as recently amended, now prevents public officials in Texas from exercising their free speech rights, for fear of being charged with a crime. Public decisions should be made publicly. However, the right of fellow citizens in Texas, to express themselves, or their opinions, should not be chilled just because they take the salutary step of becoming

18

public officials. TOMA, as written and as applied, however, does this. Free speech rights are chilled, or lost, through the application of TOMA. The net sweeps too wide.

### E. **Prayer**

**28.**    For these reasons, plaintiffs ask for judgment against the defendants for the following:

a.  declaratory judgment and injunction that the criminal provisions of TOMA may not be enforced;

b.  declaratory judgment that the criminal provisions of TOMA violate the First Amendment of the United States Constitution, both on their face and as applied;

c.  declaratory judgment that the criminal provisions of TOMA violate Article I Section 8 of the Texas Constitution, both on their face and as applied;

d.  Reasonable attorney fees;

e.  Costs of court;

f.   All other relief the court deems appropriate.

19

9

Respectfully Submitted,

DEGUERIN DICKSON & HENNESSY

**Dick DeGuerin**
1018 Preston Ave., 7th Floor
Houston, Texas 77002
Telephone:     713-223-5959
Facsimile:     713-223-9231
State Bar Card No. 05638000

ROD PONTON

**Rod Ponton**
2301 North Hwy 118
P.O. Box 9760
Alpine, Texas 79831
Telephone:     432-837-0990
Facsimile:     432-837-0971
State Bar Card No. 16115170

ATTORNEYS FOR PLAINTIFFS

Certificate of Service

I hereby certify that I caused the foregoing Plaintiff's Original Complaint, and attachments, to be served upon Defendants in accordance with the Federal Rules of Civil Procedure, and delivered a copy of same to defendants via overnight delivery, on this the ___ day of _Sept_____, 2005.

20
10

**From:**     "Avinash Rangra" <arangra@sulross.edu>
**To:**       "KATIE ELMS LAWERENCE" <katieelms@sbcglobal.net>; "anna monclova"
              <anna_monclova@bbtco.com>; "manuel payne" <manuelp@wirelessfrontier.net>
**Sent:**     Friday, October 22, 2004 6:58 AM
**Subject:**  Re: Call the mayor..Engineer

Hello Katie.....

I just talked with John Voller of Hibb and Todds of Abilene... and invited him to come to the Monday meeting...
I asked him to bring his money man also.... these guys work for Sul Ross... He said... he will be at meeting
Monday....

I'll talk with Tom Brown also after my 8:00 class...

Thanks for the advice..... and I'll talk with Mickey as per your, Anna, and Manuel directions... and arrange the
meeting on Monday....

We must reach some sort of decision   SOOOOOOOOOOOOOOON.


Avinash


Katie.... please correct my first name spellings... Thanks.



 ---- Original Message ----
From: KATIE ELMS LAWERENCE
To: Avanish Rangra ; anna monclova ; manuel payne
Sent: Thursday, October 21, 2004 8:28 PM
Subject: Call the mayor..Engineer


Avinash, Manuel..Anna just called and we are both in agreement we need a special meeting at 6:00pm
Monday...so  you or I need to call the mayor to schedule it( mainly you, she does'nt like me right now
I'm Keri's MOM) ..we both feel Mr Tom Brown was the most impressive..no need for interviewing
another engineer at this time...have him prepare the postphonment of the 4.8 million, get us his firms
review and implementations for the CURE for South Alpine....borrow the money locally and get it
fixed NOW....then if they show good faith and do the job allow them to sell us their bill of goods for
water corrections for the entire city......at a later date..and use the 0 %  amounts to repay the locally
borrowed money and fix the parts that don't meet TECQ standards....We don't have to marry
them...with a life long contract, lets just get engaged!
Let us hear from you both
KT

08/18/2005  13:53    9158376217    DISTRICT CLERK

DISTRICT ATTORNEY REQUESTS A SUMMONS BE ISSUED FOR
THIS DEFENDANT

IN THE 394TH DISTRICT COURT
OF BREWSTER COUNTY, TEXAS

| | |
|---|---|
| THE STATE OF TEXAS | § |
| VS. | § CAUSE NO. 3744 |
| KATIE ELMS-LAWRENCE | § |
| | § |

DEFENDANT:            KATIE ELMS-LAWRENCE
ADDRESS:
DRIVER'S LICENSE NUMBER:
DATE OF BIRTH:
FELONY CHARGE:       OPEN MEETINGS VIOLATION
SECTION:              551.144 Govt. Code
DEGREE:              Class B: $100- $500 fine and/or 1-6
                     months county jail

## INDICTMENT

IN THE NAME AND BY AUTHORITY OF THE STATE OF TEXAS:

The Grand Jury of BREWSTER County, Texas, duly selected,
impaneled, sworn, charged and organized as such at the SEPTEMBER,
2004 Term of the 394th District Court, upon their oaths present in and to
said court, that KATIE ELMS-LAWRENCE, on or about October 22,
2004, and before the presentment of this indictment, in said County and
State, did then and there there, knowingly participate in a closed meeting
of a quorum of a governmental body, to wit, the City Council of Alpine
Texas, of which the defendant was a member and said meeting was not
permitted under the Open Meetings Act;

AGAINST THE PEACE AND DIGNITY OF THE STATE.

_Pam Thurmond_
FOREMAN OF THE GRAND JURY

FILED
At 12:00 o'clock  P  M
Date February 17, 2005
JO ANN SALGADO
District Clerk, Brewster County, TX
By _____  Deputy

22

16:57    DEGUERIN AND DICKSON                                                    P.07

**DISTRICT ATTORNEY REQUESTS A SUMMONS BE ISSUED FOR THIS DEFENDANT**

## IN THE 394TH DISTRICT COURT
### OF BREWSTER COUNTY, TEXAS

THE STATE OF TEXAS              §
                               §
VS.                            §      CAUSE NO. ___3745___
                               §
AVINASH RANGRA                 §


DEFENDANT:                    AVINASH RANGRA
ADDRESS:
DRIVER'S LICENSE NUMBER:
DATE OF BIRTH:
FELONY CHARGE:                OPEN MEETINGS VIOLATION
SECTION:                      §51.144 Govt. Code
DEGREE:                       Class B: $100- $500 fine and/or 1-6
                             months county jail

## INDICTMENT

**IN THE NAME AND BY AUTHORITY OF THE STATE OF TEXAS:**

The Grand Jury of BREWSTER County, Texas, duly selected, impaneled, sworn, charged and organized as such at the SEPTEMBER, 2004 Term of the 394th District Court, upon their oaths present in and to said court, that AVINASH RANGRA, on or about October 22, 2004, and before the presentment of this indictment, in said County and State, did then and there there, knowingly participate in a closed meeting of a quorum of a governmental body, to wit, the City Council of Alpine Texas, of which the defendant was a member and said meeting was not permitted under the Open Meetings Act;

AGAINST THE PEACE AND DIGNITY OF THE STATE.

_Pam Teems_
**FOREMAN OF THE GRAND JURY**

FILED
AT 12:00 o'clock __P__ M
Date _February 17, 2005_
JO ANN SALGADO
District Clerk, Brewster County, TX
By _____ Deputy

CERTIFIED TRUE AND CORRECT COPY CERTIFICATE
STATE OF TEXAS
COUNTY OF BREWSTER
The document to which this certificate is affixed, containing _____ pages, is a full, true and correct copy of the original on file and of record in my office.

ATTEST:
Jo Ann Salgado, District Clerk
Brewster County, Texas
BY _____ DEPUTY

EXHIBIT A

23
70

IN THE 394TH DISTRICT COURT OF
BREWSTER COUNTY, TEXAS

STATE OF TEXAS

V.                                                           NO. 3744

KATIE ELMS-LAWRENCE

## MOTION TO DISMISS

Comes now, the State of Texas, and files this Motion to Dismiss for the
following reason: Witness Manuel Payne has changed his testimony concerning his
receipt of a October 22, 2004 email in contradiction of his testimony before the
Brewster County grand jury which returned the indictment herein.

Respectfully Submitted,

Frank D. Brown
37th District Attorney
P.O. Box 9710
Alpine, Texas 79831
432.837.1218
432.837.5787 Fax
TSB #03122500

## ORDER ON STATE'S MOTION TO DISMISS

This 3rd day of May 2005, came on for hearing the State's Motion to Dismiss
the indictment in the cause for the reasons stated above and the Court having considered
same is of the opinion that said motion should be granted, therefore,

IT IS ORDERED that this cause is dismissed and the defendant is discharged
from any liability in this action.

SIGNED 3rd day of May, 2005.

Judge Dehart

FILED
At 3:10 o'clock P M
Date May 3, 2005

JO ANN SALGADO
District Clerk, Brewster County, TX
By _____ Deputy

24



## IN THE 394ᵀᴴ DISTRICT COURT OF
## BREWSTER COUNTY, TEXAS

**STATE OF TEXAS**

**V.**                                **NO. 3745**

**AVINASH RANGRA**

### MOTION TO DISMISS

       Comes now, the State of Texas, and files this Motion to Dismiss for the following reason: Witness Manuel Payne has changed his testimony concerning his receipt of a October 22, 2004 email in contradiction of his testimony before the Brewster County grand jury which returned the indictment herein

                     Respectfully Submitted

                     Frank D. Brown
                     83ʳᵈ District Attorney
                     P.O. Box 9710
                     Alpine, Texas 79831
                     432.837.1218
                     432.837.5787 Fax
                     TSB #03122500

### ORDER ON STATE'S MOTION TO DISMISS

       This _____ day of May 2005, came on for hearing the State's Motion to Dismiss the indictment in the cause for the reasons stated above and the Court having considered same is of the opinion that said motion should be granted, therefore,

       IT IS ORDERED that this cause is dismissed and the defendant is discharged from any liability in this action.

           SIGNED _9_ day of May, 2005. *in Brewster County TX*

                                 Judge Presiding

**FILED**
At _9:43_ o'clock _A_ M
Date _May 9, 2005_
    JO ANN SALGADO
District Clerk, Brewster County, TX
By _Megan Center_ Deputy

Scanned            VOL. 75 PAGE 0413

25

74

## CAUSE NUMBER 3744

| | | |
|---|---|---|
| THE STATE OF TEXAS | ) | |
| | ) | **IN THE DISTRICT COURT OF** |
| v. | ) | **BREWSTER COUNTY, TEXAS** |
| | ) | **394TH JUDICIAL DISTRICT** |
| KATIE ELMS- LAWRENCE | ) | |

FILED

At 3:53 o'clock ___P___ M

Date *May 4, 2005*

JO ANN SALGADO

District Clerk, Brewster County, TX

By *Megan Christe* Deputy

### DEFENDANT KATIE ELMS- LAWRENCE'S MOTION TO SET ASIDE ORDER GRANTING STATE'S MOTION TO DISMISS

To the Court:

Comes now the defendant Katie Elms- Lawrence, by and through her attorney ROD PONTON, and pursuant to Article 32.02, Code of Criminal Procedure, files this Motion to Set Aside the Order granting the State's Motion to Dismiss, and for cause would show the Court as follows:

### I

The District Attorney filed a Motion to Dismiss on May 3, 2005, presented it to the Court, and sent a press release to the local press announcing all of this, before counsel even learned it had been filed. Counsel learned about it at approximately 3:30 P.M., after being presented with a signed copy of the Motion, and Order granting same, at the district Clerk's office. Counsel was never afforded an opportunity to receive a copy of the Motion, and reply to it. No certificate of service was attached to it. Counsel moves to set aside the order granting the state's Motion to Dismiss.

### II

The constitutional question is ripe for decision. The issue is simple—does the First Amendment allow public officials to communicate with each other, or may the

26

Texas Open meetings *Act be used to prosecute public officials for exercising their constitutionally protected right of free speech?* Because of the importance of this decision to the bench, bar, and to Texas public servants, Defendant Elms- Lawrence (as has Defendant Rangra, in Cause No. 3745), requests that this court set aside and rescind its granting of the State's Dismissal motion, and proceed with the hearings scheduled for May 13, 2005. This objection is timely given that the prosecution did not furnish a copy of the dismissal motion to defense counsel until after it had been presented to the Court and acted upon.

If the Court rescinds the Dismissal, and this case is consolidated with Defendant Rangra's case (Cause No. 3745), then counsel and defendant Elms- Lawrence will be ready to proceed with pretrial hearings with defendant Rangra, on May 9, 2005.

### III

The defendant is a public official. The reasons stated by the District Attorney for filing his motion to dismiss—that Manuel Payne changed his testimony, are baseless. Payne still has testified that he received one email. If receiving an email is a crime, then there is sufficient evidence to proceed. This public official defendant either deserves an acquittal, or a ruling by the Court that the Texas Open Meetings Act is unconstitutional, either on its face, or as applied to the conduct of defendants in this case. She does not deserve to have her case dismissed because the District Attorney blames Manuel Payne.

The constitutional issues involved in this case are too important for it to be dismissed at the whim of the District Attorney. The facts and law in this case are important to the public, and to public officials throughout Texas. Do public officials have the right under the First Amendment to communicate with each other?

Defendant Katie Elms- Lawrence objects to the State's Motion to Dismiss. As a public official, she deserves either an acquittal, or a ruling by the Court on the Constitutionality of the TOMA. She asks the Court to set aside its order granting the State's Motion to Dismiss.

## PRAYER

Wherefore, premises considered, the defendant requests the Court set aside its Order of Dismissal, and thereafter set this case for pretrial hearing, and trial. If the Court desires a hearing on this motion, defendant Elms- Lawrence requests there be a hearing, and ruling, before May 9, 2005, as that is the date set by the Honorable Peter S. Peca for pretrial hearings in the companion case of *State v Rangra*. If the Order of Dismissal is set aside, and either this Court or Judge Peca grants the pending Motions to Consolidate, Elms- Lawrence will be ready to proceed on pretrial hearings on May 9, 2005.

Respectfully Submitted,

**Law Office of Rod Ponton**

**Rod Ponton**
Attorney for Katie Elms- Lawrence
2301 N. Hwy 118
P.O. Box 9760
Alpine, Texas 79831
432-837-0990
432-837-0971 (fax)
SBN# 16115170

<u>Certificate of Service</u>

I certify that a true copy of the above was furnished to Frank Brown, 83d District Attorney, on this 4th day of May, 2005, with the original and one copy with the clerk.

Rod Ponton

29

CAUSE NUMBER 3744

| | | |
|---|---|---|
| THE STATE OF TEXAS | ) | |
| | ) | IN THE DISTRICT COURT OF |
| v. | ) | BREWSTER COUNTY, TEXAS |
| | ) | 394TH JUDICIAL DISTRICT |
| KATIE ELMS- LAWRENCE | ) | |

## DEFENDANT KATIE ELMS- LAWRENCE'S SECOND MOTION TO SET ASIDE ORDER GRANTING STATE'S MOTION TO DISMISS, and BRIEF

To the Court:

Comes now the defendant Katie Elms- Lawrence, by and through her attorney

ROD PONTON, and pursuant to Article 32.02, Code of Criminal Procedure, files this

Motion to Set Aside the Order granting the State's Motion to Dismiss, and for cause

would show the Court as follows:

I

The District Attorney prepared a Motion to Dismiss on May 3, 2005, presented it

to the Court for signature, and filed it with the clerk, before counsel even learned of its

existence. Counsel learned about it at approximately 3:30 P.M., after being presented

with a signed copy of the Motion, and Order granting same, at the district Clerk's office.

Counsel was never afforded an opportunity to receive a copy of the Motion, and reply to

it. No certificate of service was attached to it. No hearing was set on the Motion, which is

proper. It was secret, *ex parte,* and violates this defendant's rights to due process and due

course of law protected by the United States and Texas Constitutions. Counsel moves to

set aside the order granting the state's Motion to Dismiss.

30

The proper way for the matter to have been resolved would have been for the District Attorney to file a Motion, attach a certificate of service, set the matter for a hearing, have a hearing as set by the Court, and then ask the Court to dismiss the indictment, affording Defendant Katie- Elms- Lawrence and her counsel the opportunity to appear and be heard.

## II

Rule 3.05 (b), State Bar Rules, Art. 10, Sec. 9, states:

> A lawyer shall not:
> Communicate or cause another to communicate ex parte with a tribunal for the purpose of influencing that entity or person concerning a pending matter **other than (2) in writing if he promptly delivers a copy of the writing to opposing counsel...** (emphasis added).

The District Attorney never delivered a copy of his Motion to Dismiss to counsel for Elms- Lawrence, either before or after it had been presented to the Court. He never delivered a copy, even after it had been signed by the Court and filed. **See Rule 21a, Texas Rules of Civil Procedure.**

It was a pending matter, and this Court was the tribunal.

## III

The Court must have been under the misimpression that the Motion to Dismiss, was clerical in nature, rather than judicial in nature. Such, however, is wrong. Only a "clerical" act by the Court could have been accomplished without notice and hearing. A "judicial" act by the Court would have required Notice, hearing, and an opportunity to be heard. If the Court was under the belief that the defense agreed with the Motion to Dismiss, or that the Court was required to sign the Order of Dismissal, then the Court was misled by the prosecution.

31

**Art. 32.02, Tex. Code Crim. Proc.,** provides that dismissal may only occur with the "consent of the presiding judge", after "filing a written statement with the papers in the case". Filing a written statement with the papers in the case, as in all pleadings filed, mandates that the Motion to Dismiss be noticed to the other side, and then set for hearing. Such is the due process right afforded to this defendant.

Signing a Motion to Dismiss in the manner done herein must have been clerical, rather than judicial, because a judicial act would only have been proper after notice and hearing, which did not occur in this case.

## III

Each Court has jurisdiction to determine its own jurisdiction. **State v Roberts, 940 S.W. 2d 655 (Tex. Crim. App. 1996); Ex Parte Paprskar, 573 S.W. 2d 525 (Tex. Crim. App. 1978); Am. Jur. Crim. Law Sec. 481.** This court has jurisdiction over criminal matters conferred by virtue of Art. V, Sec. 5, TEX. CONST. **Garcia v Dial, 596 S.W. 2d 524 (Tex. Crim. App. 1980).** There is a presumption against divesting a court of its jurisdiction once it has properly attached, and any doubt is resolved in favor of retaining jurisdiction. **People v Veling, 443 Mich. 23, 504 N.W. 2d 456 (1993).**

The cases cited by the Court do not control this issue. They deal with circumstances where, after proper notice and hearing, the Court had dismissed an indictment, thereby divesting itself of jurisdiction. This case is more like **Smith v State, 801 S.W. 2d 629 (Tex. App. –Dallas 1991),** and **Rodriguez v State, 42 S.W. 3d 181 (Tex. App.- Corpus Christi, 2001).** In **Smith**, the Court inadvertently signed an Order Granting a Motion to dismiss the Indictment, on constitutional grounds. The **Smith** court noted that the Court of Criminal Appeals has distinguished between clerical and judicial

32
ช

errors, see **English v State, 592 S.W. 2d 949, 955 (Tex. Crim. App. 1980).** The **Smith**

court held that there was a record that showed clerical errors, and that the entry of the

Motion to Dismiss was improvident, the trial court did not lose jurisdiction because of the

clerical error, and the Dismissal was properly set aside. Clerical errors may be corrected

at any time, even if more than thirty days have elapsed since entry of final judgment in

the case. **Smith at 632; Alvarez v State, 605 S.W. 2d 615 (Tex. Crim. App. 1980);**

**Comet Al. Co., v Dibrell, 450 S.W. 2d 56, Tex. 1970).**

In **Rodriguez v State, 42 s. W. 2d 181 (Tex. App. C.C. 2001),** a mistaken

granting of a Motion to Quash was set aside, and the trial court was ruled to have

jurisdiction to correct the erroneous entry. Whether an error is clerical or judicial is a

question of law, and the Court may determine such in determining its own jurisdiction.

**Rodriguez, at 186; Allen v State, 20 S.W. 3d 164 (Tex App- Texarkana 2000).**

Since the State did not serve a copy of the Motion on defendants, denying them

their due process rights, defendant Elms- Lawrence objects to the dismissal, and asks the

Court to correct the error, by reinstating the indictments herein.

Another problem is the secret obtaining of the dismissal, prevented defendants

from objecting to the grounds made the basis for the dismissal, and to move that jeopardy

attach to this prosecution. The manner by which the District Attorney secretly obtained

the dismissal, means that a future prosecution could be possible, to which defendants

object.

## IV

The defendant is a public official. Payne still has testified that he received one

email. If receiving an email is a crime, then there is sufficient evidence to proceed. This

33

83

public official defendant either deserves a trial and acquittal, or a ruling by the Court that the Texas Open Meetings Act is unconstitutional, either on its face, or as applied to the conduct of defendants in this case. She does not deserve to have her case dismissed because the District Attorney blames Manuel Payne.

The constitutional issues involved in this case are too important for it to be dismissed at the whim of the District Attorney. The facts and law in this case are important to the public, and to public officials throughout Texas. Do public officials have the right under the First Amendment to communicate with each other?

Defendant Katie Elms- Lawrence objects to the State's Motion to Dismiss.. She asks the Court to set aside its order granting the State's Motion to Dismiss.

### PRAYER

Wherefore, premises considered, the defendant requests the Court set aside its Order of Dismissal, and thereafter set this case for pretrial hearing, and trial.

Respectfully Submitted,

**Law Office of Rod Ponton**

**Rod Ponton**
Attorney for Katie Elms- Lawrence
2301 N. Hwy 118
P.O. Box 9760
Alpine, Texas 79831
432-837-0990
432-837-0971 (fax)
SBN# 16115170

34
8ᵗʰ

NO. 3745

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| V. | § | BREWSTER COUNTY, TEXAS |
| AVINASH RANGRA | § | 394TH JUDICIAL DISTRICT |

## MEMORANDUM DEMONSTRATING THE COURT'S AUTHORITY TO SET ASIDE DISMISSAL

COMES NOW Defendant, Avinash Rangra, through his attorney, Dick DeGuerin, and files this memorandum demonstrating that this Court has jurisdiction to set aside the order of dismissal it signed on May 3, 2005, with the apparent misunderstanding that the parties had conferred before the Motion to Dismiss was filed:

1.    Clerical errors in both judgments and orders are subject to being corrected. *English v. State*, 592 S.W.2d 949, 955-56 (Tex. Crim. App. 1980); *Moore v. State*, 446 S.W.2d 878, 880 (Tex. Crim. App. 1969). An error is clerical in nature if it did not come about as the product of judicial reasoning. *Alvarez v. State*, 605 S.W.2d 615, 617 (Tex. Crim. App. 1980). An error which can be viewed as either clerical or judicial is still subject to correction by the court. *See, Moore*, 446 S.W.2d at 880 ("A judge may commit clerical error as well as judicial error."). Whether an error is judicial or clerical in nature is a question of law. *Alvarez*, 605 S.W.2d at 617; *Allen v. State*, 20 S.W.3d 164, 165 (Tex. App. – Texarkana 2000, no pet.).

2.    This Court was misled by the State when it presented its Motion to Dismiss. The State did not inform this Court that the parties had not conferred before the State filed and presented its motion to dismiss.[1] The Court will note that there is no certificate of service on the

---

[1] The Court's belief that the parties had conferred was mistaken, though reasonable. Texas Disciplinary Rule of Professional Conduct 3.05(b) provides:
(b)    except as otherwise permitted by law and not prohibited by applicable rules of practice or procedure, communicate or cause another to communicate ex parte with a tribunal for the

35

State's motion. As such, the order of dismissal was signed with the mistaken understanding that

Defendant agreed to the basis of the motion and that Defendant did not object to dismissal. Such

a mistake is rightly viewed as a clerical error. This Court has jurisdiction to correct its clerical

errors. Setting aside the order of dismissal will do just that.

Respectfully submitted,

DeGUERIN DICKSON & HENNESSY

Dick DeGuerin
1018 Preston Ave., 7th Floor
Houston, Texas 77002
Telephone:     713-223-5959
Facsimile:     713-223-9231
State Bar Card No. 05638000

ATTORNEY FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served on District
Attorney Frank Brown by facsimile on the 6th day of May, 2005.

Dick DeGuerin

---

purpose of influencing that entity or person concerning a pending matter other than:
(1)     in the course of official proceedings in the cause;
(2)     in writing if he promptly delivers a copy of the writing to opposing counsel or
        the adverse party if he is not represented by a lawyer;
(3)     orally upon adequate notice to opposing counsel or to the adverse party if he is
        not represented by a lawyer.
The State's presentation of its Motion to Dismiss took intentional or, perhaps worse, unwitting advantage of this
Court's rule-based assumption that a party would not seek relief without notice to opposing counsel.

NO. 3745

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| V. | § | BREWSTER COUNTY, TEXAS |
| AVINASH RANGRA | § | 394TH JUDICIAL DISTRICT |

## MEMORANDUM IN SUPPORT OF DEFEDANT AVINASH RANGRA'S OBJECTION TO THE STATE'S MOTION TO DISMISS

COMES NOW Defendant, Avinash Rangra. through his attorney, Dick DeGuerin, files this Memorandum in Support of his Objection to the State's Motion to Dismiss, respectfully showing as follows:

1.    **The State's Motion to Dismiss was improperly filed and presented.** The basic tenets of due process, guaranteed by the state and federal constitutions, provide for timely notice and the opportunity to be heard. The prosecution filed and presented its Motion to Dismiss without notifying Avinash Rangra or his counsel. The State's motion should, for this reason alone, be struck and the dismissal set aside. The District Clerk faxed to counsel for Rangra a signed copy of the Motion and Order of Dismissal at 4:13 PM on May 3, 2005. The District Clerk's file-stamp indicates the motion and order were filed at 4:00 PM on May 3, 2005. The District Attorney did not serve the motion on counsel at all. Counsel thus could not have objected to the motion before it was presented and signed. In fact, had the Clerk not sent a copy, undersigned counsel may have only learned about it by reading it in the newspaper.

2.    **This court has authority to refuse the State's effort to dismiss.** Article 32.02 of the Texas Code of Criminal Procedure, provides:

37
Ga

> The attorney representing the State may, *by permission of the court,*
> dismiss a criminal action at any time upon filing a written statement
> with the papers in the case setting out his reasons for such dismissal,
> which shall be incorporated in the judgment of dismissal. *No case*
> *shall be dismissed without the consent of the presiding judge.*
> (Emphasis added.)

It is discretionary with the Court whether to grant the State's motion. The Court should

exercise its discretion against the State and deny a motion to dismiss when justice requires it.

Although no Texas appellate case law exists, there is precedence for the Court denying dismissal.

In *State of Texas v. Kay Bailey Hutchison,* Cause Nos. 0934774, 0934775, 0934776, and 0934777,

in the 167th District Court for Travis County, the Honorable Judge John F. Onion, former Chief

Judge of the Court of Criminal Appeals, sitting by designation due to the recusal of the regular judge,

denied District Attorney Ronnie Earle's motion to dismiss filed at the conclusion of jury selection.

The court proceeded to trial over the District Attorney's objection because of the importance to the

bench, bar, and public of a judicial determination of that political prosecution. The facts of the

instant cause are eerily reminiscent of Senator Hutchison's prosecution. The importance to the

bench, bar, and public of a judicial determination of the instant cause on its merits outweigh the

interest of the expediency in dismissal.

3.      **The State cannot control when cases are dismissed.** As stated above, there is no

Texas appellate case law explaining the scope of a judge's discretion to deny a motion to dismiss by

the State. However, cases interpreting the federal dismissal provision are instructive. The federal

dismissal provision gives federal judges the discretion to deny a motion to dismiss, just as our state

provision does. Federal Rule of Criminal Procedure 48(a) provides:

> **By the Government.** The government may, *with leave of court,*
> dismiss an indictment, information, or complaint. The government
> may not dismiss the prosecution during trial without the defendant's
> consent. (Emphasis added.)

38

a

4.    The "leave of court" requirement of Federal Rule of Criminal Procedure 48(a) is the functional equivalent of the "consent of the presiding judge" requirement of the state rule. The "leave of court" requirement authorizes a judge to exercise discretion over the propriety of a prosecutorial motion to dismiss. *United States v. Welborn*, 849 F.2d 980, 983 (5th Cir. 1988). The primary purpose of this requirement is to prevent harassment of a defendant by charging and dismissing criminal allegations without placing a defendant in jeopardy. *Id.* A prosecutor's request for dismissal is improper when it is made in bad faith. *Id.* Bad faith arises when a prosecutor is motivated by considerations clearly contrary to the public interest and the public interest is not served by harassing a defendant. *Id.*

5.    The State does not control when a case may be dismissed. Article 32.02 makes it clear that the authority to terminate prosecution resides solely with the trial judge. To hold otherwise would render the clear language of Article 32.02 nonsense. *See, State v. Mancuso*, 919 S.W.2d 86, 87 (Tex. Crim. App. 1996) (where a statue is clear and unambiguous, the legislature must be understood to mean what it expressed).

6.    Article 32.02, like its federal analog, gives the judge authority to review a prosecutor's reasons for dismissal. If the State's motion to dismiss is motivated by considerations clearly contrary to the public's interests, the motion is in bad faith and should be denied. *See, Wellborn*, 849 F.2d at 983.

7.    A state judge has no less control over his court than a federal judge has over his. Here, the State filed a criminal charge of highly questionable merit against a local politician on the eve of an election. There is no doubt that the publicity associated with this charge has had an effect on the opinion of the electorate. Rather than proceeding on the merits, the State sought and obtained dismissal without prior notice to the defense. This Court should not be party to the State's ill-

motivated effort to avoid a public resolution of a matter of substantial public interest. Rangra

deserves his day in court.

Respectfully submitted,

DeGUERIN DICKSON & HENNESSY

_Dick DeGuerin_

Dick DeGuerin
State Bar No. 05638000
1018 Preston, 7th Floor
Houston, Texas 77002
(713) 223-5959 Telephone
(713) 223-9231 Facsimile

## CERTIFICATE OF SERVICE

This will certify that a true and correct copy of the foregoing has been furnished to District
Attorney Frank Brown, by facsimile on this the 6th day of May 2005.

_Dick DeGuerin_

Dick DeGuerin

40

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
PECOS DIVISION

**FILED**

**NOV 0 8 2005**

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
DEPUTY CLERK

| | | |
|---|---|---|
| AVINASH RANGRA, | § | |
| ANNA MONC LOVA & | § | |
| All Other Public Officials in Texas, | § | |
|     Plaintiffs, | § | |
| | § | |
| V. | § | C. A. No. P 05CV75 |
| | § | |
| FRANK D. BROWN, | § | |
|     83rd Judicial District Attorney | § | |
| GREG ABBOTT, | § | |
|     Texas Attorney General, and | § | |
| THE STATE OF TEXAS | § | |
|     Defendants. | § | |

### STATE DEFENDANTS' MOTION TO DISMISS

TO THE HONORABLE COURT:

In support of their motion to dismiss under FED. R. CIV. PRO. 12(b)(1) and -(6), Hon. Greg

Abbott and the State of Texas ("State defendants") respectfully submit the following.

### INTRODUCTION AND NATURE OF THE CASE

This motion serves in lieu of an original answer by the State defendants to Plaintiffs' Original

Complaint, Request for Injunctive Relief, & Request for Declaratory Judgment ("Complaint"). FED.

R. CIV. PRO. 12(a)(4). The Court has granted leave to these defendants to exceed the ten-page limit

under Local Rule CV-7(c). Docket no. 5.

The plaintiffs seek to have this Court become the first federal court ever to declare a state

open meetings law unconstitutional. Mr. Rangra and Ms. Monclova, two members of the Alpine

City Council, claim that the Texas Open Meetings Act, TEX. GOVT. CODE ch. 551, is

unconstitutionally overbroad and vague, thereby offending the First Amendment to the U.S.

Constitution and TEX. CONST. art. I § 8. Because this Court lacks jurisdiction and the plaintiffs cannot state a viable claim on the merits, the suit should be dismissed.

## STANDARDS FOR DISMISSAL

### I.    Federal Rule of Civil Procedure 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1009 (5th Cir. 1998). "[T]he court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (internal quotation marks omitted). "[T]he burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).

### II.    Federal Rule of Civil Procedure 12(b)(6)

Under Rule 12(b)(6), "[t]he court may dismiss a claim when it is clear that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief," that is, when "the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint." *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999). "When deciding a motion to dismiss under Rule 12(b)(6), the district court must accept the plaintiff's factual allegations as true and resolve doubts as to the sufficiency of the claim in the plaintiff's favor." *Vulcan Materials Co. v. City of Tehuacana*, 238 F.3d 382, 387 (5th Cir. 2001). "In other words, a motion to dismiss an action for failure to state a claim admits the facts alleged in the complaint, but challenges plaintiff's rights to relief based upon those facts." *Ramming*, 281 F.3d at 161-62.

42

"However, dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief." *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir.1995) (brackets and internal citations omitted). "The Court is not required to conjure up unpled allegations in order to save a complaint, and conclusory allegations or legal conclusions masquerading as factual contentions will not suffice." *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993) (citations omitted).

## FACTS

According to the plaintiffs' pleadings, Alpine City Council member Katie Elms-Lawrence sent a message by e-mail on October 21, 2004 to three fellow council members, including plaintiffs Rangra and Monclova. Complaint ¶¶ 8-9. The four members constituted a quorum of the council. *Id.* at ¶ 13.

In the message, Elms-Lawrence told members Rangra and Payne that she and council member Monclova had just conferred and agreed on the need for a special meeting of the council. Exhibit (attached to the Complaint).[1] She went on to tell Rangra and Payne that she and Monclova both felt that one of the bidders for a city contract "was the most impressive," so that there was "no need for interviewing another engineer at this time." *Id.* She then outlined further action that needed to be taken to complete the transaction and closed with, "Let us hear from you both." *Id.*

Rangra responded the next day, by e-mail, with copies to Monclova and Payne. *Id.* He promised to talk to the bidder in question and to contact the mayor to schedule a meeting, "as per

---

[1] Documents attached to the complaint may be considered in deciding a Rule 12(b)(6) motion. *United States ex rel Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004). Moreover, to decide jurisdiction on a motion under Rule 12(b)(1), the Court may look beyond the pleadings to resolve disputed facts. *Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir. 2001).

your, Anna [Monclova's], and Manuel [Payne's] directions," and concluded that they "must reach some sort of decision" on the contract soon. *Id.*

In February of 2005, defendant Frank Brown, the district attorney for Brewster County, obtained an indictment against Rangra and Monclova for violating the Texas Open Meetings Act. Complaint ¶ 12. Less than three months later, on defendant Brown's motion, the district court dismissed the charges without prejudice. *Id.* at ¶ 16.

## ARGUMENT

### I.    The Plaintiffs' Claims Are Jurisdictionally Barred.

#### A.    The Plaintiffs' Federal Claims Against the State of Texas are Jurisdictionally Barred by Eleventh Amendment Immunity.

The plaintiffs' claims against the State of Texas, as a named defendant, must overcome the state's Eleventh Amendment immunity. *Quern v. Jordan*, 440 U.S. 332, 341, 99 S.Ct. 1139, 1145 (1979). Absent a valid waiver or abrogation, Eleventh Amendment immunity bars claims for any relief, including prospective and equitable relief, against a state or state agency. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 99 n. 8, 100, 104 S.Ct. 900, 907 n. 8, 908 (1984); *Alabama v. Pugh*, 438 U.S. 781, 781-82, 98 S.Ct. 3057, 3057-58 (1978); *Okpalobi v. Foster*, 244 F.3d 405, 411 (5th Cir. 2001) (en banc).

The plaintiffs may assert their federal claims for declaratory and injunctive relief against the Attorney General in his official capacity. *Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy*, 506 U.S. 139, 146, 113 S. Ct. 684, 688 (1993). But, under the above-cited authorities, they cannot sue the State of Texas in this Court on federal constitutional claims.

**B.     The Plaintiffs' State Law Claims Against Both State Defendants are Jurisdictionally Barred by Eleventh Amendment Immunity.**

This Court lacks jurisdiction over the plaintiffs' claims under the Texas Constitution (Complaint ¶¶ 24-26) against the State defendants. *Pennhurst*, 465 U.S. at 105-06, 104 S.Ct. at 910-11 ("it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law").

**C.     The Plaintiffs Lack Standing.**

**1.     Standing is jurisdictional.**

The issue of "standing is jurisdictional, and may be raised at any time."[2] *Johnson v. City of Dallas*, 61 F.3d 442, 443-44 (5th Cir. 1995); *Allandale Neighborhood Assoc. v. Austin Transp. Study Policy Advisory Cmte*, 840 F.2d 258, 260 (5th Cir. 1988). The plaintiffs, as the parties invoking this Court's jurisdiction, bear the burden of persuasion on standing. *Delta Commercial Fisheries Ass'n v. Gulf of Mexico Fishery Mgmt Council*, 364 F.3d 269, 272 (5th Cir. 2004).

Each plaintiff "must support each element of standing just as [he/she] would support any other matter on which [he/she] bears the burden of proof." *Pelts & Skins, LLC v. Landreneau*, 365 F.3d 423, 427 (5th Cir. 2004). "A plaintiff's failure to establish one of the . . . elements of Article III standing deprives federal courts of jurisdiction to hear the plaintiff's suit." *Delta Commercial Fisheries Ass'n*, 364 F.3d at 273.

**2.     The plaintiffs do not allege facts showing a substantial likelihood of imminent prosecution.**

"In order to demonstrate that a case or controversy exists to meet the Article III standing

---

[2]     "Beyond the constitutional requirements, the federal judiciary has also adhered to a set of prudential principles that bear on the question of standing." *Bauer v. Texas*, 341 F.3d 352, 357 (5th Cir. 2003).

5

requirement when a plaintiff is seeking injunctive or declaratory relief, a plaintiff must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future." *Bauer*, 341 F.3d at 358 (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02, 103 S.Ct. 1660, 1665 (1983)). "Past exposure to illegal conduct" is not enough by itself to satisfy this requirement. *Id. See also Society of Separationists, Inc. v. Herman*, 959 F.2d 1283, 1285-86 (5th Cir. 1992).

The plaintiffs allege that they face a threat of future prosecution because (1) the charges against them were dismissed without prejudice and (2) they "continue to maintain e-mail accounts, receive written materials through the [mail], and to have informal conversations with citizens and fellow elected officials regarding issues of public interest." Complaint ¶ 17; Brief in Support of Plaintiffs' Original Complaint ("Brief") at 3-7. They do not allege that they plan to use these vehicles to conduct public business requiring a vote of a quorum of the council.

The plaintiffs' authorities show that the foregoing is insufficient to establish a serious threat of future prosecution. For example, the plaintiffs rely heavily on *Navegar, Inc. v. United States*, 103 F.3d 994 (D. C. Cir. 1997). Brief at 4-5. However, in concluding that the plaintiff firearms manufacturers had standing to challenge a gun control law, the D. C. Circuit explained:

> The most important circumstance that the district judge overlooked is that the Act in effect singles out the [plaintiff]s as its intended targets, by prohibiting weapons that only the [plaintiff]s make. This fact sets this case apart from most others in which preenforcement challenges to the Act have been held nonjusticiable. It also makes the applicability of the statute to [plaintiff]s' business indisputable: if these provisions of the statute are enforced at all, they will be enforced against these [plaintiff]s for continuing to manufacture and sell the specified weapons . . .

*Id.* at 1000.

The plaintiffs do not and cannot allege that the Open Meetings Act singles them out as its intended targets, by prohibiting conduct that only they engage in. Consequently, neither plaintiff can

6

show that he or she "is immediately in danger of sustaining some direct injury" from the statute that

is "both real and immediate [rather than] conjectural or hypothetical." *National Treasury Employees*

*Union v. U.S. Dept. of the Treasury,* 25 F.3d 237, 242 (5th Cir. 1994) (quoting *Lyons,* 461 U.S. at

101-102, 103 S.Ct. at 1665).

       **3.**     **The plaintiffs do not have standing to assert constitutional rights for conduct in their official capacity.**

As discussed more fully in III below, the plaintiffs challenge a statute that regulates their

conduct while acting in their official capacity as members of the Alpine City Council. In his/her

official capacity, each plaintiff "assumes the identity of," and has no greater rights vis-a-vis the state

than, the City of Alpine. *Hafer v. Melo,* 502 U.S. 21, 27, 112 S.Ct. 358, 362 (1991) (citing *Will v.*

*Mich. Dept. of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 2312 (1989) (citing *Kentucky v.*

*Graham,* 473 U.S. 159, 165-66, 105 S.Ct. 3099, 3104-05 (1985))).

As a political subdivision of the State of Texas, the City of Alpine "has no constitutional

rights to assert against the state of which it is a part." *Tex. Catastrophe Property Ins. Ass'n v.*

*Morales,* 975 F.2d 1178, 1181 (5th Cir. 1992). *See also Town of Ball v. Rapides Parish Police Jury,*

746 F.2d 1049, 1051 n. 1 (5th Cir. 1984) (collecting cases).

       **4.**     **The plaintiffs' suit does not fit within the narrow exception for First Amendment challenges.**

As is evident from part II-A below, the plaintiffs' conduct, as they describe it in their

pleadings, violated the Open Meetings Act. *See Brazos Valley Coalition for Life, Inc. v. City of*

*Bryan, Tex.,* 421 F.3d 314, 323 (5th Cir. 2005) ("To the extent that [plaintiff]s assert . . . that [the

statute] is defective in severable respects that are unrelated and do not apply (and have not been

applied) to activities in which [plaintiff]s have alleged . . . that they engaged in (or desire or desired

7

or plan or planned to engage in), such arguments are not properly before us and [plaintiff]s lack at least prudential standing to raise them"). Consequently, they must rely on an "extremely limited" exception to the usual rules of standing, for claims alleging that a "statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *J & B Entertainment, Inc. v. City of Jackson*, 152 F.3d 362, 366 (5th Cir. 1998) (citing *Broadrick v. Oklahoma*, 413 U.S. 601, 612, 93 S.Ct. 2908, 2916 (1973)).

However, the plaintiffs do not sufficiently differentiate their own situation from the circumstances of third parties they allege (hypothetically) could be illegitimately prosecuted under the Texas Open Meetings Act. *See Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 801-02, 104 S.Ct. 2118, 2127 (1984).

## II.    The Texas Open Meetings Act Embodies Important Principals of Government Responsibility.

Before proceeding with argument on the merits, it is important to understand some key aspects of the law challenged by the plaintiffs.

### A.    The Texas Open Meetings Act Protects Citizens From Secret Government.

The Texas Open Meetings Act was passed to give Texas citizens "government in the sunshine"; that is, to safeguard the public's interest in knowing the workings of its governmental bodies. It is based on the premise articulated by Justice Brandeis: "Sunlight is said to be the best of disinfectants."

*Sierra Club v. Austin Transp. Study Pol.*, 746 S.W.2d 298, 299-300 (Tex. App. – Austin 1988, writ denied) (quoting *Cox Enterp., Inc. v. Bd. of Trustees of Austin Indep. Sch. Dist.*, 706 S.W.2d 956, 960 (Tex. 1986), *and* BRANDEIS, OTHER PEOPLE'S MONEY 92 (1914 ed.) (ellipse omitted)).

Under the Act, "Every regular, special, or called meeting of a governmental body shall be open to the public, except as provided by this chapter." TEX. GOVT. CODE § 551.002. The Alpine

48

City Council is a governmental body under the Act. *Id.* at § 551.001(3)(C). Of significance for this

case, a "meeting" is defined as:

> (A) a deliberation between a quorum of a governmental body, or between a quorum
> of a governmental body and another person, ***during which public business or public
> policy over which the governmental body has supervision or control*** is discussed
> or considered or during which the governmental body takes formal action; *or*
> (B) . . . a gathering:
> (i) that is conducted by the governmental body or for which the governmental body
> is responsible;
> (ii) at which a quorum of members of the governmental body is present;
> (iii) that has been called by the governmental body; and
> (iv) at which the members receive information from, give information to, ask
> questions of, or receive questions from any third person, including an employee of
> the governmental body, ***about the public business or public policy over which the
> governmental body has supervision or control***. *The term does not include* the
> gathering of a quorum of a governmental body at a social function ***unrelated to the
> public business that is conducted by the body***, or the attendance by a quorum of a
> governmental body at a regional, state, or national convention or workshop, if formal
> action is not taken and any ***discussion of public business*** is incidental to the social
> function, convention, or workshop. The term includes a session of a governmental
> body.

*Id.* at § 551.001(4) (emphasis added). The Act makes it a misdemeanor for a member of a

governmental body to either (1) participate in a closed meeting not allowed by the Act or (2)

"knowingly conspire[] to circumvent [the Act] by meeting in numbers less than a quorum for the

purpose of secret deliberations in violation of" the Act. *Id.* at §§ § 551.143-144.

> **B.     State Open Meetings Laws Have Been Regularly Upheld Against Constitutional
>        Attack.**

Texas is one of at least thirty-five states that have open meetings laws for governmental

bodies such as city councils. (The Appendix to this motion lists the other thirty-four.) Although the

statutes vary somewhat in specific details from state to state, they all embrace the principal expressed

in § 551.002, that deliberations among members of governing bodies transacting public business

must be open to the public. *See, e.g., Davis v. East Baton Rouge Parish Sch. Bd.*, 78 F.3d 920, 930-31 (5th Cir. 1996) ("it is essential to the maintenance of a democratic society that public business be performed in an open and public manner and that the citizens be advised of and aware of the performance of public officials and the deliberations and decisions that go into the making of public policy") (quoting Louisiana open meetings law and holding the trial court erred when it entered a confidentiality order "without considering whether the meetings that it ordered complied with the Louisiana Open Meetings Law").[3]

Although state open meetings laws date back to the 1960s and early 1970s (the Texas law was originally enacted in 1973), no federal court has ever held any of these laws unconstitutional. When such laws have been challenged in state court as overbroad and/or vague, under the First Amendment or equivalent state constitutional provisions, they have been regularly upheld. *E.g., see Neu v. Miami Herald Publishing Co.*, 462 So.2d 821, 825-26 (Fla. 1985) ("It is enough to say that the legislature has the power to require open meetings and that petitioners' argument has been rejected by the United States Supreme Court") (citing *Bd. of Pub. Instruction v. Doran*, 224 So.2d 693, 697-99 (Fla. 1969)); *People ex rel. Difanis v. Barr*, 414 N.E.2d 731, 737-38 (Ill. 1980) ("the Act . . . is neither vague, indefinite nor uncertain"); *State ex rel. Murray v. Palmgren*, 231 Kan. 524, 646 P.2d 1091, 1097-1100 (Kan. 1982); *Raton Public Service Co. v. Hobbes*, 417 P.2d 32, 36-37 (N. M. 1966); *Hilliary v. State*, 630 P.2d 791, 794 (Okl. Cr. 1981) ("Any confusion on the part of the [plaintiff]s" as to the law's meaning "results from their tenuous and distorted interpretation of the

---

[3] *See also Feature Realty, Inc. v. City of Spokane*, 331 F.3d 1082, 1086-87 (9th Cir. 2003) (quoting Washington's Open Public Meetings Act); *Leventhal v. Vista Unified Sch. Dist.*, 973 F. Supp. 951, 959 (S. D. Cal. 1997) (quoting California's Brown Act); *Maxey v. Smith*, 823 F. Supp. 1321, 1331 n. 7 (N. D. Miss. 1993) (quoting Mississippi's open meetings law), *appeal dismissed*, 21 F.3d 1108 (5th Cir. 1994) (Table).

50

statute as reflected in their brief"); *Memphis Publ'g Co. v. City of Memphis*, 513 S.W.2d 511, 513 (Tenn. 1974).[4]

Although the foregoing decisions are not binding on this court, the conclusions of experienced jurists applying the same constitutional principals to similar state laws can be helpful for resolving the present case. The holdings of the foregoing cases are sound and the same result is warranted in this case.

### C.     Key Elements of the Texas Act are Also Found in Federal Law.

State open meetings laws are modeled in many respects on the federal "Sunshine Act," 5 U.S.C. § 552b. *See R. R. Com'n of Tex. v. United States*, 765 F.2d 221, 230 (D. C. Cir. 1985) ("The Sunshine Act does not require that meetings be held in order to conduct agency business; [but] if meetings are held, they [must] be open to the public"). The Sunshine Act has never been held to be unconstitutionally overbroad or vague.

Under the federal statute, "the term 'meeting' means the deliberations of at least the number of individual agency members required to take action on behalf of the agency where such deliberations determine or result in the joint conduct or *disposition of official agency business . . .*" 5 U.S.C. § 552b(a)(2) (emphasis added). Consequently, "where the deliberations and discussions among agency members in fact 'determine or result in the joint conduct or disposition of official agency business,' they are meetings to which the Sunshine Act's open-meeting rule applies, no

---

[4] The one exception turned on a circumstance not present in this case. Because the criminal penalties for violations of Montana's open meetings law were in a separate statute, it was not clear that the criminal provision, which retained a previous definition, applied to a "meeting" as defined in a subsequent amendment to the open meetings law. *State v. Conrad*, 412, 643 P.2d 239, 241-43 (Mont. 1982). In the Texas statute, by contrast, the criminal penalties are contained within the Act. TEX. GOVT. CODE §§ 551.143-144.

matter how the agency may characterize them for its own internal purposes." *Pac. Legal Found. v. Council on Environmental Quality*, 636 F.2d 1259, 1266 (D. C. Cir. 1980).

### D. Open Meetings Laws Safeguard Important First Amendment and Other Constitutional Values.

It is ironic that, in support of their claims, the plaintiffs quote a line from the Supreme Court's *Bond* and *Sullivan* decisions, that "debate on public issues should be uninhibited, robust, and *wide-open*." Brief at 10 (emphasis added) (quoting *Bond v. Floyd*, 385 U.S. 116, 135, 87 S.Ct. 339, 349 (1966) (quoting *N. Y. Times v. Sullivan*, 376 U.S. 254, 270, 84 S.Ct. 710, 721 (1964))). The purpose of the Texas Open Meetings Act is to insure that debate leading to decisions on public business by local governing bodies such as city councils is "wide open."

As a consequence, one district court has held that adverse personnel action taken by city aldermen in closed session amounted to a deprivation of substantive due process. *Maxey*, 823 F. Supp. at 1331. *See also Leventhal v. Vista Unified Sch. Dist.*, 973 F. Supp. 951, 960 (S. D. Cal. 1997) (for a school board "[t]o relegate discussion on the education of a community's children to closed, back-room sessions would deprive the public of the most appropriate forum to debate these issues").

### III. The Plaintiffs' Conduct, In their Official Capacity, Of Their Official Duties Is Not "Speech" Protected By The First Amendment.

Relying heavily on *Bond v. Floyd, supra*, the plaintiffs contend that the Open Meetings Act is a content-based restriction on, and prior restraint of, the free speech of citizens who happen to hold office. Brief at 8-11, 21-24. However, the conduct at issue in this case is quite distinguishable from the speech protected in *Bond* and related cases.

In *Bond*, the Supreme Court held that the Georgia Legislature could not punish Rep. Bond

12

for the kind of speech – in that case, criticism of the war in Vietnam and expressions of approval for draft resisters – that would be afforded First Amendment protection "if *made by a private citizen.*" *Id.* at 135, 87 S.Ct. at 349 (emphasis added). This holding is consistent with subsequent jurisprudence on the speech rights of public officials. For this purpose, the rights of elected public officials are the same as those of public employees. *See Rash-Aldridge v. Ramirez*, 96 F.3d 117 (5th Cir. 1996) (per curiam) (member of the Laredo City Council).

Speech by a public employee or official is protected by the First Amendment from adverse action only when the employee or official speaks "primarily in his role as citizen," rather than as a public servant. *Terrell v. Univ. of Tex. Sys. Police*, 792 F.2d 1360, 1362 (5th Cir. 1986). "[S]peech made in the role as [public] employee is [protected] only in limited cases" not applicable to this suit. *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1051 (5th Cir. 1996). *See also Warnock v. Pecos County,* 116 F.3d 776, 780 (5thCir. 1997).

That the topic discussed in October of 2004 by a quorum of Alpine city council members was a matter of public concern, Complaint ¶ 23, does not by itself entitle the deliberations to First Amendment protection. *Terrell*, 792 F.2d at 1362 ("the mere fact that the topic of the [official]'s speech was one in which the public might or would have a great interest is of little moment . . . because almost anything that occurs within a public agency could be of concern to the public"). Instead, the "focus [is] on the hat worn by the [official] when speaking rather than on the 'importance' of the issue." *Gillum v. City of Kerrville*, 3 F.3d 117, 120-21 (5th Cir. 1994).

Regardless of where they are at the time or what means they use to communicate among themselves, when a quorum of the members of a city council exchange views on a matter for which action by a majority vote of the council is required, they are acting and speaking in their official

53
137

capacity as council members rather than as private citizens. Thus, in *Rash-Aldridge*, the Fifth Circuit rejected the § 1983 First Amendment claim against the Laredo city council for removing the plaintiff council member as the city's representative on a regional planning board because she refused to support a measure favored by a majority of the city council.

Like the plaintiffs here, Rash-Aldridge relied on *Bond v. Floyd* and *Miller v. Town of Hull*, 878 F.2d 523 (1st Cir. 1989) (Brief at 10-11). But the Fifth Circuit "agree[d] with the trial court in finding this case more analogous to the situation in *Kinsey v. Salado Indep. Sch. Dist.*, 950 F.2d 988 (5th Cir. 1992) (en banc), in which the school board fired its school superintendent for publicly stating positions contrary to the board's policy choices for the school district." *Rash-Aldridge*, 96 F.3d at 119.

The applicable law is perhaps best summarized by the Kansas Supreme Court, in rejecting a challenge to that state's open meetings law premised on the same arguments advanced by the plaintiffs here:

> [Plaintiff]s' claim reveals a basic misconception regarding the nature of a public official's position. The First Amendment does indeed protect private discussions of governmental affairs among citizens. Everything changes, however, when a person is elected to public office. Elected officials are supposed to represent their constituents. In order for those constituents to determine whether this is in fact the case they need to know how their representative has acted on matters of public concern. Democracy is threatened when public decisions are made in private. Elected officials have no constitutional right to conduct governmental affairs behind closed doors. Their duty is to inform the electorate, not hide from it. The KOMA places no constraints on purely private discussions by public officials. It regulates only the conduct of public business. As such the KOMA is not unconstitutionally overbroad.

*Murray*, 646 P.2d at 1099.

54

**IV.    The Texas Open Meetings Act Is Not Unconstitutionally Overbroad Or Vague.**

Because, as shown above, the "speech" for which Rangra and Monclova were prosecuted is

not protected by the First Amendment, the issues of overbreadth and vagueness are immaterial.

Nevertheless, if they were applicable, the Act would still pass constitutional muster.

Overbreadth and vagueness are related but distinct concepts. *J&B Ent., Inc. v City of*

*Jackson, MS.*, 152 F.3d 362, 366 (5ᵗʰ Cir. 1998). "[I]n cases involving a facial challenge to the

overbreadth and vagueness of a statute, a court should first consider whether the statute is overbroad,

and, assuming that it is not, then whether it is unconstitutionally vague." *CISPES v. Federal Bureau*

*of Investigation*, 770 F.2d 468, 472 (5ᵗʰ Cir. 1985) (citing *Village of Hoffman Estates v. Flipside,*

*Hoffman Estates, Inc.*, 455 U.S. 489, 494, 102 S.Ct. 1186, 1191 (1982)).

**A.    The Texas Open Meetings Act is not Unconstitutionally Overbroad.**

**1.    Overbreadth is a narrow exception, sparingly applied.**

"The First Amendment doctrine of overbreadth is an exception to our normal rule regarding

the standards for facial challenges." *Virginia v. Hicks*, 539 U.S. 113, 118, 123 S.Ct. 2191, 2196

(2003). But the exception is narrow.

> Facial challenges of this sort are especially to be discouraged. Not only do they
> invite judgments on fact-poor records, but they entail a further departure from the
> norms of adjudication in federal courts: overbreadth challenges call for relaxing
> familiar requirements of standing, to allow a determination that the law would be
> unconstitutionally applied to different parties and different circumstances from those
> at hand. Accordingly, we have recognized the validity of facial attacks alleging
> overbreadth (though not necessarily using that term) in relatively few settings, and,
> generally, on the strength of specific reasons weighty enough to overcome our
> well-founded reticence.

*Sabri v. United States*, 541 U.S. 600, 609-10, 124 S.Ct. 1941, 1948 (2004).

"Even though the challenge be based on the First Amendment, the overbreadth doctrine is

not casually employed." *Los Angeles Police Dept. v. United Reporting Pub. Corp.*, 528 U.S. 32, 39, 120 S.Ct. 483, 489 (1999). Because a holding that a statute is unconstitutionally "overbroad" means "that any enforcement . . . is totally forbidden," such a ruling is "manifestly strong medicine," which must be "employed by [a] Court sparingly and only as a last resort." *Broadrick*, 413 U.S. at 611, 93 S.Ct. at 2915. Consequently, "where there are a substantial number of situations to which a statute may validly be applied, we eschew reliance on the overbreadth doctrine." *United States v. Wallington*, 889 F.2d 573, 576 (5th Cir. 1989).

2.     **The plaintiffs must show a substantial overinclusion of protected speech.**

"The overbreadth claimant bears the burden of demonstrating, 'from the text of the law and from actual fact,' that substantial overbreadth exists." *Hicks*, 539 U.S. at 122, 123 S.Ct. at 2198 (brackets omitted). "'To prevail in a facial challenge,' however, 'it is not enough for a plaintiff to show "some" overbreadth'"; instead, "the overbreadth of a statute must not only be real, but substantial as well." *Ashcroft v. Am. Civil Liberties Union*, 535 U.S. 564, 584, 122 S.Ct. 1700, 1713 (2002) (plurality opinion) (brackets omitted).

A finding of "overbreadth" is premised on "a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Broadrick*, 413 U.S. at 612, 93 S.Ct. at 2916. The doctrine was originally fashioned to target a penal statute "which does not aim specifically at evils within the allowable area of state control but, on the contrary, sweeps within its ambit other activities that in ordinary circumstances constitute an exercise of freedom of speech . . ." *Taxpayers for Vincent*, 466 U.S. at 799, 104 S.Ct. at 2125 (1984) (quoting *Thornhill v. State of Alabama*, 310 U.S. 88, 97, 60 S.Ct. 736, 742 (1940)).

16

"In short, there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court for it to be facially challenged on overbreadth grounds." *Taxpayers for Vincent*, 466 U.S. at 801, 104 S.Ct. at 2126. "The constitutional defect of an overbroad restraint on speech lies in the risk that the wide sweep of the restraint may chill protected expression." *Wallington*, 889 F.2d at 576.

A plaintiff cannot carry this burden through far-fetched hypotheticals. *National Endowment for the Arts v. Finley*, 524 U.S. 569, 583-84, 118 S.Ct. 2168, 2177 (1998) ("we are reluctant . . . to invalidate legislation on the basis of its hypothetical application to situations not before the Court"); *J&B Ent.*, 152 F.3d at 367 ("although hypothetical examples in which the Ordinance may be overbroad can be imagined, these examples, in comparison to its legitimate sweep, are not substantial").

> It is clear, however, that the mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge. . . . The bare possibility of unconstitutional application is not enough; the law is unconstitutionally overbroad only if it reaches substantially beyond the permissible scope of legislative regulation.

*Taxpayers for Vincent*, 466 U.S. at 800, 104 S.Ct. at 2126.

### 3.    The plaintiffs' allegations in this case do not show overbreadth.

To show overbreadth, the plaintiffs rely on ludicrous imaginary applications of the Act that, "when compared to its plainly legitimate sweep, [are] neither real nor substantial." *J&B Ent.*, 152 F.3d at 366." *See also CISPES*, 770 F.2d at 472 ("a statute need not fall in toto merely because it is capable of some unconstitutional applications") (citing *Broadrick* at 614, 93 S.Ct. at 2917). The plainly legitimate sweep of the Act is shown in part II above.

For example, the plaintiffs assert that "[t]wo members of a [three member] board talking

17

57

141

about President Bush, at a football game, facially violates the act." Brief at 19. The first obvious response here is that President Bush is unlikely to be a matter of "public business or public policy over which the governmental body has supervision or control." *See* II-A above. The Act would not reach a conversation between board members about President Bush's foreign policy. But if a quorum of the Alpine City Council discuss, without notice or an open meeting, whether to rename city hall as the George W. Bush Building, an action requiring a majority vote of the council, their conversation might run afoul of the statute if it is more than incidental.

In that regard, neither of the two football game hypotheticals (Brief at 19) describes a violation of the Act so long as "any discussion of public business is incidental to the social function . . ." *See* II-A above (quoting TEX. GOVT. CODE § 551.001(4)). Moreover, the reach of the Act is limited by the requirements of (1) a quorum, (2) deliberation, (3) public business, and, for criminal prosecution for conspiracy, (4) intent.

The plaintiffs insist that because of amendments (a) eliminating the requirement of "deliberations" and (b) making it unnecessary for a quorum to be physically present at the same time, a governing body member now risks violating the Act by merely answering the telephone, opening mail, reading a newspaper announcement, or listening to a radio interview. Brief at 14-17, 19-20 (citing, *inter alia*, Attorney General opinions GA-326, JC-313, and JC-307).

Most of the rulings on which the plaintiffs rely to construct their imaginary "parade of horribles"[5] concern section 551.143, which makes it a misdemeanor for a "member or group of

---

[5] *See Gospel Missions of America v. City of Los Angeles*, 419 F.3d 1042, 1050 (9th Cir. 2005) (in rejecting an overbreadth challenge to a criminal statute because the plaintiff "has not demonstrated that [the law] chill[s] a 'substantial' amount of protected speech in relation to its many legitimate applications," agreeing with the trial court that the plaintiff "does not develop its 'parade of horribles'").

58

members of a governmental body [to] *knowingly* conspire[] to circumvent [the Act] by meeting in numbers less than a quorum for the purpose of secret deliberations in violation of [the Act]." *Id.* (emphasis added).

As the Attorney General has explained, a violation of this section requires "proof of [members'] culpable mental state." Tex. Atty. Gen. Op. GA-326, 2005 WL 1190504, *4 (Tex. A.G.). If, for example, a county commissioner "makes successive telephone calls to" two other commissioners (a quorum) to "discuss[] a matter which has already been posted for the next regularly scheduled Commissioners' Court meeting and urges either directly or impliedly that [the other commissioners] vote in a certain way," he would violate the Act only if he is "operating with the requisite culpable mental state," which is "a fact question . . ."[6] *Id.*

> We stress, however, that under section 551.143, there is no violation unless a member or members "knowingly conspire" to circumvent the Act's open meetings requirement by meeting in numbers of less than a quorum. And under section 551.144, a member must "knowingly" participate in a closed meeting.

Tex. Atty. Gen. Op. JC-307, 2000 WL 1731174, *7 (Tex. A.G.).

The holding that deliberations, as defined by section 551.001(2), are not an element of the offense, applies only to the situation prohibited by section 551.001(4)(B), in which a quorum is briefed in a closed meeting[7] by a third party on a matter of public business. A quorum is a requirement for both subsections (2) and (4)(B). Rulings that a quorum need not be physically

---

[6] "Whether any specific behavior violates the Open Meetings Act is generally a question of fact." Tex. Atty. Gen. Op. JC-203, 2000 WL 345900, *2 (Tex. A.G.) (citing *Bexar Medina Atascosa Water Dist. v. Bexar Medina Atascosa Landowners' Ass'n*, 2 S.W.3d 459, 461 n.2 (Tex. App. – San Antonio 1999, pet. denied)).

[7] The plaintiffs posit that the Act could be violated "if a third party attends an *open meeting* and asks questions or makes a statement about board matters." Brief at 15 (emphasis added). But if the meeting is *open*, by definition there is no violation of the Open Meetings Act.

19

present simply recognize the modern realities of teleconferencing and cyber-conferencing, through which a quorum of members are able to deliberate and decide matters without being in each others' physical presence.

"The Open Meetings Act's two definitions of the term 'meeting' include as an element either (i) a deliberation involving a quorum of the governmental body, or (ii) the physical presence of a quorum." Tex. Atty. Gen. Op. GA-0098, 2003 WL 22076938, *2 (Tex. A.G.) "If a quorum was not present or involved in deliberations under the definition of meeting in section 551.001(4), the informational meeting was not a meeting subject to the Open Meetings Act." *Id.* "[T]he holding of serial, closed, quorumless meetings could give rise to a prosecution under section 551.143(a)," *id.* at *3, but only if, as discussed above, the intent of the participants is to circumvent the Act.

**B.    The Texas Open Meetings Act is not Unconstitutionally Vague.**

"Striking down [a law] as facially void for vagueness is a disfavored judicial exercise." *Schleifer ex rel. Schleifer v. City of Charlottesville*, 159 F.3d 843, 853 (4th Cir. 1998). "For criminal statutes 'we employ [a] two-part void-for-vagueness test' ..." *Ford Motor Co. v. Texas Department of Transportation*, 264 F.3d 493, 507 (5th Cir. 2001) (citation and brackets omitted). Under this standard, a statute is constitutional so long as "it 'defines the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.'" *Smallwood v. Johnson*, 73 F.3d 1343, 135-52 (5th Cir. 1996) (brackets omitted).

The Supreme Court has observed that while "[w]ords inevitably contain germs of uncertainty and . . . there may be disputes over the meaning of . . . terms," that does not render a statute

20



unconstitutionally vague. *Broadrick* at 608, 93 S.Ct. at 2913. "[T]here are limitations in the English language with respect to being both specific and manageably brief . . ." *Id.* at 608, 93 S.Ct. at 2913-14. Thus, a law is not unconstitutionally vague if "it requires a person to conform his conduct to an imprecise but comprehensible normative standard." *Village of Hoffman Estates*, 455 U.S. at 495 n. 7, 102 S.Ct. at 1191 n. 7. A statute need not achieve "the wholly consistent academic definition of abstract terms," nor provide "mathematical certainty [in its] language." *CISPES*, 770 F.2d at 476, 477.

> Yet clarity even in a criminal code can be a receding mirage. Thus the vagueness doctrine cannot "convert into a constitutional dilemma the practical difficulties in drawing criminal statutes both general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited."

*Schleifer*, 159 F.3d at 853 (quoting *Colten v. Kentucky*, 407 U.S. 104, 110, 92 S.Ct. 1953, 1957 (1972)).

"Because the [Open Meetings Act] as applied to [Rangra and Monclova] is not vague, [the plaintiffs] may proceed on [their] facial vagueness challenge only if the [Act]'s effect on legitimate expression is 'real and substantial and the language of the [statute] is not readily subject to a narrowing construction by the state courts.'" *J&B Ent.*, 152 F.3d at 368. "'Real and substantial' for a facial vagueness test has the same meaning as for a facial overbreadth challenge. *Id.*

As with their approach to overbreadth, the plaintiffs premise their vagueness challenge on (1) disagreements as to the meaning of certain provisions and (2) hypothetical situations in which they imagine a lack of clarity. That there is room for differences of opinion as to whether particular conduct violates the Act does not render the statute unconstitutionally vague. *Hill v. Colorado*, 530 U.S. 703, 733, 120 S.Ct. 2480, 2498 (2000); *Broadrick* at 608, 93 S.Ct. at 2913.

"A statute is not unconstitutionally vague merely because [plaintiffs] can raise uncertainty about its application to the facts of their case." *Ford Motor Co.*, 264 F.3d at 509. Even if "Texas courts have demonstrated some confusion regarding the" meaning of key provisions (which the State defendants do not concede), "this ambiguity can have no effect on [plaintiffs'] understanding of what conduct is prohibited by Section[s]" 551.001(4) and 551.143-144. *Smallwood*, 73 F.3d at 1351.

"[W]hile there is little doubt that imagination can conjure up hypothetical cases in which the meaning of these terms will be in nice question, because we are condemned to the use of words, we can never expect mathematical certainty from our language." *Hill*, 530 U.S. at 733, 120 S.Ct. at 2498 (brackets added; citation, internal quotation marks, and brackets omitted). Rather, "speculation about possible vagueness in hypothetical situations not before the Court will not support a facial attack on a statute when it is surely valid 'in the vast majority of its intended applications.'" *Id.*

It is thus not enough for the plaintiffs to show, if they could, that the Act is unclear at the outer margins of its potential application. "A statute is unconstitutionally vague 'only where no standard of conduct is outlined at all; when no core of prohibited activity is defined.'" *Ford Motor Co.*, 264 F.3d at 509. *See also Village of Hoffman Estates*, 455 U.S. at 495 n. 7, 102 S.Ct. at 1191 n. 7. As described in II-A above, the Texas Open Meetings Act "sets forth a core of prohibited conduct with sufficient definiteness to guide those who must interpret it." *J&B Ent.*, 152 F.3d at 369.

## CONCLUSION

Because the plaintiffs' suit is jurisdictionally barred, the Court need not reach the merits of the plaintiffs' claims. But if does, the suit should still be dismissed because the conduct for which the plaintiffs were indicted does not constitute speech protected by the First Amendment. Even if

22

the First Amendment applies here, the Texas Open Meetings Act is not unconstitutionally overbroad

or vague. Accordingly, the Court should dismiss the plaintiffs' suit for lack of jurisdiction under

Rule 12(b)(1) or for failure to state a claim on which relief may be granted under Rule 12(b)(6).

            Respectfully submitted,

            GREG ABBOTT
            Attorney General of Texas

            BARRY R. McBEE
            First Assistant Attorney General

            EDWARD D. BURBACH
            Deputy Attorney General for Litigation

            JEFF L. ROSE, Chief,
            General Litigation Division

            JAMES C. TODD
            Texas Bar No. 20094700
            Assistant Attorney General
            General Litigation Division
            P.O. Box 12548, Capitol Station
            Austin, Texas 78711-2548
            (512) 463-2120
            (512) 320-0667 FAX

23

63

## STATE OPEN MEETINGS LAWS

Alaska Open Meetings Law: A.S. 44.62.310-312, *et seq.*

Arizona Open Meetings Law A.R.S. § 38-431, *et seq.*

Arkansas Open Meetings Law: Ark. Code Ann. §25-19-106, *et seq.*

California Open Meetings Act (Brown Act). Cal. Gov't. Codes §54950-54960.5

Colorado Open Meeting/Records Act: CRS-24-72-201

Connecticut Open Meetings Law: Conn. Gen. Stat §§ 1-18a to 1-211.

Florida Open Meetings Law: Florida State Constitution, Article I, §24(b), as amended 1992.

Georgia Open Meetings Act: O.C.G.A. §50-14-1, *et seq.*

Idaho Open Meetings Law: Idaho Code § 9-2340 to 9-2347

Indiana Open Meetings Law: I.C. §§ 5-14-1.5-1 to 5-14-1.5-8

Kentucky Open Meetings Law: K.R.S. 61.810 to 61.850

Maine Open Meetings Law: Maine Rev. Stat. § 403, *et seq.*; and § D-1. 1 MRSA §1005, PL 1975, c. 621, §1, as amended.

Maryland Open Meetings Law: Md. State Gov't. Code Ann. §10-501 - 502.

Massachusetts Open Meetings Law: G.L. c.30A, §§ 11A to 11A ½ ; & G.L. c. 34, §§ 9F to G

Minnesota Open Meetings Law: Minn. Statutes 471.075, *et seq.*

Mississippi Open Meetings Act: Miss. Code Ann. 25-41-1

Missouri Sunshine Law: Mo. Rev. Stat. §§ 610.010 to 610.200

Nebraska Open Meetings Laws: N. Rev. Stat. §§84.1408 to 84.1414

Nevada Open Meetings Law: N.R.S. 241, *et seq.*

New York Open Meetings Law: NY Pub. Off. Law §§ 100 - 111

North Dakota Open Meetings Law: North Dakota Century Code §§44,04 -44.19, *et seq.*

64

Ohio Open Meetings Law: Ohio Rev. Code §121.22 ,*et seq.*

Oklahoma Open Meetings Law: Okla. Stat., tit. 25, § 301, *et seq.*

Oregon Open Meetings Law: ORS 192.610 - 192.695

Pennsylvania Open Meetings (Sunshine) Law: 65 Pa. Cons. Stat. §§ 272-284

Rhode Island Open Meetings Law: R.I. Gen. Laws § 42 -46.1, *et seq.*

South Carolina Open Meetings Law: S.C. Code Ann. § 30-04-60 to 30-4-110

South Dakota Open Meetings Law: S.D.C.L. 1-25-1, *et seq.*

Utah Open and Public Meetings: Utah Code Ann. § 52-4-1, *et seq.*

Vermont Open Meetings Law: 1 V.S.A. § 310

Washington Open Meetings Act (OPMA): RCWA 42.30, *et seq.*

West Virginia Open Meeting Law: WVA Code 6 - 9A1, *et seq.*

Wisconsin Open Meeting Law: Wis. State. § 19.81, *et seq.*

Wyoming Open Meetings Act: Wyo. Stat. §§16-4-401 to 16-4-407

**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
PECOS DIVISION**

FILED

NOV 1 6 2005

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
DEPUTY CLERK

| | |
|---|---|
| AVINASH RANGRA, §<br>ANNA MONCLOVA & §<br>All Other Public Officials in Texas, §<br>    Plaintiffs, §<br> §<br>V. §<br> §<br> §<br>FRANK D. BROWN, §<br>    83rd Judicial District Attorney §<br>GREG ABBOTT, §<br>    Texas Attorney General, and §<br>THE STATE OF TEXAS §<br>    Defendants § | C.A. No. P-05-CV-75 |

## DEFENDANT FRANK BROWN'S MOTION DISMISS

TO THE HONORABLE COURT:

Defendant Frank Brown, 83rd District Attorney of the State of Texas files this

motion to dismiss under Fed. R. Civ. P. 12 (b)(1), 12 (b)(6) and 12 (c) and would show

the court the following:

### STANDARDS FOR DISMISSAL

**I.    Federal Rule of Civil Procedure 12 (b)(1)**

"A case is properly dismissed for lack of subject matter jurisdiction when the

court lacks the statutory or constitutional power to adjudicate the case." *Home Builders*

*Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1009 (5th Cir. 1998).

"[T]he court should consider the Rule 12(b)(1) jurisdictional attack before addressing any

attack on the merits." *Ramming v. United States,* 281 F.3d 158, 161 (5th Cir. 2001)

(internal quotation marks omitted). "[T]he burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.,* 243 F.3d 912, 916 (5th Cir. 2001).

## II.     Federal Rule of Civil Procedure 12(b)(6)

Under Rule 12(b)(6), "[t]he court may dismiss a claim when it is clear that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief," that is, when "the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint." *Jones v. Greninger,* 188 F.3d 322, 324 (5th Cir. 1999). "When deciding a motion to dismiss under Rule 12(b)(6), the district court must accept the plaintiff's factual allegations as true and resolve doubts as to the sufficiency of the claim in the plaintiff's favor." *Vulcan Materials Co. v. City of Tehuacana,* 238 F.3d 382, 387 (5th Cir. 2001). "In other words, a motion to dismiss an action for failure to state a claim admits the facts alleged in the complaint, but challenges plaintiff's rights to relief based upon those facts." *Ramming,* 281 F.3d at 161-62.

"However, dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief." *Blackburn v. City of Marshall,* 42 F.3d 925, 931 (5th Cir. 1995) (brackets and internal citations omitted). "The Court is not required to conjure up unpled allegations in order to save a complaint, and conslusory allegations or legal conclusions masquerading as factual contentions will not suffice." *Fernandez-Montes v. Allied Pilots Ass'n,* 987 F.2d 278, 284 (5th Cir. 1993) (citations omitted).

67

153

### III.    Federal Rule of Civil Procedure 12(c)

The standard for dismissal under Rule 12 (c) is the same as that for dismissal for failure to state a claim under Rule 12 (b) (6). *Johnson v. Johnson*, 385 F. 3d 503, 529 (5th Cir. 2004). The complaint's pleaded facts are accepted as true and are viewed in the light most favorable to the plaintiff. *Johnson*, 385 F. 3d at 529. The motion to dismiss should not be granted unless the plaintiff would not be entitled to relief under any set of facts that he could prove consistent with the complaint. *Johnson*, 385 F. 3d at 529.

### FACTS

According to the plaintiffs' pleadings, Alpine City Council member Katie Elms-Lawrence sent a message by e-mail on October 21, 2004 to three fellow council members, including plaintiffs Rangra and Monclova. Complaint ¶¶8-9. The four members constituted a quorum of the council. *Id.* at ¶13.

In the message, Elms-Lawrence told members Rangra and Payne that she and council member Monclova had just conferred and agreed on the need for a special meeting of the council. Exhibit (attached to the Complaint). [1] She went on to tell Rangra and Payne that she and Monclova both felt that one of the bidders for a city contract "was the most impressive," so that there was "no need for interviewing another engineer at this time." *Id.* She then outlined further action that needed to be taken to complete the transaction and closed with, "Let us hear from you both." *Id.*

---

[1] Documents attached to the complaint may be considered in deciding a Rule 12(b)(6) motion. *United States ex rel Riley v. St. Luke's Episcopal Hosp.* 355 F.3d 370, 377 (5th Cir. 2004). Moreover, to decide jurisdiction on a motion under Rule 12(b)(1), the Court may look beyond the pleadings to resolve disputed facts. *Den Norske Stats Oljeselskap As v. HeereMac Vof,* 241 F.3d 420, 424 (5th Cir. 2001).

68

154

Rangra responded the next day, by e-mail, with copies to Monclova and Payne. *Id.* He promised to talk to the bidder in question and to contact the mayor to schedule a meeting, "as per your, Anna [Monclova's], and Manuel [Payne's] directions," and concluded that they "must reach some sort of decision" on the contract soon. *Id.*

In February of 2005, defendant Frank Brown, the district attorney for Brewster County, obtained an indictment against Rangra and Monclova for violating the Texas Open Meetings Act. Complaint ¶12. Less than three months later, on defendant Brown's motion, the district court dismissed the charges without prejudice. *Id.* at ¶16.

## ARGUMENT

### I.     The Plaintiff's Claims Are Jurisdictionally Barred.

#### A. The Plaintiffs Lack Standing

The Defendant Frank Brown adopts by reference pursuant to Fed. R. Civ. P. 10(c) State Defendants' Motion To Dismiss, Argument ¶ I, C in its entirety.

### II.     The Plaintiffs' Conduct, In Their Official Capacity, Of Their Official Duties Is Not "Speech" Protected By The First Amendment.

The Defendant Frank Brown adopts by reference pursuant to Fed. R. Civ. P. 10(c) State Defendants' Motion To Dismiss, Argument ¶¶ II, III in their entirety.

### III.     The Texas Open Meetings Act Is Not Unconstitutionally Overbroad Or Vague.

The Defendant Frank Brown adopts by reference pursuant to Fed. R. Civ. P. 10(c) State Defendants' Motion To Dismiss, Argument ¶IV in its entirety.

69

155

**IV.    Defendant Frank Brown Has Absolute Immunity From Prosecution Under 42 U.S.C.A. §1983.**

A State prosecuting attorney who acts within the scope of his duties in initiating and pursuing a criminal prosecution has absolute immunity from a civil suit under 42 U.S.C.A. §1983 for alleged deprivations of the defendant's constitutional rights. *Imbler v. Pachtman*, 424 U.S. 409, 427 (1976). Activities of the prosecutor which are intimately associated with the judicial phase of the criminal process are protected. *Imbler*, 424 U.S. at 430. This includes initiating a prosecution and presenting the State's case. *Imbler*, 424 U.S. at 431. This includes the professional evaluation of the evidence assembled and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been made. *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). This includes the prosecutor's discretion to move for dismissal of a case. *Imbler*, 424 U.S. at 423 (citing *Pearson v. Reed*, 44 P. 2d 592, 597 (1935)).

**A.    Plaintiffs' Factual Allegations In The Original Complaint Prove That Defendant Was Acting Within Scope Of His Duties As A State Prosecutor.**

Plaintiff's Original Complaint alleges the following facts:

1.    Defendant, Brown, is the 83rd Judicial District Attorney. ¶2.

2.    The Texas Legislature has drafted the Texas Open Meetings Act such that public officials in Texas are subject to prosecution by District Attorneys. ¶4.

3.    On or about February 10, 2005, Defendant Brown subpoened Rangra, Elms, Monclova and Payne to testify before the Brewster County grand jury regarding their receipt of the e-mails. ¶12.

4.   Brown provided both Monclova and Payne with testimonial immunity
     from the use of their grand jury testimony in a criminal prosecution for
     violating the Texas Open Meetings Act.  ¶13.

5.   On or about February 17, 2005, Brown sought and obtained a grand jury
     indictment of Rangra and Elms alleging a criminal violation of the
     Texas Open Meetings Act.  ¶14.

6.   On May 5, 2005, Brown dismissed the indictment against Rangra and
     Elms.  ¶16.

7.   The Defendant, Brown, acting as the 83rd District Attorney for Brewster
     County, Texas, *under color of law*, deprived the Plaintiffs of their rights
     under the First Amendment to the United States Constitution, in violation
     of 42 U.S.C. §1983 and deprived them of their rights to free speech under
     Article I, Section 8 of the Texas Bill of Rights.  ¶22.

     (emphasis added).

### CONCLUSION

Because the plaintifs' suit is jurisdictionally barred, the Court need not reach the

merits of plaintiffs' claims.  But if the Court does find it has jurisdiction, the suit should

still be dismissed because the conduct for which the plaintiffs were indicted does not

constitute speech protected by the First Amendment.  And if the First Amendment did

apply, the Texas Open Meetings Act is not unconstitutionally overbroad or vague.

Further, the Defendant is a prosecutor for the State of Texas and has absolute immunity

from a civil suit under 42 U.S.C.A. §1983.  Therefore, the Court should dismiss the

plaintiff's suit for lack of jurisdiction under Rule 12 (b)(1) or for failure to state a claim

71

on which relief may be granted under Rule 12 (b)(6) and for Defendant's absolute

immunity under Rule 12(c).

Respectfully submitted

J. STEVEN HOUSTON
P.O. BOX 388
MARATHON, TEXAS 79842
(432) 386-6054
(432) 386-4203 FAX
SBN: 10054300

Attorney for Defendant
Frank D. Brown

## Certificate of Service

I hereby certify that the foregoing document has been sent by First-Class Mail on this 15th day of November, 2005 to:

Dick DeGuerin
1018 Preston Ave. 7th floor
Houston, Texas 77002

Rod Ponton
P.O. Box 9760
Alpine, Texas 79831

James C. Todd
Office of the Attorney General
P.O. Box 12548, Capital Station
Austin, Texas 78711-2548

J. STEVEN HOUSTON

1   your own business or you work for a company, you make a lot of

2   decisions without any kind of limitations on time and place.

3          It's difficult for laymen, once they get to be

4   elected to a governing body, to understand that they have to

5   carry on their business different than they would in their own

6   employment.  That's very difficult.

7          But it's for the benefit of the public and for the

8   sunshine, so the constituents can see what their elected

9   representatives are discussing and deciding.

10          THE COURT:  Here's what I would like us to do:

11          First of all, the Plaintiffs have filed a motion

12   to -- for leave of Court to file response, Defendants' reply in

13   support of motion to dismiss, and then they have their reply in

14   support of motion to dismiss.  The State Defendant then

15   responds to the Plaintiffs' motion for leave to file response

16   to Defendants' reply in support of motion to dismiss.

17          I'm going to allow them -- a response to be filed if

18   it has legal arguments, it's not something -- newly found

19   evidence or anything like that.  So I'm going to grant the

20   Plaintiffs' motion for leave of Court to file a response to

21   Defendants' reply in support of motion to dismiss.

22          And I may send that to Judge Buckmeyer to print in

23   the Texas Bar Journal next time for a reply.

24          With that done, here's what I would like to do:

25   First of all, I don't want to waste y'all's valuable time and

73

1   resources.  Let's just kind of move things along.

2           What I think, what I would like to do, so that

3   whatever decision I make doesn't get sent back to me -- motions

4   to dismiss are just dangerous because they have -- they go up

5   and, you know, you miss one little thing, something like that,

6   and they say, "Well, there was an issue here."

7           This is a case, we've got good lawyers all around,

8   good size.  There is no reason to go back and duplicate

9   "motions for summary judgment."

10          Why don't we try this to the Court, let everybody

11  present whatever factual things you want to present, if there

12  are any fact issues that you do want to present.  Y'all pick a

13  date.

14          If you want to, for instance, put on some of the city

15  council people -- we don't need to take a long time.  In fact,

16  I may limit this -- I don't even think we need to have

17  motions -- I mean, we don't even need to take depositions, I

18  don't think.

19          Mr. DeGuerin, can you think of anybody you would even

20  need to depose?

21          I mean, the facts are the facts in this case.

22          MR. DEGUERIN:  No, sir.  We have submitted several

23  affidavits.

24          THE COURT:  We will take those affidavits as being

25  affidavits.

74

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
PECOS DIVISION

**FILED**

MAR 1 7 2006

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
DEPUTY CLERK

AVINASH RANGRA,                                §
ANNA MONC LOVA &                               §
All Other Public Officials in Texas,           §
    Plaintiffs,                                §
                        §
v.                                             §          P-05-CV-075
                        §
FRANK D. BROWN,                                §
    83rd Judicial District Attorney             §
GREG ABBOTT, Texas Attorney General,           §
    Defendants.                                §

## ORDER

Pursuant to the oral orders entered by this Court in the above-actioned cause in a hearing held on March 14, 2006 at 2:00 P.M., the Court enters the following order.

The Court orders the Plaintiffs to submit to Defendant Abbott and Defendant Brown, and file with the Court, the following no later than April 18, 2006: proposed stipulations of fact; any proposed exhibits for trial (including documents previously filed with the Court, i.e. indictments, affidavits, etc.); expert witnesses, if any, and reports by said expert; and, should the Plaintiffs intend to introduce live testimony, Plaintiffs must notify Defendants who they plan to call to testify and the general substance to which they will testify.

In turn, Defendants shall respond to Plaintiffs' motions, and file with the Court, the following documents no later than May 18, 2006: any objections and/or additions to Plaintiffs' proposed stipulations of fact; any objections to Plaintiffs' proposed exhibits and witnesses; expert witnesses, if any, and reports by said expert; and, should the Defendants intend to introduce live testimony, Defendants must notify the Plaintiffs who they plan to call to testify and the general substance to

36

75

21°

which they will testify.

Plaintiffs shall then have the opportunity to file a reply to Defendants' responses.

Finally, after consulting with the Defendants, the Plaintiffs shall file with the Court a document naming the specific sections of the Open Meetings Act the Plaintiffs want the Court to render unconstitutional, without waiving Plaintiffs' objections to the entire statute. Plaintiffs shall file this information with the Court no later than June 7, 2006.

This case is set for a bench trial on July 26, 2006 at 8:30 A.M.

This order shall supercede all scheduling orders previously entered in the above action.

**IT IS SO ORDERED.**

SIGNED this _16_ day of March, 2006

**ROBERT JUNELL**
United States District Judge
Western District of Texas

76

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
PECOS DIVISION

**FILED**

MAY 0 2 2006

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
DEPUTY CLERK

AVINASH RANGRA,
ANNA MONCLOVA, &
All Other Public Officials in Texas,
    Plaintiffs

        V.                                          CAUSE NO.  P-05-CV-75

FRANK D. BROWN,
      83d JUDICIAL DISTRICT
      ATTORNEY,
GREG ABBOTT,
      TEXAS ATTORNEY GENERAL, and
THE STATE OF TEXAS,
    Defendants

## PLAINTIFF' PROPOSED TOMA SECTION
## TO BE DECLARED UNCONSTITUTIONAL

To the Court:

    Should the Court declare that part of the Texas Open Meetings Act is

unconstitutional, as violative of the First Amendment to the United States Constitution,

then Plaintiffs propose the following sections of section 551, Texas Government Code, be

struck down:

        Sec. 551.001 (2) and (4)

        Sec. 551.144.

77

335

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### PECOS DIVISION

**FILED**

**SEP 0 1 2006**

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

| | |
|---|---|
| AVINASH RANGRA, | § |
| ANNA MONC LOVA & | § |
| All Other Public Officials in Texas, | § |
|     Plaintiffs, | § |
| | § |
| v. | §    **P-05-CV-075** |
| | § |
| FRANK D. BROWN, | § |
|     83rd Judicial District Attorney | § |
| GREG ABBOTT, Texas Attorney General, | § |
|     Defendants. | § |

## ORDER REGARDING DEFENDANTS' MOTIONS TO DISMISS

**BEFORE THE COURT** are the State Defendants' Motion to Dismiss filed November 9,

2005 (Doc. 10),[1] Defendant Frank Brown's Motion to Dismiss filed November 16, 2005 (Doc. 11),

Plaintiffs' Motion in Opposition to Defendants' Motion to Dismiss filed January 20, 2006 (Doc. 21),

and various replies and responses. The Court held a phone conference with Plaintiffs' counsel and

Defendants' counsel on August 31, 2006. After due consideration, the Court finds the following

order shall now enter.

**IT IS HEREBY ORDERED** that Defendant Frank Brown's Motion to Dismiss is **DENIED**

**WITHOUT PREJUDICE.**[2]

**IT IS HEREBY ORDERED** that the State Defendants' Motion to Dismiss is **DENIED**

---

[1] The State Defendants' Motion to Dismiss was filed on behalf of the two State Defendants in this action, specifically Greg Abbott, Texas Attorney General, and the State of Texas. Subsequently, an agreed order dismissing the claims against the State of Texas was entered into by the parties and signed by the Court on March 17, 2006 (Doc. 37).

[2] Defendant Frank D. Brown filed an answer with the Court on November 3, 2005 (Doc. 9).

K:\Text\Cory\Civil\Rangra v. Brown P-05-CV-075\rangra_mtd_deny.wpd

78

7ᶜᵍ³

**WITHOUT PREJUDICE.** However, the Court will treat State Defendant Greg Abbott's Motion

to Dismiss as an answer, and such answer will be deemed timely filed by the Court.

**SIGNED** on this _31_ day of **AUGUST, 2006.**

ROBERT JUNELL
United States District Judge
Western District of Texas

79

1    into legal argument, rather than factual testimony.

2            THE COURT:  Sustained.  The objection is sustained.

3    BY MR. DeGUERIN:

4    Q.   Well, do you believe that you are entitled as a -- or

5    required as an elected district attorney to interpret the Texas

6    Open Meetings Act, where it is uncertain as to the text, and

7    apply your discretion in interpreting the law?

8    A.   I don't believe so, sir.

9    Q.   Is it within your discretion to determine whether such an

10   exchange violates the law?

11   A.   I think a prosecutor has absolute discretion.  Under

12   common law, we are vested with absolute discretion on

13   prosecutorial decisions.  And it's basically unchecked.

14           So I have discretion on every case that comes across

15   my desk, every statute under the Penal Code.  It's all

16   discretionary.  Every prosecutor in the state of Texas has that

17   discretion.

18   Q.   Well, let's change the scenario just a little bit.  There

19   is an open forum conducted by -- let's say the rotary club.

20   All the members of the city council are invited to that open

21   forum.

22           They come and they're asked, "How do you feel about

23   the water issue?"

24           Each one of them stands up and says, "Here's how I

25   feel about the water issue."

80

1          You've got a quorum there.  They're involved in an

2    exchange of ideas.  They're speaking, making a political

3    speech, taking a position.

4          Does that violate, in your opinion, the Texas Open

5    Meetings Act?

6    A.    Yeah, it could.  That could be a problem.

7    Q.    Well, you say it could, you qualify it.  What makes the

8    difference?

9    A.    Well, any -- any criminal activity, it's not black or

10   white many times.  So there's a sliding -- sliding -- any case,

11   any statute, you know, you can change the facts a little bit

12   and change the outcome.  So you can have a violation of the

13   statute but not have a prosecutable case.

14   Q.    Well, let's assume that the facts are all provable as I

15   have set them out.  So it's not a question of a problem of

16   proof.

17         Then is it up to the discretion of the prosecutor

18   whether to prosecute, under the circumstances I've just

19   described to you?

20   A.    Well, I don't think a grand jury is going to indict that

21   case.  That's -- as a practical matter, that's what's going to

22   happen.  That case is not going to be indicted by a grand jury.

23   Q.    And that's --

24   A.    I probably wouldn't take that case to the grand jury.

25   Q.    You probably would or would not?

*81*

1    because you feel the danger of prosecution, refraining from

2    expressing yourself, at least in e-mails?

3                    MR. TODD:  Objection.  Leading even for a bench

4    trial.

5                    THE COURT:  Sustained.

6    BY MR. DeGUERIN:

7    Q.    How. do you feel about that?

8    A.    About the --

9    Q.    About using e-mail now that you've been indicted once and

10   might still be indicted again according to the argument that

11   the State made at your appeal.

12   A.    That -- that is another reason.  Of course, before that I

13   quit using my e-mail to forward information, receive

14   information on the issues that we would cover public as an

15   elected official.

16   Q.    By the way, did you attend the oral arguments before the

17   Court of Appeals in El Paso, where the state was appealing your

18   expunctions?

19   A.    Yes, sir.

20   Q.    And did you hear the argument made by the State, that the

21   statute hadn't run yet and you might still be indicted?

22   A.    Yes, sir.

23   Q.    How did that make you feel about your ability to express

24   yourself as an elected representative of the people?

25   A.    After what Mr. Steve Houston said at that meeting, I

1    almost asked my wife to get me a glass of water because it was

2    so, what I would say, puzzling to me, that the D.A. dropped the

3    charges, the Judge's -- or the expunction of the charges, and I

4    was not given an opportunity to defend myself after the

5    indictment.

6           And I'm still being screened, probably, as to what I

7    say, what I don't say.  And I would not even know what I said,

8    if I say, is an offense or not.  So that limits my ability as a

9    person to act and behave normally.

10   Q.   Briefly, tell us the things that you had to go through

11   that give you pause, that is, about what the indictment caused

12   you to have to do.

13   A.   I didn't understand the question.

14   Q.   Yeah.

15   A.   Would you please repeat it?

16   Q.   Did you have to hire a lawyer?  Did you have to defend

17   yourself?  Go through all the business of being under

18   indictment?

19   A.   Yes, sir.

20          After I was issued the subpoena to appear before the

21   grand jury -- it happened at my office at Sul Ross State

22   University.  And either that day, in the evening or later on,

23   but before I appeared before the grand jury, I called the

24   district attorney and asked him what it's all about, because

25   the subpoena did not say anything about any subject.

*83*

Todd Anderson, RMR, CRR                          (432) 686-0605

1          THE COURT:  Okay.  Ms. Elms-Lawrence.

2          THE CLERK:  Raise your right hand.

3          (The witness was sworn)

4          THE CLERK:  Have a seat.

5          THE COURT:  While Ms. Elms-Lawrence is taking her

6    seat in the witness chair, she has been a faithful member of

7    the jury panel, of the petit jury panel here, for the last

8    three or four months.  I would see her nearly every month as

9    she would be on the panel, as lawyers would be selecting the

10   jurors.  I don't think --

11          Did you ever get selected on a jury?

12          THE WITNESS:  No.

13          THE COURT:  Okay.

14          MR. DeGUERIN:  We've heard both of those.

15          THE COURT:  All right.  You may proceed.

16        KATIE ELMS-LAWRENCE, PLAINTIFFS' WITNESS, SWORN

17                    DIRECT EXAMINATION

18   BY MR. DeGUERIN:

19   Q.   State your name for the record, please.

20   A.   Katie Elms-Lawrence.

21   Q.   Ms. Elms, were you a member of the Alpine city council at

22   one time?

23   A.   Yes, sir.  For one two-year term, from '03 to '05.

24   Q.   So you were a member during the time of the investigation

25   into the Open Meetings Act alleged violations?

84

1    action against the person for doing it.  If it's not protected

2    by the First Amendment, then that's not an issue.

3         So then it goes -- comes down to the difference

4    between elected officials and public employees.  The only

5    difference for purposes of this issue is that the elected

6    officials, such as the Plaintiffs in this case, were employed

7    by the people directly, through a vote, an election; whereas,

8    the employees that were at issue in *Pickering* through *Garcetti*

9    were employed by the people indirectly through intermediaries.

10        But ultimately it goes through an elected official

11   who appoints the management, who appoints the supervisor, who

12   hires the employee.  But there is still ultimately -- just as I

13   am, we are all ultimately employed by the people.

14        And the teaching of those cases is, when the speech

15   in question is speech, that's part of your job, not that you're

16   just uttering as a private citizen your views, but part of your

17   job, then the First Amendment doesn't protect it.  Other things

18   might, but the First Amendment doesn't.

19        But if they could -- if there were protected speech

20   at issue, that would bring us to their challenge of overbreadth

21   and vagueness.

22        It's important first to note that what overbreadth

23   and vagueness do not turn.  They don't -- the constitutional

24   prohibition against overbreadth and vagueness does not turn on

25   whether there can be a difference of opinion on the meaning of

85

1  the law.  If that were it, hardly a law would survive.

2         It does not turn on whether -- on an individual's

3  subjective overreaction.

4         So if some council member who has been prosecuted

5  says, "Oh, my gosh, I want to just stay home.  I don't even

6  want to go to the grocery store and talk to somebody," that has

7  nothing to do with whether the statute is overbroad or

8  constitutional.  And it doesn't turn on whether conservative

9  legal advice might keep you away from it.

10         It's not enough that at the margins of the statute

11  there's room for disagreement or there's uncertainty.

12  Overbreadth, in the cases I've cited to you, requires that the

13  statute that's challenged must reach a substantial amount of

14  protected speech in proportion to its legitimate applications.

15         The Open Meetings Act, most of its applications, even

16  a 551.144 and even of the two challenged definitions, most of

17  their applications are very obviously things the State can

18  prohibit, that a quorum can't get together and decide in a

19  closed meeting how to conduct public business.

20         These hypotheticals we've heard about, most of which

21  haven't come up and are never prosecuted, are at the margins.

22         The record here shows that thousands -- scores of

23  thousands of public meetings subject to the act take place

24  every year; yet, less than a dozen people get prosecuted.

25         If vagueness -- in order to be unconstitutionally



1    And for better or for worse -- and this is a public

2    policy choice.  And a lot of agencies don't like this.

3    Nevertheless, the legislature said, "You know what?  These

4    staff briefings also have to be an open meeting."  And that's

5    the context in which the Attorney General says exchange doesn't

6    have to be two way.

7         It's in that circumstance, where they're passively

8    listening to a staff briefing, it's in that context when they

9    say that the violation can involve someone who's not a member

10   of the body.

11        Yes, verbal, the word "verbal," includes written and

12   spoken.  And that's as a matter of the English language.  That

13   is nothing the Attorney General invented.

14        The burden would be on someone who tries to say the

15   word "verbal" only means orally.  It's never meant that.  It

16   comes from the Latin word for word.  It just means use of

17   words.

18        Strict liability, I think that's a bit of a misnomer.

19   The act still has to be knowing.

20        So for purposes of 551.144, what the Court said in

21   *Tovar* is, if you know that you're part of a quorum of your

22   governing body, and if you know that you're talking about

23   public business and conducting public business, and you know

24   that there hasn't been a properly posted open meeting, the

25   prosecutor doesn't have to take that additional step and say,

87

1    "Oh, and by the way, you also intended to violate the act,"

2    because it's certainly a form of recklessness if it's not an

3    intentional violation of the act.  That's, I think, certainly a

4    different kind of strict liability.

5         The fact that Texas imposes criminal sanctions just

6    shows that the people of Texas and their elected

7    representatives are very serious about this statute.  And for

8    good reason.

9         The legislature has made its public policy choice,

10    and that public policy choice should not be undone through the

11    vehicle of a constitutional challenge.

12         THE COURT:  Thank you.

13         MR. TODD:  Thank you.

14         THE COURT:  Mr. Houston.

15         MR. HOUSTON:  All I would point the Court to -- I

16    think it's Exhibit 3 which was the Open Meetings Handbook.  But

17    on page 66, the last paragraph, it outlines -- I don't know if

18    it's same one.  This is the 2006 handbook.  I don't know which

19    one --

20         MR. TODD:  That is 2004 that was admitted into

21    evidence.

22         MR. HOUSTON:  Oh, okay.  Well, I'm sorry.  Maybe

23    that's going to be different.

24         But, anyway, they talked about the *Tovar* case, and

25    the legislature addressed that in 1999, and they amended 144

88

1  and added subsection (C) to give elected officials an

2  affirmative defense.

3          Basically, if the city attorneys, like the ones that

4  have testified, give a written opinion to their elected

5  members, that they are not holding a closed meeting in

6  violation, they can assert that as an affirmative defense, or

7  any other opinion from the Attorney General's Office or any

8  opinion of the Court that is made of record.

9          THE COURT:  Thank you very much.

10         Mr. DeGuerin, anything to wrap up quickly?

11         MR. DeGUERIN:  May we confer?

12         (Pause)

13         THE COURT:  Anything else, Mr. DeGuerin?

14         MR. DeGUERIN:  Professor Olson will address you.

15         THE COURT:  All right.  Professor Olson.

16         PROFESSOR OLSON:  Thank you, Your Honor.

17         May it please the Court.

18         The *Pickering* through *Garcetti* cases do, in fact,

19  address protected speech.  The specific quote that is given in

20  our briefing comes from the *Conick versus Myers* case in which

21  the Court very specifically distinguishes between unprotected

22  speech and speech that is not going to lead to an action by a

23  former public employee against the employer who has taken

24  adverse job action.

25         So there is clearly a distinction that is being drawn



IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
PECOS DIVISION



AVINASH RANGRA, ET AL.,               §
  Plaintiffs,                §
       §
V.                                     §  NO. P-05-CV-075
       §
FRANK D. BROWN, ET AL.                 §
  Defendants.                 §

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

On July 26, 2006, the above-entitled cause of action was tried before the Court. After

considering the weight and credibility of all the evidence and the respective arguments of the parties,

the Court makes the following findings in accordance with Rule 52(a) of the Federal Rules of Civil

Procedure.

## BACKGROUND

Avinash Rangra and Anna Monclova ("Plaintiffs") are city council members and public

officials in the City of Alpine, Texas. Plaintiffs seek a declaratory judgment action under 28 U.S.C.

§ 2201, et seq. Further they allege violations of 42 U.S.C. § 1983 and Art. I Sec. 8 of the Texas

Constitution. Plaintiffs argue their free speech rights and those of other public officials were impaired

through the Defendants' application of the criminal provisions of the Texas Open Meetings Act,

Texas Government Code § 551.144.

Plaintiffs allege Texas Government Code § 551.001(1) and (4) and § 551.144 ("TOMA")

are overbroad and vague, and vest Defendant Brown in his official capacity as District Attorney in

Alpine with excess discretion by which he may chill and has chilled Plaintiffs' free speech rights.

Further, Plaintiffs argue that any governmental official working in the state of Texas is currently

1

affected by this law, and due to its overbreadth and vagueness is currently having his or her free speech rights unduly restricted.

Plaintiffs concede that the TOMA was enacted for a beneficial purpose, specifically, to keep public decisions from being made secretly by public officials. However, the Plaintiffs allege that, in trying to achieve this result, the Texas Legislature has drafted and amended the law such that Texas public officials, and even private citizens who speak to them, are subject to prosecution by district attorneys across Texas for merely discussing public issues. Further, Plaintiffs argue public officials, as here, do not know what is proscribed, and as such are having their free speech rights chilled by the threat of actual prosecution of their free speech under the TOMA.

Plaintiffs bring this action against Frank D. Brown, in his official capacity as District Attorney for the 83rd Texas Judicial District, and Greg Abbott, in his official capacity as Texas Attorney General ("Defendants"). The Plaintiffs originally named the State of Texas as a Defendant in this action. However, the parties entered into an Agreed Order to Dismiss on March 17, 2006 (Doc. 37), in which the parties agreed to dismiss Plaintiffs' claims against the State of Texas in their entirety.

Plaintiffs seek a declaratory judgment and injunction that (1) the criminal provisions of the TOMA may not be enforced; (2) the criminal provisions of TOMA violate the First Amendment of the United States Constitution, both on their face and as applied; and (3) the criminal provisions of TOMA violate Article I Section 8 of the Texas Constitution, both on their face and as applied.

In response, the Defendants first argue the Plaintiffs' claims are jurisdictionally barred.[1] Specifically, Defendants argue that Plaintiffs' claims are barred by Eleventh Amendment immunity,

---

[1] Texas Attorney General Greg Abbott and the State of Texas, or "State Defendants," filed a Motion to Dismiss on November 9, 2005 (Doc. 10) in lieu of filing an original answer. In Defendant Brown's Motion to Dismiss, filed November 16, 2005 (Doc. 11), Defendant Brown largely adopted by reference the arguments made in the State Defendants' Motion to Dismiss.

2

91

and also that the Plaintiffs lack standing to challenge the statute. Second, Defendants argue the

TOMA embodies important principles of government responsibility, in that the TOMA protects

citizens from secret government. Third, Defendants argue the Plaintiffs' conduct, acting in their

official capacity, is not "speech" protected by the First Amendment. Finally, Defendants assert the

TOMA is not unconstitutionally overbroad or vague.

## FINDINGS OF FACT

1.      Venue is proper in the Pecos Division of the Western District of Texas.

2.      The City of Alpine, located in Brewster County, Texas, is governed by a city council of five

members and an elected mayor. Four members of the city council constitute a quorum (it is possible

that three members would constitute a quorum; however, this is not relevant to the present case).

3.      In October, 2004, the decision to award a contract to an engineering firm to design and

implement water improvements for the south end of Alpine was pending before the Alpine City

Council.

4.      In October, 2004, Katie Elms-Lawrence, Avinash Rangra, Anna Monclova, Manuel Payne,

and Nancy DeWitt were members of the Alpine City Council.

5.      Monclova was elected on May 15, 2004, to a term that ended in May, 2006. Rangra was

elected originally on May 3, 2003, and was reelected on May 7, 2005, to a term that will end in May,

2007. Rangra continues to serve on the Alpine City Council.

6.      On October 21, 2004, Monclova, Rangra, and Payne received an e-mail from Katie Elms-

Lawrence. The text of the e-mail was as follows:

> *Avinash, Manuel...Anna just called and we are both in agreement we need a special*
> *meeting at 6:00 pm Monday...so you or I need to call the mayor to schedule it*
> *(mainly you, she does'nt* [sic] *like me right now I'm Keri's MOM)..we both feel Mr.*
> *Tom Brown was the most impressive..no need for interviewing another engineer at*

3

*this time...have him prepare the postphonment [sic] of the 4.8 million, get us his firms [sic] review and implementations for the CURE for South Alpine....borrow the money locally and get it fixed NOW....then if they show good faith and do the job allow them to sell us their bill of goods for water corrections for the entire city......at a later date..and use the 0 % amounts to repay the locally borrowed money and fix the parts that don't meet TECQ [sic] standards....We don't have to marry them...with a life long contract, lets [sic] just get engaged!*
*Let us hear from you both*
*KT*

7.    On October 22, 2004, Rangra responded to the e-mail and copied his response to Monclova

and Payne. The text of that e-mail is as follows:

*Hello Katie....*

*I just talked with John Voller of Hibb and Todds of Abilene... and invited him to come to the Monday meeting....  I asked him to bring his money man also.... these guys work for Sul Ross... He said... he will be at meeting Monday....*

*I'll talk with Tom Brown also after my 8:00 class...*

*Thanks for the advice..... and I'll talk with Mickey as per your, Anna, and Manuel directions... and arrange the meeting on Monday....*

*We must reach some sort of decision SOOOOOOOOOOOOOON.*

*Avinash*

*Katie.... please correct my first name spellings... Thanks.*

8.    The City Council held a meeting pursuant to proper public notice, and the issues relating to

the proposed water project and the engineers to hire for it were discussed openly and fully.

9.    Defendant Frank Brown is the elected District Attorney for the 83rd Texas Judicial District

that includes the City of Alpine and Brewster County.

10.    On or about February 10, 2005, Brown subpoenaed Rangra, Elms-Lawrence, Monclova, and

Payne to testify before the Brewster County Grand Jury regarding the e-mails described above. All

refused to testify, citing their Fifth Amendment privilege.

4

93

45

11.     Brown provided both Monclova and Payne with testimonial immunity from the use of their grand jury testimony in a criminal prosecution for any violation of the Texas Open Meeting Act, and they testified before the Brewster County Grand Jury on February 17, 2005.

12.     On or about February 17, 2005, Brown presented the case against Rangra and Elms-Lawrence to the Brewster County Grand Jury, alleging violations of the Texas Open Meetings Act. The prosecution was based on the exchange of the e-mails set forth above. Rangra and Elms-Lawrence were indicted on February 17, 2005, by the Brewster County Grand Jury, for criminal violations of the Texas Open Meetings Act.

13.     The prosecution was based solely on the exchange of the e-mails set forth above.

14.     Rangra and Elms-Lawrence denied any wrongdoing, stating that no crime had occurred and that TOMA, on its face and as applied, violated their First Amendment rights. They sought a declaration from the state district court to this effect.

15.     Before the state district court could rule on the constitutionality of the statute, Brown dismissed the indictment against Rangra and Elms-Lawrence without prejudice. Rangra and Elms-Lawrence remain subject to indictment.

16.     Brown dismissed the indictments against Rangra and Elms-Lawrence. In a court hearing held on May 9, 2005, Brown expressly noted that the indictment was dismissed without prejudice.

17.     The statute of limitations for the violations with which the Plaintiffs were charged expired on October 22, 2006.

18.     Defendant Abbott, the Attorney General of Texas, has statutory authority to prosecute violations of TOMA directly. Brown, as elected District Attorney, also has authority to prosecute alleged criminal violations of TOMA.

5

94

457

**CONCLUSIONS OF LAW**

1.    This Court has original jurisdiction over all civil actions arising under the Constitution, law, or treaties of the United States.  28 U.S.C. § 1331.

2.    This Court also has original jurisdiction over any civil action authorized by law to redress the deprivation, under color of any State law, of any right secured by the Constitution of the United States.  28 U.S.C. § 1343(a)(3).

3.    Plaintiffs' Complaint presents a request for a declaratory judgment under 28 U.S.C. § 2201, et seq., and 42 U.S.C. § 1983, in which Plaintiffs seek an order of this Court declaring that certain sections of the Texas Open Meetings Act, namely TEX. GOV'T CODE ANN. § 551.001(2) and (4) (2003), and TEX. GOV'T CODE ANN. § 551.144 (2003), violate the United States Constitution.

4.    An action arising under federal law may be brought in a judicial district where any defendant resides if all defendants reside in the same state or in a district where a substantial part of the events or omissions giving rise to the claim occurred.  28 U.S.C. § 1391(b ).

5.    Venue is proper in the Pecos Division of the Western District of Texas pursuant to 28 U.S.C. § 1391(b).

6.    Standing exists when there is injury in fact, the injury is caused by the defendant, and the court can redress the injury.  *Center for Individual Freedom v. Carmouche*, 449 F.3d 655, 659 (5th Cir. 2006).

7.    The Plaintiffs have a  fear of prosecution that is neither "imaginary nor wholly speculative." *See Carmouche*, 449 F.3d at 660.

95

8.      While the Eleventh Amendment protects state officials from judgments for retrospective relief, it does not prevent citizens threatened with enforcement of an unconstitutional law from suing state officials for prospective relief.  *See Ex parte Young*, 209 U.S. 123 (1908).

        The *Ex parte Young* doctrine has not been altered in the Supreme Court's recent clarifications of Eleventh Amendment doctrine starting with *Seminole Tribe v. Florida*, 517 U.S. 44 (1996).  In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a "straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Maryland, Inc. v. Public Service Commission*, 535 U.S. 635, 645 (2002).

9.      No other immunity doctrine prevents Plaintiffs from pursuing this case; in fact, a key role of the Declaratory Judgment Statute, 28 U.S.C. § 2201, is to provide relief for citizens faced with threatened prosecution under a disputed state statute.

10.     Plaintiffs have standing to sue the Defendants in federal court.

11.     The Texas Open Meetings Act declares that "[e]very regular, special, or called meeting of a governmental body shall be open to the public, except as provided by this chapter." TEX. GOV'T CODE ANN. § 551.002 (2003).  It is not disputed in this case that the Alpine City Council is a "governmental body" under the Act.

12.     The Plaintiffs in this case challenge only two provisions of the Act: § 551.001, subsections (1) and (4), which define the terms "deliberation" and "meeting," for purposes of the Act; and § 551.144. The Act defines "deliberation" to mean "a verbal exchange during a meeting between a quorum of a governmental body, or between a quorum of a governmental body and another person, concerning an

issue within the jurisdiction of the governmental body or any public business." *Id.* at § 551.001(1).

Of significance for this case, a "meeting" is defined as:

> (A) a deliberation between a quorum of a governmental body, or between a quorum of a governmental body and another person, *during which public business or public policy over which the governmental body has supervision or control* is discussed or considered or during which the governmental body takes formal action; *or*
>
> (B) .... a gathering:
>
> (i) that is conducted by the governmental body or for which the governmental body is responsible;
>
> (ii) at which a quorum of members of the governmental body is present;
>
> (iii) that has been called by the governmental body; and
>
> (iv) at which the members receive information from, give information to, ask questions of, or receive questions from any third person, including an employee of the governmental body, *about the public business or public policy over which the governmental body has supervision or control. The term does not include* the gathering of a quorum of a governmental body at a social function *unrelated to the public business that is conducted by the body,* or the attendance b a quorum of a governmental body at a regional, state, or national convention or workshop, if formal action is not taken and any *discussion of public business* is incidental to the social function, convention, or workshop. The term includes a session of a governmental body.

*Id.* at § 551.001(4) (emphasis added).

13.    Under Section 551.144(a), "[a] member of a governmental body commits an offense if" he o

she "knowingly...calls or aids in calling or organizing" a closed meeting that is not permitted under

the Act, closes or aids in closing a regular meeting to the public, or "participates in the closed

meeting, whether it is a regular, special or called meeting." The offense is a misdemeanor, punishable

by a fine of $100-500, confinement in the county jail for one to six months, or both. *Id.* at (b).

"[U]nder section 551.144, a member must 'knowingly' participate in a closed meeting." Tex Atty.

Gen. Op. JC-307, 2000 WL 1731174, *7.

**Public Officials**

14.    Because the speech at issue is uttered entirely in the speaker's capacity as a member of a

collective decision-making body, and thus is the kind of communication in which he or she is required

to engage as part of his or her official duties, it is not protected by the First Amendment from the

restriction imposed by the Texas Open Meetings Act. *See Garcetti v. Ceballos* _____U.S. _____, 126

S. Ct. 1951, 1959-60 (2006).  For purposes of determining what constitutes protected speech under

the First Amendment, there is no meaningful distinction among public employees, appointed public

officials, and elected public officials. *See Rash-Aldridge v. Ramirez*, 96 F.3d 117 (5th Cir. 1996) (per

curiam) (applying the same principles to a First Amendment claim by a member of the Laredo City

Council).

15.    That the topic discussed by a quorum of governmental body members is a matter of public

concern does not by itself entitle the deliberations to First Amendment protection. *See Terrell v. Univ.

of Tex. Sys. Police,* 792 F.2d 1360, 1362 (5th Cir. 1986).  Instead, the "focus [is] on the hat worn by

the [official] when speaking rather than on the 'importance' of the issue." *Gillum v. City of Kerrville,*

3 F.3d 117, 121 (5th Cir. 1994).

16.    The Kansas Supreme Court, in rejecting a challenge to that state's open meetings law premised

on the same arguments as advanced by the Plaintiffs here, held the Kansas Open Meetings Act was

neither unconstitutionally vague or overbroad:

> The First Amendment does indeed protect private discussions of governmental affairs
> among citizens. *Everything changes, however, when a person is elected to public
> office.* Elected officials are supposed to represent their constituents.  In order for
> those constituents to determine whether this is in fact the case they need to know how
> their representative has acted on matters of public concern.  Democracy is threatened
> when public decisions are made in private.  Elected officials have no constitutional
> right to conduct governmental affairs behind closed doors.  Their duty is to inform the

9

electorate, not hide from it. The KOMA places no constraints on purely private discussions by public officials. It regulates on the conduct of public business (emphasis added).

*State ex rel. Murray v. Palmgren,* 646 P.2d 1091, 1099 (Kan. 1982).[2]

17.    Thus, because the speech at issue is uttered entirely in the speaker's capacity as a member of

the city council, and thus is the kind of communication in which he or she is required to engage as part

of his or her official duties, it is not protected by the First Amendment from the restriction imposed

by the Texas Open Meetings Act.

18.    Here, the TOMA is not regulating speech. The Act simply requires speech to be open and

public. To allow a quorum of a government body, such as here, to deliberate public policy issues

outside the public view would turn open meetings into sessions where public officials simply approved

messages previously deliberated over phone or e-mail. The TOMA does not impede the freedom of

speech; the Act simply requires speech be to be made openly, and in the presence of interested public,

as opposed to "behind closed doors."

---

[2] *See also St. Cloud Newspapers, Inc. v. Dist. 742 Cmty. Schs.,* 332 N.W.2d 1, 7 (Minn. 1983); *Cole v. State,* 673 P.2d 345, 350 (Colo. 1983); *People ex rel. Difanis v. Barr,* 397 N.E.2d 895, 899 (Ill.1979).

## Overbreadth

19.    Defendants argue that, based on *Garcetti*, it is not necessary to consider whether the Act is

overbroad or vague. However, the Court finds even if those issues are reached, the statute is

constitutional.

Overbreadth and vagueness are related but distinct concepts. *J&B Ent., Inc. V. City of*

*Jackson, MS.*, 152 F.3d 362, 366 (5th Cir. 1998). "[I]n cases involving a facial challenge to the

overbreadth and vagueness of a statute, a court should first consider whether the statute is overbroad,

and, assuming that it is not, then whether it is unconstitutionally vague." *CISPES v. Federal Bureau*

*of Investigation*, 770 F.2d 468, 472 (5th Cir. 1985) (citing *Village of Hoffman Estates v. Flipside,*

*Hoffman Estates, Inc.*, 455 U.S. 489, 494 (1982)).

20.    "In a facial challenge to the overbreadth and vagueness of a law, a court's first task is to

determine whether the enactment reaches a substantial amount of constitutionally protected conduct."

*United States v. Tansley*, 986 F.2d 880, 885 (5th Cir. 1993).

21.    The overbreadth of a statute must not only be real, but substantial as well, judged in relation

to the statute's plainly legitimate sweep. *Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973).

"[W]here there are a substantial number of situations to which a statute may validly be applied, we

eschew reliance on the overbreadth doctrine." *United States v. Wallington*, 889 F.2d 573, 576 (5th

Cir. 1989).

> "Substantial overbreadth" is a criterion the [Supreme] Court has invoked to avoid
> striking down a statute on its face simply because of the possibility that it might be
> applied in an unconstitutional manner. It is appropriate in cases where, despite some
> possible impermissible application, the "'remainder of the statute.... covers a whole
> range of easily identifiable and constitutionally proscribable.... conduct....'"

11

*100*

*Sec'y of State of Maryland v. Joseph H. Munson Co., Inc.*, 467 U.S. 947, 964-65 (1984) (citation omitted).

22.    The Plaintiffs have failed to show that the Texas Open Meetings Act is substantially overbroad. This statute does not restrict or inhibit a substantial amount of activity protected by the First Amendment.

**Vagueness**

23.    The Texas Open Meetings Act is not unconstitutionally vague. The void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness so that an ordinary person may understand what conduct is actually prohibited. *United States v. Tansley*, 986 F.2d 880, 885 (5th. Cir. 1993) (citing *Kolender v. Lawson,* 461 U.S. 352, 357 (1983). Only a reasonable degree of certainty is required. *Tansley,* 986 F.2d. at 885 (citing *United States v. Barnett,* 587 F.2d 252, 256 (5th Cir.), *cert. denied,* 441 U.S. 923 (1979).

For criminal statutes [the Fifth Circuit] employs the two-part void-for-vagueness test for vagueness challenges. *Ford Motor Co. v. Texas Department of Transportation,* 264 F.3d 493, 507 (5th Cir. 2001) (citation omitted). Under this standard, a statute is constitutional so long as "it 'defines the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited an in a manner that does not encourage arbitrary and discriminatory enforcement.'" *Smallwood v. Johnson,* 73 F.3d 1343, 1350-52 (5th. Cir. 1996) (citation and brackets omitted.)

24.    While "[w]ords inevitably contain germs of uncertainty and...there may be disputes over the meaning of.... terms," that does not render a statute unconstitutionally vague. *Broadrick v. Oklahoma,* 413 U.S. 601, 608 (1973).

12

25.     Thus, the Plaintiffs may succeed on their facial vagueness challenge only if the Act's effect on legitimate expression is "'real and substantial *and* the language of the ordinance is not readily subject to a narrowing construction by the state courts." *J&B Ent.*, 152 F.3d at 368 (citation omitted). "Real and substantial" for a facial vagueness test has the same meaning as for a facial overbreadth challenge. *Id.* (citation omitted).

In *Wainwright v. Stone*, 414 U.S. 21, 22-23 (1973), the United States Supreme Court held that "[f]or the purpose of determining whether a state statute is too vague and indefinite to constitute valid legislation 'we must take the statute as though it read precisely as the highest court of the State has interpreted it.'" *Kolender v. Lawson*, 461 U.S. 352, 357 (1983).

Texas courts and the Texas Attorney General have construed the TOMA liberally. The Texas Supreme Court has held that under the TOMA, when a majority of a public decisionmaking body, as here, is considering a pending issue, there can be no "informal" discussion; there is either formal consideration of a matter in compliance with TOMA, or an illegal meeting. *See Acker v. Texas Water Commission*, 790 S.W.2d 299, 300 (Tex. 1990).

26.     That there is room for differences of opinion as to whether particular conduct violates the Act does not render the statute unconstitutionally vague. *See Hill v. Colorado*, 530 U.S. 703, 733 (2000); *Broadrick*, 413 U.S. at 608. "A statute is not unconstitutionally vague merely because [Plaintiffs] can raise uncertainty about its application to the facts of their case." *Fort Motor Co.*, 264 F.3d at 509. It is thus not enough for the Plaintiffs to show, if they could, that the Act is unclear at the outer margins of its potential application. "A statute is unconstitutionally vague 'only where no standard of conduct is outlined at all; when no core of prohibited activity is defined.'" *Ford Motor Co.*, 264 F.3d at 509 (citation omitted).

13

27.    The Texas Open Meetings Act "sets forth a core of prohibited conduct with sufficient definiteness to guide those who must interpret it." *See J&B Ent.*, 152 F.3d at 369. Even if city officials and their legal advisors were having difficulty reading the law, that would not render it unconstitutionally vague. Under the vagueness doctrine, "[o]nly a reasonable degree of certainty is required." *Tansley*, 986 F.2d at 885.

28.    The Plaintiffs' vagueness challenge can be sustained "only if the enactment is impermissibly vague in all of its applications." *Id.*

> Every statute, whether civil or criminal, raises questions of interpretation. The fact that a statute fails to define its precise boundaries in every conceivable situation does not invalidate the statute. This Court will sustain a vagueness challenge *only* if the [Act's] provisions are impermissibly vague in *all* of their applications.

*United States v. Clinical Leasing Serv., Inc.*, 930 F.2d 394, 395 (5th Cir. 1991) (citation omitted). The Plaintiffs have not shown that the Act is vague in all of its applications.

## CONCLUSION

1.    The Plaintiffs have standing to sue the Defendants in federal court.

2.    Plaintiffs' claims are not barred by Eleventh Amendment immunity.

3.    Because the speech at issue here was uttered entirely in the speaker's capacity as a member of a collective decision-making body, and thus is the kind of communication in which the Plaintiffs are required to engage as part of their official duties, it is not protected by the First Amendment from the restriction imposed by the Texas Open Meetings Act.

4.    The Plaintiffs have failed to show that the Texas Open Meetings Act is substantially overbroad, as the TOMA does not restrict or inhibit a substantial amount of activity protected by the First Amendment.

14

5.    The Plaintiffs have failed to show that the Texas Open Meetings Act is unconstitutionally vague, as the Plaintiffs have not shown that the Act is vague in all of its applications.

Accordingly, based on the foregoing Findings of Fact and Conclusions of Law,

IT IS HEREBY ORDERED the Plaintiffs' requests for declaratory judgment and injunction are **DENIED.**

IT IS HEREBY ORDERED that a take nothing judgment is entered on behalf of Defendants as to all claims filed against them.

IT IS FURTHER ORDERED that all relief not specifically granted herein is expressly denied.

IT IS FURTHER ORDERED that all pending motions are denied as moot.

IT IS FURTHER ORDERED that Defendants shall recover their costs of court from the Plaintiffs.

IT IS FINALLY ORDERED that this is a final judgment that disposes of all claims.

SIGNED on this ___7___ day of **NOVEMBER, 2006.**

ROBERT JUNELL
United States District Judge
Western District of Texas

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### PECOS DIVISION

**FILED**

NOV 3 0 2006

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____ DEPUTY CLERK

AVINASH RANGRA,
ANNA MONCLOVA, &
All Other Public Officials in Texas,
    **Plaintiffs**

    **V.**             **CAUSE NO.  P-05-CV-75**

FRANK D. BROWN,
    **83d JUDICIAL DISTRICT**
    **ATTORNEY, &**
GREG ABBOTT,
    **TEXAS ATTORNEY GENERAL,**
    **Defendants**

## NOTICE OF APPEAL

To the Court:

    Notice is hereby given that all the plaintiffs herein hereby appeal to the United

States Court of Appeals for the Fifth Circuit, from the final judgment entered in this

action on the 7th day of November, 2006.

Respectfully Submitted,

LAW OFFICE OF ROD PONTON

**Rod Ponton**
2301 North Hwy 118
P.O. Box 9760
Alpine, Texas 79831
Telephone:    432-837-0990
Facsimile:    432-837-0971
State Bar Card No. 16115170

105

DEGUERIN DICKSON & HENNESSY
**Dick DeGuerin**
1018 Preston Ave., 7th Floor
Houston, Texas 77002
Telephone:    713-223-5959
Facsimile:    713-223-9231
State Bar Card No. 05638000

ATTORNEYS FOR PLAINTIFFS

### Certificate of Service

I hereby certify that I caused the foregoing Notice of Appeal, to be served upon
Defendants in accordance with the Federal Rules of Civil Procedure, and delivered a
copy of same to James Todd, Assistant Attorney General and Steve Houston, via U.S.
mail and fax, on this the 27th day of November, 2006.

Rod Ponton