No. 06-51587

# In the
# United States Court of Appeals
# for the Fifth Circuit

---

AVINASH RANGRA AND ANNA MONCLOVA,
*Plaintiff-Appellants*,

v.

FRANK BROWN AND GREG ABBOTT,
*Defendant-Appellees*.

---

On Appeal from the United States District Court
Western District of Texas, Pecos Division

---

## APPELLEES' PETITION FOR REHEARING EN BANC

---

GREG ABBOTT
Attorney General of Texas

C. ANDREW WEBER
First Assistant Attorney General

DAVID S. MORALES
Deputy Attorney General for
Civil Litigation

JAMES C. HO
Solicitor General

SEAN D. JORDAN
Deputy Solicitor General
State Bar No. 00790988

JAMES TODD
Assistant Attorney General

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
[Tel.] (512) 936-1823
[Fax] (512) 474-2697

COUNSEL FOR APPELLEE GREG ABBOTT

**Additional Counsel Listed on Inside Cover**

J. Steven Houston
P.O. Box 388
Marathon, Texas 79842
State Bar No. 10054300
[Tel.] (432) 386-6054
[Fax] (432) 386-4203

COUNSEL FOR APPELLEE FRANK D. BROWN

No. 06-51587

# In the
# United States Court of Appeals
# for the Fifth Circuit

---

AVINASH RANGRA AND ANNA MONCLOVA,
*Plaintiff-Appellants,*

v.

FRANK BROWN AND GREG ABBOTT,
*Defendant-Appellees.*

---

On Appeal from the United States District Court
Western District of Texas, Pecos Division

---

## CERTIFICATE OF INTERESTED PARTIES

---

The Undersigned counsel of record certifies that the following listed persons/entities have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

### *Plaintiff-Appellants*
Avinash Rangra and Anna Monclova

### *Counsel for Plaintiff-Appellants*

Dick DeGuerin
DEGUERIN, DICKSON & HENNESSEY
1018 Preston Ave., 7th Floor
Houston, Texas 77002

Arvel Rodolphus Ponton, III
2301 N. Highway 118
Post Office Box 9760
Alpine, Texas 79831

***Defendant-Appellees***
  Frank Brown and Greg Abbott

***Counsel for Defendant-Appellee Greg Abbott***
  Sean D. Jordan, Deputy Solicitor General,
  James Todd, Assistant Attorney General
  OFFICE OF ATTORNEY GENERAL, STATE OF TEXAS
  P.O. Box 12548 (MC 059)
  Austin, Texas 78711-2548

***Counsel for Defendant-Appellee Frank D. Brown***
  J. Steven Houston
  P.O. Box 388
  Marathon, Texas 79842

### STATEMENT REGARDING PROPRIETY OF REHEARING EN BANC

State laws ensuring that citizens may observe the deliberations of their elected representatives fulfill the promise of open government that is essential to our representative democracy. These laws recognize that "[t]he liberties of a people never were, nor ever will be, secure, when the transactions of their rulers may be concealed from them." PATRICK HENRY, AN ADDRESS TO THE VIRGINIA CONSTITUTIONAL CONVENTION (1776), *reprinted in* 3 THE DEBATES IN THE SEVERAL STATE CONVENTIONS ON THE ADOPTION OF THE FEDERAL CONSTITUTION, at 169-70 (Jonathon Elliot ed. 1836). Motivated by this principle, the Texas Legislature enacted § 551.144 of the Texas Government Code, a provision of the State's Open Meetings Act that prohibits public officials from knowingly circumventing the requirement that all meetings of a quorum of a governmental body to consider public issues and policy under its control must be conducted openly before the public, and not privately.

Notably, every State in the Union, the District of Columbia, and the federal government have enacted open government statutes similar to Texas's statute.[1] Until

---

1. That is, statutes prohibiting governmental bodies from deliberating in private about public business over which they have control. *See St. Cloud Newspapers, Inc. v. Dist. 742 Cmty. Schs.*, 332 N.W.2d 1, 5 (Minn. 1983) ("The belief that the public is entitled to greater access to meetings of government bodies has inspired all 50 states to pass statutes that require certain public agencies to conduct all official meetings in sessions open to the public."). For the Court's reference, Appellees are attaching as Appendix B hereto a list, with relevant textual excerpts, of these open government laws and constitutional provisions.

the panel's ruling, no court had ever held that any of these statutes is a content-based restriction on speech subject to strict-scrutiny review under the First Amendment, nor have these statutes been struck down—in whole or in part—for violating the Amendment's free speech protections.[2]

Nonetheless, the panel's opinion holds that Appellants' First Amendment facial challenge to § 551.144 of Texas's Open Meetings Act must be upheld, and the statute struck down in its entirety, unless it can withstand review under a "strict scrutiny" standard, requiring the State to prove that the regulation advances a compelling state interest and is "narrowly tailored" to further that interest. *Rangra v. Brown*, No. 06-51587, slip op. at 6-7 (5th Cir. April 24, 2009) (attached as Appendix A). As the Supreme Court has acknowledged, laws subject to strict scrutiny review are "presumptively invalid," *R.A.V. v. City of St. Paul*, 505 U.S. 377, 382 (1992), and only "rarely" survive this test. *Burson v. Freeman*, 504 U.S. 191, 200 (1992).

The Court should grant en banc rehearing of the panel's decision for three reasons. First, the panel's opinion is exceptionally important because it is the first and only decision of any court subjecting a state open meetings statute to strict-

---

2. The only exception, to Texas's knowledge, concerns Iowa's open meetings law. The original Iowa open meeting law was declared unconstitutional in 1978 because it did not adequately define the conduct prohibited and its criminal sanctions were unconstitutionally vague. *Knight v. Iowa Dist. Ct.*, 269 N.W.2d 430, 434 (Iowa 1978). Iowa enacted a new open meetings statute in 1979 that remains in effect. IOWA CODE ANN. § 21.6(3); *Knight*, 269 N.W.2d at 433.

scrutiny review under the First Amendment, conflicting with Supreme Court precedent which reserves this exacting standard for regulations that are designed to either favor or disadvantage speech of a particular content. *See Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 642 (1994) (noting that the "'principal inquiry in determining content neutrality . . . is whether the government has adopted a regulation of speech because of [agreement or] disagreement with the message it conveys'") (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)).  Because open government provisions like § 551.144 are not designed to repress or restrict public discourse on matters of public policy, but rather to ensure that governmental bodies embrace public deliberations and decisionmaking, they are appropriately subject to intermediate—not strict—scrutiny under the First Amendment.

Second, the panel's ruling also merits en banc review because it conflicts with the decisions of several state supreme courts.  Challenges made under the First Amendment to open government statutes like Texas's have most frequently been made in state courts, and the highest courts in several States have interpreted these laws not as content-based restrictions subject to strict scrutiny, but rather as reasonable time, place, and manner speech regulations.

Finally, because all the States and the federal government have enacted open government statutes substantially similar to Texas's statute, the panel's decision

currently stands as precedent for striking down any of these open government statutes

unless they pass strict-scrutiny review. A decision with such potentially far-reaching

effects merits en banc review.

# TABLE OF CONTENTS

Certificate of Interested Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Statement Regarding Propriety of Rehearing En Banc . . . . . . . . . . . . . . . . . . . . . . v

Index of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xi

Statement of Issue Meriting En Banc Reconsideration . . . . . . . . . . . . . . . . . . . . . 1

Statement of the Course of Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      I.     En Banc Review Is Warranted Because the Panel's Opinion Is the
           First Decision of Any Court Holding That an Open Meetings
           Statute Is Subject to Strict Scrutiny and It Conflicts With
           Supreme Court Precedent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

           A.   The Panel's First-of-Its-Kind Opinion Conflicts with
                 Supreme Court Precedent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

           B.   Section 551.144 Should Be Upheld as a Constitutionally
                 Valid Time, Place, and Manner Speech Regulation . . . . . . . . 9

      II.    En Banc Review Is Also Appropriate Because the Panel's
           Opinion Conflicts With the Decisions of Several State Supreme
           Courts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

      III.   The Potentially Far-Reaching Effect of the Panel's Decision on
           An Issue of Great Importance to the States—the Level of First
           Amendment Scrutiny Applicable to Open Meetings
           Laws—Warrants En Banc Review . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Conclusion ....................................................... 15

Certificate of Service ............................................. 18

x

## INDEX OF AUTHORITIES

**Cases**

*Acker v. Tex. Water Comm'n,*
    790 S.W.2d 299 (Tex. 1990) ................................... 14

*Boos v. Barry,*
    485 U.S. 312 (1988) .......................................... 8

*Broadrick v. Oklahoma,*
    413 U.S. 601 (1973) .......................................... 4

*Burson v. Freeman,*
    504 U.S. 191 (1992) ...................................... vi, 8

*Cole v. State,*
    673 P.2d 345 (Colo. 1983) (per curiam) ..................... 5, 12, 13

*Consol. Edison Co. of New York, Inc. v. Pub. Serv. Comm'n of New York,*
    447 U.S. 530 (1980) .......................................... 6

*Garrison v. Louisiana,*
    379 U.S. 64 (1964) .......................................... 15

*Hill v. Colorado,*
    530 U.S. 703 (2000) .......................................... 7

*J&B Entm't, Inc. v. City of Jackson,*
    152 F.3d 362 (5th Cir. 1998) ............................... 4, 7, 9

*Knight v. Iowa Dist. Ct.,*
    269 N.W.2d 430 (Iowa 1978) ................................. vi

*People ex rel. DiFanis v. Barr,*
    414 N.E.2d 731 (Ill. 1980) ................................. 5, 11

*Police Dep't of Chicago v. Mosley,*
    408 U.S. 92 (1972) .................................................. 8

*R.A.V. v. City of St. Paul,*
    505 U.S. 377 (1992) ............................................... vi

*Republican Party of Minnesota v. White,*
    536 U.S. 765 (2002) ............................................... 8

*Sandoval v. Bd. of Regents,*
    67 P.3d 902 (Nev. 2003) (per curiam) ........................... 5, 13

*St. Cloud Newspapers, Inc. v. Dist. 742 Cmty. Schs.,*
    332 N.W.2d 1 (Minn. 1983) ................................. v, 5, 11

*State ex rel. Murray v. Palmgren,*
    646 P.2d 1091 (Kan. 1982) ............................... 5, 10, 11

*Turner Broad. Sys., Inc. v. FCC,*
    512 U.S. 622 (1994) .................................... vii, 4, 7

*United States v. O'Brien,*
    391 U.S. 367 (1968) ...................................... 7, 9

*Ward v. Rock Against Racism,*
    491 U.S. 781 (1989) .................................... vii, 7


**Constitutional Provisions, Statutes and Rules**

TEX. GOV'T CODE § 551.001(1) ................................... 2

TEX. GOV'T CODE § 551.001(3)(A) ................................. 2

TEX. GOV'T CODE § 551.001(3)(C) ................................. 2

TEX. GOV'T CODE § 551.001(4) ................................. 3, 6

TEX. GOV'T CODE § 551.002 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

TEX. GOV'T CODE § 551.143 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

TEX. GOV'T CODE § 551.144 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

TEX. GOV'T CODE § 551.144(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IOWA CODE ANN. § 21.6(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

**Other Authorities**

LOUIS BRANDEIS,
    *What Publicity Can Do, in* OTHER PEOPLE'S MONEY (1914) . . . . . . . . . . 14

PATRICK HENRY,
    AN ADDRESS TO THE VIRGINIA CONSTITUTIONAL CONVENTION (1776),
    *reprinted in* 3 THE DEBATES IN THE SEVERAL STATE CONVENTIONS ON
    THE ADOPTION OF THE FEDERAL CONSTITUTION
        (Jonathon Elliot ed. 1836) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

### STATEMENT OF ISSUE MERITING EN BANC RECONSIDERATION

Section 551.144 of the Texas Open Meetings Act prohibits public officials from knowingly circumventing, or aiding in circumventing, the Act's requirement that all meetings of a quorum of a governmental body to consider public issues and policy under its control must be conducted openly before the public, and not privately. Did the panel correctly conclude that strict scrutiny should be applied in evaluating a First Amendment facial challenge to the constitutional validity of this statute?

### STATEMENT OF THE COURSE OF PROCEEDINGS

Appellants Avinash Rangra and Anna Monclova filed suit in the United States District Court for the Western District of Texas, Pecos Division, against Appellees Greg Abbott, Attorney General of Texas, and Frank Brown, District Attorney for the 83rd Judicial District.     CR.2-37.[3]     Appellants asserted a facial challenge that § 551.144 of the Texas Open Meetings Act is overbroad and vague, and therefore violates the First Amendment, CR.2-37, 335-36, 347-50. Following a bench trial, the district court denied Appellants' claims for declaratory and injunctive relief and entered a take-nothing judgment for Appellees on all of Appellants' claims. CR.438-52. Appellants filed a timely notice of appeal. CR.468-69.

---

3. Citations to "CR.__" refer to the clerk's record. Citations to "RR.__" refer to the reporter's record of the bench trial conducted by United States District Court Judge Robert Junell on July 26, 2006.

A panel of this Court reversed the district court's decision, holding, *inter alia*, that § 551.144 is a content-based regulation of speech that requires the State to satisfy the strict-scrutiny test to be upheld. Slip op. at 7. Because Appellants had asserted only facial challenges based on the statute's alleged overbreadth and vagueness, CR.347-50, when the district court overruled those claims it did not consider the application of strict-scrutiny review, CR.438-52. Accordingly, without addressing Appellants' overbreadth and vagueness claims, the panel remanded the case to the district court for "proper application of the strict scrutiny test." Slip op. at 9.

## STATEMENT OF FACTS

The Texas Open Meetings Act (TOMA) requires that, with certain exceptions not applicable here, "[e]very regular, special, or called meeting of a governmental body shall be open to the public." TEX. GOV'T CODE § 551.002.[4] Section 551.144 of the Act forbids a member of a governmental body from, among other things, knowingly organizing or assisting in organizing an impermissible closed meeting,[5] and likewise prohibits a member of a governmental body from knowingly

---

4. The term "governmental body" includes, for example, any "board, commission, department, committee, or agency within the executive or legislative branch of state government that is directed by one or more elected or appointed members," and any "municipal governing body" in Texas. TEX. GOV'T CODE § 551.001(3)(A),(C).

5. A "closed meeting" under the Act is "a meeting to which the public does not have access." *Id.* § 551.001(1).

2

participating in such a meeting.[6]  A violation of § 551.144 is a misdemeanor
punishable by a fine of not less than $100 or more than $500, confinement in jail for
not less than one month or more than six months, or by both a fine and confinement
in jail. *Id.* § 551.144(b).

The City of Alpine, Texas is governed by a city council of five members and
an elected mayor. CR.455. Three members of the city council constitute a quorum.
*Id.*; RR.22-23.  Rangra and Katie Elms-Lawrence, Alpine city council members,
exchanged e-mails in October, 2004, discussing the hiring of engineers for a city
water project. CR.4, 66, 102-03, 106-07, 455-56; RR.74-75. The e-mails were
copied to fellow city council members Monclova and Manuel Payne. CR.4, 66, 455-
56. The council subsequently held a public meeting to discuss the water project and
the hiring of engineers. CR.456. Based on these e-mails, Rangra and Elms-Lawrence
were indicted for violations of the TOMA. CR.5, 68, 70, 457. A few months later,
the indictments were dismissed, CR.72, 74, 457, and no further actions were taken
against Rangra or Elms-Lawrence.

Rangra and Monclova subsequently brought this lawsuit, asserting a facial
challenge that § 551.144 of the TOMA is unconstitutionally overbroad and vague.

---

6. The term "meeting" generally means "a deliberation between a quorum of a governmental
body, or between a quorum of a governmental body and another person, during which public
business or public policy over which the governmental body has supervision or control is discussed
or considered or during which the governmental body takes formal action." *Id.* § 551.001(4).

CR.2-37, 335-36, 347-50. The court overruled those challenges. CR.448-51. As to

overbreadth, the court applied the principle from *Broadrick v. Oklahoma*, 413 U.S.

601 (1973), that "the overbreadth of a statute must not only be real, but substantial

as well, judged in relation to the statute's plainly legitimate sweep," CR.448 (quoting

*Broadrick*, 413 U.S. at 615). The court concluded that Appellants had "failed to show

that the [TOMA] is substantially overbroad," CR.449, and that the Act "does not

restrict or inhibit a substantial amount of activity protected by the First Amendment,"

*id.* The court also held that the TOMA is not unconstitutionally vague because it

"'sets forth a core of prohibited conduct with sufficient definiteness to guide those

who must interpret it,'" CR.451 (quoting *J&B Entm't, Inc. v. City of Jackson*, 152

F.3d 362, 369 (5th Cir. 1998)). The court denied Appellants' requests for declaratory

and injunctive relief and entered final judgment in favor of Appellees. CR.452.

## ARGUMENT

The panel's ruling warrants en banc review because: (1) it is the first decision

of any court subjecting a state open meetings statute to strict-scrutiny review,

conflicting with Supreme Court precedent that a regulation is subject to strict-scrutiny

review only when it "distinguish[es] favored speech from disfavored speech on the

basis of the ideas or views expressed," *Turner*, 512 U.S. at 643; (2) it conflicts with

the decisions of the highest courts in several states; and (3) it could have far-reaching

4

effects because it implicates the application of strict-scrutiny review to First Amendment challenges asserted against open government statutes currently in place in every State.

I.     **EN BANC REVIEW IS WARRANTED BECAUSE THE PANEL'S OPINION IS THE FIRST DECISION OF ANY COURT HOLDING THAT AN OPEN MEETINGS STATUTE IS SUBJECT TO STRICT SCRUTINY AND IT CONFLICTS WITH SUPREME COURT PRECEDENT.**

A.     **The Panel's First-of-Its-Kind Opinion Conflicts with Supreme Court Precedent.**

All the States, the District of Columbia, and the federal government, have enacted open government statutes similar to the Texas statute challenged in this case; *i.e.* statutes that prohibit certain governmental bodies from deliberating and making public policy decisions within their control in private, rather than in public. *See* Appendix B. Some of these statutes were enacted more than a century ago, and many have been in existence for over fifty years. *See id.* But neither the panel's opinion nor Appellants' briefing has referenced any decision, from any court, subjecting any of these statutes to strict-scrutiny review under the First Amendment. And apparently with good reason, because Texas is unaware of any decision prior to the panel's opinion subjecting this type of open government statute to strict-scrutiny review.[7]

---

7. To the contrary, open meetings statutes have routinely been upheld against First Amendment challenges, and no court has previously concluded that these are content-based regulations subject to strict scrutiny. *E.g. Cole v. State*, 673 P.2d 345, 350 (Colo. 1983) (per curiam); *People ex rel. DiFanis v. Barr*, 414 N.E.2d 731, 739 (Ill. 1980); *State ex rel. Murray v.*

The panel's opinion conflicts with Supreme Court precedent, warranting en banc review, because it subjects a content-neutral open government statute to strict-scrutiny review. Section 551.144 is a time, place, and manner speech regulation that does not prohibit public officials from meeting to discuss any matter of public policy within their control, but merely requires that these meetings be held publicly. TEX. GOV'T CODE § 551.144. Nonetheless, the panel concluded that the statute is a content-based restriction subject to strict scrutiny because "whether a quorum of public officials may communicate with each other outside of an open meeting depends on whether the content of their speech refers to 'public business or public policy over which the governmental body has supervision or control.'" Slip op. at 8 (quoting TEX. GOV'T CODE § 551.001(4)).

The panel misreads Supreme Court precedent, which does not support the conclusion that any time, place, and manner regulation that references the content of speech necessarily operates as a content-based restriction subject to strict scrutiny. As Justice Stevens explained in *Consolidated Edison Company of New York, Inc. v. Public Service Commission of New York*: "[I]t is incorrect to state that a time, place, or manner restriction may not be based upon either the content or subject matter of

---

*Palmgren*, 646 P.2d 1091, 1099 (Kan. 1982); *St. Cloud Newspapers, Inc.*, 332 N.W.2d at 7; *Sandoval v. Bd. of Regents*, 67 P.3d 902, 907 (Nev. 2003) (per curiam).

6

speech." 447 U.S. 530, 545 (1980) (Stevens, J., concurring in the judgment) (internal citation and quotation marks omitted).   Rather, only "laws that by their terms distinguish favored speech from disfavored speech on the basis of the ideas or views expressed are content based." *Turner*, 512 U.S. at 643.  Indeed, the Supreme Court has expressly framed the content-based vs. content-neutral inquiry in the following terms: "As we explained in *Ward*: '[t]he principal inquiry in determining content neutrality, in speech cases generally and in time, place, or manner cases in particular, is whether the government has adopted a regulation of speech because of disagreement with the message it conveys.'" *Hill v. Colorado*, 530 U.S. 703, 719 (2000) (quoting *Ward*, 491 U.S. at 791)).

As its unambiguous provisions establish, § 551.144 of the TOMA does not, by design or function, operate to disfavor or advantage speech on the basis of the ideas or views expressed.  Nor is it intended to deprive Texas's public officials of the freedom to deliberate about public policy matters within their control.  It simply requires that these deliberations occur in public, not in private.  *See* TEX. GOV'T CODE § 551.144. Applying Supreme Court precedent correctly, § 551.144 should not be subject to strict scrutiny, but rather the intermediate scrutiny accorded content-

neutral time, place, and manner regulations. *See J & B Entm't, Inc.*, 152 F.3d at 369-70 (noting that content-neutral time, place, and manner regulations are subject to the intermediate scrutiny test set forth in *United States v. O'Brien*, 391 U.S. 367 (1968)).

In reaching its erroneous conclusion that § 551.144 of the TOMA is subject to strict scrutiny, the panel relied almost entirely on Supreme Court cases where the speech of private parties, in many cases involving matters of public interest, was *prohibited* by the government. *See* slip op. at 6-8.[8] But those regulations are exactly the inverse of the TOMA, which is designed to *ensure* the right of citizens to have access to and participate in the deliberations of public policy by their representatives.[9] Accordingly, these cases do not support the panel's decision to subject Texas's open government statute to strict scrutiny.[10]

---

8. *E.g. Burson*, 504 U.S. at 196 (statute prohibiting display of campaign materials within 100 feet of polling place); *Boos v. Barry*, 485 U.S. 312, 315 (1988) (statute prohibiting display of signs critical of foreign governments within 500 feet of that country's embassy); *Police Dep't of Chicago v. Mosley*, 408 U.S. 92, 94 (1972) (statute allowing only "peaceful labor picketing," and no other type of picketing, next to schools).

9. The panel also inexplicably relied heavily on *Republican Party of Minnesota v. White*, 536 U.S. 765 (2002), a case involving the special considerations associated with *campaign speech*, in applying strict scrutiny to the TOMA. Slip op. at 6-7. But because campaign speech is fundamentally different than speech of members of a governmental body conducting governmental business, *White* is inapposite.

10. Likewise, the panel's repeated reference to § 551.144 as the "criminal provision" of the TOMA is both inaccurate and irrelevant to the inquiry whether the statute is a content-based restriction on speech. *See* slip op. at 6-8. Although a violation of § 551.144 is a crime under Texas law, it is not the only provision of the TOMA that carries criminal penalties. For example, § 551.143, which Appellants have not challenged, prohibits conspiracies to violate the TOMA and carries criminal penalties. TEX. GOV'T CODE § 551.143. But more importantly, whether or not the

8

Because the panel's decision departs from Supreme Court precedent on the exceptionally important question concerning the level of scrutiny applicable to open government statutes under the First Amendment, en banc review should be granted.

## B.     Section 551.144 Should Be Upheld as a Constitutionally Valid Time, Place, and Manner Speech Regulation.

Because § 551.144 meets the applicable intermediate scrutiny test, the Court should uphold the statute as a constitutionally valid time, place, and manner speech regulation. Under that test, a regulation will be upheld:

> [1] if it is within the constitutional power of the government; [2] if it furthers an important or substantial governmental interest; [3] if the governmental interest is unrelated to the suppression of free expression; and [4] if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.

*J&B Entm't, Inc.*, 152 F.3d at 370 (citing *O'Brien*, 391 U.S. at 377).

Texas's statute meets this test. It is undisputed that Texas has authority to pass open government laws, and the TOMA (including § 551.144) clearly furthers important governmental interests unrelated to the suppression of free expression. The statute plainly is designed not to prohibit speech, but rather to ensure that meetings of a quorum of a governmental body to consider and decide issues under the control of that body are conducted in public. This requirement helps prevent corruption,

---

statute imposes criminal sanctions simply does not answer the question whether it is a content-based or content-neutral restriction on speech.

9

temper the secret influence of special interests, and makes elected officials more accountable to their constituents.

Finally, any incidental restriction on speech imposed by § 551.144 is no greater than is necessary to meet Texas's strong interest in open government. Because § 551.144 does not prohibit government officials from speaking on public policy issues within their control, but merely requires deliberations of a quorum to take place in public, it limits speech only to the extent necessary to ensure Texas citizens' right of access to the decisionmaking processes of their representatives.

## II.   EN BANC REVIEW IS ALSO APPROPRIATE BECAUSE THE PANEL'S OPINION CONFLICTS WITH THE DECISIONS OF SEVERAL STATE SUPREME COURTS.

The panel's opinion also merits en banc reconsideration because its ruling and reasoning conflict with the decisions of several state supreme courts. Because most of the First Amendment challenges to open meetings statutes appear to be brought in state court, there is very little federal case law on this issue, and no relevant precedent from the other Circuits. But a number of state supreme courts have considered First Amendment challenges to substantially similar open meetings laws, and the panel's opinion sharply conflicts with the decisions of those courts.

For example, in *State ex rel. Murray v. Palmgren*, 646 P.2d 1091 (Kan. 1982), the Kansas Supreme Court flatly rejected a First Amendment claim that the State's open meetings law was unconstitutionally overbroad and potentially inhibited the

10

"rights of public officials to assemble and discuss public affairs." *Id.* at 1099.  In

rejecting the government officials' contention that, like private citizens, they had the

"right to unfettered discussion of governmental affairs in private while retaining

anonymity," *id.*, the court noted that this claim "reveal[ed] a basic misconception

regarding the nature of a public official's position," *id.*

> The First Amendment does indeed protect private discussions of
> governmental affairs among citizens.  Everything changes, however,
> when a person is elected to public office.  Elected officials are supposed
> to represent their constituents.  In order for those constituents to
> determine whether this is in fact the case they need to know how their
> representative has acted on matters of public concern.  Democracy is
> threatened when public decisions are made in private.  *Elected officials
> have no constitutional right to conduct governmental affairs behind
> closed doors.  Their duty is to inform the electorate, not hide from it.*

*Id.* (emphasis added).

Similarly, in *St. Cloud Newspapers, Inc. v. District 742 Community Schools*,

332 N.W.2d 1 (Minn. 1983), the Minnesota Supreme Court upheld Minnesota's Open

Meeting Law against a First Amendment facial challenge that it was vague or

overbroad. *Id.* at 6-8.  Minnesota's law, like Texas's and Kansas's statutes, prevents

certain public agencies in the State from conducting private meetings to deliberate or

decide public business. *Id.* at 3-4.  The court held that Minnesota's law did not

violate the right to free speech protected by the First Amendment, observing that

"[t]hese rights protect expression of ideas, not the right to conduct public business in

11

closed meetings . . . . The Minnesota Open Meeting Law does not apply to chance or social gatherings. It does not *prohibit* meetings of affected bodies; it merely requires that such meetings be open to the public." *Id.* at 7.

In *People ex rel. DiFanis v. Barr*, 414 N.E.2d 731 (Ill. 1980), the Illinois Supreme Court considered a First Amendment challenge to the portion of Illinois's Open Meetings Act that, like § 551.144 of the TOMA, requires meetings of certain state and local governmental bodies be conducted in public. *Id.* at 734-35, 738-40. The court determined that the Illinois statute was the kind of "reasonable time, place and manner regulation[] which do[es] not discriminate among speakers or ideas," and that "further[ed] an important governmental interest unrelated to the restriction of communication." *Id.* at 739. The court further concluded that the Act's requirement that "public business must be conducted publicly" was a "reasonable attempt to balance the right of the press and the people to view the deliberative and decision-making processes of government first-hand with the right of public officials to speak their minds freely and associate with whomever they choose." *Id.*

And, when the Colorado Supreme Court interpreted the constitutional validity of a similar provision in the Colorado Open Meetings Law, it reached the same conclusion as the *Barr* court, upholding the statute as a reasonable, time, place, and manner regulation that did not "discriminate among speakers and ideas" and furthered

an "important governmental interest." *Cole v. State*, 673 P.2d 345, 350 (Colo. 1983). In reaching this conclusion, the court noted that, "The Open Meetings Law does not forbid political discussion among legislators, and does not regulate the content of their discussions. [It] merely requires that business meetings of policy-making bodies of the General Assembly be open to the public." *Id.*[11]

Thus, both the panel's ruling and its underlying rationale, which turns on the conclusion that a regulation prohibiting governmental bodies from conducting public business within their control in private is a content-based restriction subject to strict-scrutiny review, slip op. at 6-8, are plainly at odds with the above-described decisions and reasoning of the highest courts in several States and warrant en banc review.

III.   **THE POTENTIAL FAR-REACHING EFFECT OF THE PANEL'S DECISION ON AN ISSUE OF GREAT IMPORTANCE TO THE STATES—THE LEVEL OF FIRST AMENDMENT SCRUTINY APPLICABLE TO OPEN MEETINGS LAWS—WARRANTS EN BANC REVIEW.**

The panel implicitly recognized the potentially far-reaching effect of its decision, correctly acknowledging that "[n]umerous states" have provisions like § 551.144 in their open meetings laws, slip op. at 17 n.32. In fact, all the States have enacted open government laws containing provisions similar to § 551.144 of the

---

11. The Nevada Supreme Court reached a similar conclusion concerning Nevada's open meeting statute in *Sandoval v. Bd. of Regents*, 67 P.3d 902, 907 (Nev. 2003) (concluding that requiring public officials to provide clear and complete information on the topics to be discussed at a public meeting did not restrict the officials First Amendment freedom to "speak on any topic of their choosing").

TOMA. *See* Appendix B. Indeed, some States have attributed so much importance to this principle of open government that it is part of their state constitutions. *See id.*

The panel's decision necessarily implicates the application of strict-scrutiny review to any or all of these statutes and constitutional provisions facing First Amendment challenges.[12] The nationwide importance of the panel's decision is further highlighted by the fact that it is the first court to hold that this type of open government statute is subject to strict scrutiny. En banc review of the panel's decision should be granted.

\* \* \*

Section 551.144 of the TOMA is designed to ensure that the executive and legislative decisions of government officials, as well as their deliberative process, must take place openly before the public rather than secretly behind closed doors. *Acker v. Tex. Water Comm'n*, 790 S.W.2d 299, 300 (Tex. 1990). This goal of open government, shared by every State and the federal government, is embodied in the well-known words of Justice Brandeis that, "Sunlight is said to be the best of disinfectants; electric light the most efficient policeman." LOUIS BRANDEIS, *What Publicity Can Do, in* OTHER PEOPLE'S MONEY 92, 92 (1914). By imposing strict-

---

12. The nationwide implications of the panel's decision are further described in the amicus briefs filed in support of this petition by a group of *amici* States and by the Reporters Committee for Freedom of the Press.

14

scrutiny review on Texas's open meetings statute, the panel's opinion unmistakably places Texas's law, and by extension similar laws and constitutional provisions in other States, in jeopardy of being overturned in their entirety. But because "speech concerning public affairs is more than self-expression; it is the essence of self-government," *Garrison v. Louisiana*, 379 U.S. 64, 74-75 (1964), regulations that reasonably require public access to such speech should not be subjected to strict-scrutiny review under the First Amendment.

## CONCLUSION

The Court should grant the petition for rehearing en banc, vacate the panel's decision remanding the case to the district court for application of strict-scrutiny review to § 551.144 of the TOMA, and uphold the statute as a constitutionally valid time, place, and manner regulation of speech.

Respectfully Submitted,

GREG ABBOTT
Attorney General of Texas

C. ANDREW WEBER
First Assistant Attorney General

DAVID S. MORALES
Deputy Attorney General for Civil Litigation

JAMES C. HO
Solicitor General


SEAN D. JORDAN
Deputy Solicitor General
State Bar No. 00790988

JAMES TODD
Assistant Attorney General

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
[Tel.] (512) 936-1823
[Fax] (512) 474-2697

COUNSEL FOR APPELLEE GREG ABBOTT

16

J. STEVEN HOUSTON

*- by permission
Su A

P.O. Box 388
Marathon, Texas 79842
State Bar No. 10054300
[Tel.] (432) 386-6054
[Fax] (432) 386-4203

COUNSEL FOR APPELLEE FRANK D. BROWN

17

## CERTIFICATE OF SERVICE

I certify that two true and correct copies of the above and foregoing Petition for Rehearing En Banc, along with a computer disk copy of the brief in Adobe Portable Document Format, were served by Federal Express Next Day Air Delivery, on May 7, 2009 to:

Dick DeGuerin
DeGuerin, Dickson & Hennessey
1018 Preston Ave., 7th Floor
Houston, Texas 77002

Arvel Rodolphus Ponton, III
2301 N. Highway 118
P.O. Box 9760
Alpine, Texas 79831

Counsel for Plaintiff-Appellants

Counsel also certifies that on May 7, 2009, twenty-one paper copies of the Petition for Rehearing En Banc, along with a computer disk copy of the brief in Adobe Portable Format, were dispatched to the clerk, as addressed below, via Federal Express Next Day Air Delivery:

Charles R. Fulbruge, III, Clerk
U.S. Court of Appeals for the Fifth Circuit
600 Maestri Place
New Orleans, Louisiana 70130

Sean D. Jordan

# Appendix

### INDEX TO APPENDIX

**Tab**

Rangra v. Brown, No. 06-51587, slip op. (5th Cir. Apr. 24, 2009) . . . . . . . . . . . A

Excerpts from Open Government Provisions by State . . . . . . . . . . . . . . . . . . . . . B

A

REVISED April 27, 2009

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

April 24, 2009

No. 06-51587

Charles R. Fulbruge III
Clerk

AVINASH RANGRA; ANNA MONCLOVA

Plaintiffs-Appellants

v.

FRANK D. BROWN, District Attorney; GREGG ABBOTT, Texas Attorney
General

Defendants-Appellees

Appeal from the United States District Court
for the Western District of Texas

Before WIENER, BARKSDALE, and DENNIS, Circuit Judges.

DENNIS, Circuit Judge:

The pivotal question presented by this appeal is whether speech of elected
state and local government officials made pursuant to their official duties, like
speech of non-elected public employees, is less protected by the First Amendment
than other speech. The district court held that the First Amendment affords
absolutely no protection to speech by elected officials made pursuant to their
official duties. We disagree. The First Amendment's protection of elected
officials' speech is full, robust, and analogous to that afforded citizens in general.
Furthermore, when a state seeks to restrict the speech of an elected official on

No. 06-51587

the basis of its content, a federal court must apply strict scrutiny and declare that limitation invalid unless the state carries its burden to prove both that the regulation furthers a compelling state interest and that it is narrowly tailored to serve that interest. In the present case, because the district court dismissed the elected officials' challenge to a state statute that regulates their speech on the basis of its content without applying the required strict scrutiny analysis, we reverse the district court's judgment and remand the case for the performance of that task.

## I.

The plaintiffs, elected city council members, were indicted in state court for violations of the criminal provisions of the Texas Open Meetings Act ("TOMA")[1] by acting as a quorum in exchanging private emails discussing whether to call a council meeting to consider a public contract matter. After prosecuting the charges for several months, the district attorney dismissed them without prejudice. The plaintiffs, alleging fear of future prosecutions and undue restriction of their First Amendment speech rights, brought this § 1983 action in federal district court for declaratory and injunctive relief against the state attorney general and the district attorney, challenging as content-based speech regulations the criminal provisions of TOMA. The district court dismissed the plaintiffs' claims, holding that under *Garcetti v. Ceballos*, 547 U.S. 410 (2006), elected officials, like public employees, enjoy no First Amendment protection of their speech made pursuant to their official duties. The plaintiffs appealed and we now reverse and remand the case to the district court for further proceedings.

---

[1] TEX. GOV'T CODE ANN. § 551.001 *et seq.* (Vernon 2007).

2

No. 06-51587

## II.

Defendants assert that this case is nonjusticiable because the plaintiffs lack standing and their claims are moot. We agree with the district court that the plaintiff Mr. Rangra has standing, and we conclude that the case is not moot.[2]

To establish standing, the plaintiff must demonstrate injury, causation, and redressability. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). It is well established that a credible threat of present or future criminal prosecution will confer standing. *See, e.g., Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 392-93 (1988) (holding that the injury-in-fact requirement was met, in part, because "plaintiffs have alleged an actual and well-founded fear that the law will be enforced against them"); *Steffel v. Thompson*, 415 U.S. 452, 459 (1974) ("[I]t is not necessary that [a party] first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights."); *Doe v. Bolton*, 410 U.S. 179, 188-89 (1973). This is because a credible threat of present or future prosecution is an injury sufficient to confer standing, even if there is no history of past enforcement, *see Bolton*, 410 U.S. at 188, and a speaker who fears prosecution may engage in self-censorship, which is itself another injury, *see Am. Booksellers*, 484 U.S. at 392 ("[T]he alleged danger of [the challenged] statute is,

---

[2] The record reflects that Mr. Rangra is still a member of the city council, although Ms. Monclova may not be. A case is not moot as long as a live controversy exists between at least one plaintiff and one defendant. *See Cutter v. Wilkinson*, 544 U.S. 709, 712 n.1 (2005); 13B CHARLES A. WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE & PROCEDURE § 3533.1 n.18 (3d ed. 2008). Consequently, we need not address standing with respect to Ms. Monclova. To the extent the issue remains open, we leave its consideration and determination to the district court on remand.

3

No. 06-51587

in large measure, one of self-censorship."); *see also Ashcroft v. ACLU*, 542 U.S. 656, 670-71 (2004) ("Where a prosecution is a likely possibility . . . speakers may self-censor rather than risk the perils of trial. There is a potential for extraordinary harm and a serious chill upon protected speech.").

"The standard – encapsulated in the phrase 'credible threat of prosecution' – is quite forgiving."[3] "[W]hen dealing with . . . statutes that facially restrict expressive activity by the class to which the plaintiff belongs, courts will assume a credible threat of prosecution in the absence of compelling contrary evidence."[4]

The district court held that the plaintiff established standing by demonstrating injury in fact, causation, and redressability through self-censorship out of fear of prosecution under TOMA.[5] We agree. The plaintiff's affidavits and trial testimony show that he has self-censored his speech to avoid prosecution under TOMA[6] and thereby established injury.[7] Moreover, the

---

[3] *N. H. Right to Life Political Action Comm. v. Gardner*, 99 F.3d 8, 14 (1st Cir. 1996) (citing *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 301 (1979)).

[4] *Gardner*, 99 F.3d at 15 (citing *Babbitt*, 442 U.S. at 301-02; *Bolton*, 410 U.S. at 188; *Am. Booksellers*, 484 U.S. at 392-93; *Chamber of Commerce of U.S. v. FEC*, 69 F.3d 600, 603-04 (D.C. Cir. 1995); *Wilson v. Stocker*, 819 F.2d 943, 946 (10th Cir. 1987)).

[5] *See Rangra v. Brown*, No. P-05-CV-075, 2006 WL 3327634, at *4 (W.D. Tex. Nov. 7, 2006); *see also Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 659 (5th Cir. 2006).

[6] For example, Rangra's affidavit states the following:

> I am still a member of the Alpine City Council. I still want to talk to and discuss public matters with my fellow elected city council members. I would like to communicate with city councilors, and the public, by email, regular mail, telephone, and directly. Because of Mr. Brown's prosecution of me and my fellow councilors, I am afraid to do this. I am afraid to exercise my First Amendment rights to communicate with my fellow councilors, and the public. I am afraid that if I talk to anyone about public matters, except at a city council meeting, I could be indicted and face a criminal prosecution. This threat to me

4

No. 06-51587

plaintiff has alleged threats of prosecution that cannot be characterized as "imaginary or speculative." *See Steffel*, 415 U.S. at 459. He has been indicted and prosecuted for his email discussion of setting up a city council meeting pertaining to council business, and the Texas Attorney General has warned that the speech the plaintiff claims is constitutionally protected and for which he has been indicted, *viz.*, communications, including emails, discussing public business or public policy, is subject to future prosecution.[8] The prosecution of the plaintiff for his email communications is ample demonstration that his concern with future indictment and prosecution is not "chimerical." *See id.* (citing *Poe v. Ullman*, 367 U.S. 497, 508 (1961)). In these circumstances, it is not necessary that the plaintiff first expose himself to actual arrest, indictment, or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights. *See id.* (citing *Epperson v. Arkansas*, 393 U.S. 97 (1968)).

Because the reasons for the plaintiff's standing continue to exist, we also reject defendants' argument that the case is moot.[9]

---

is ongoing and real. But for this threat, I would exercise my First Amendment rights to communicate with the voters and public officials.

[7] *See, e.g, Am. Booksellers*, 484 U.S. at 392; *Ashcroft v. ACLU*, 542 U.S. at 670-71.

[8] *See, e.g.*, Op. Tex. Att'y Gen. JC-0307 (2000).

[9] To avoid mootness "[t]he requisite personal interest that must exist at the commencement of the litigation [to give rise to standing] must continue throughout its existence," *i.e.*, the controversy underlying the lawsuit must persist. *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997) (quoting *U. S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980)).

5

No. 06-51587

## III.

The plaintiffs challenge the criminal provisions of TOMA as state regulations imposing an invalid content-based restriction of free speech.[10] The Supreme Court has held that the strict scrutiny test governs challenges for assessing laws that regulate speech on the basis of its content.[11]

Strict scrutiny, a formula crafted by the Supreme Court for implementing constitutional values, is one of the most important elements of modern constitutional law.[12] Strict scrutiny varies from ordinary scrutiny by imposing three hurdles on the government.   It shifts the burden of proof to the government, requires the government to prove that its action or regulation pursues a compelling state interest, and demands that the government prove

---

[10] "As a matter of constitutional tradition, in the absence of evidence to the contrary, we presume that governmental regulation of the content of speech is more likely to interfere with the free exchange of ideas than to encourage it." *Reno v. ACLU*, 521 U.S. 844, 885 (1997). Accordingly, content-based speech restrictions are presumed invalid because "[a]ny restriction on expressive activity because of its content would completely undercut the 'profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open.'" *Police Dep't of Chicago v. Mosley*, 408 U.S. 92, 96 (1972) (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964)); *see also Turner Broad. Sys. v. FCC*, 512 U.S. 622, 641 (1994) ("At the heart of the First Amendment lies the principle that each person should decide for himself or herself the ideas and beliefs deserving of expression, consideration, and adherence. Our political system and cultural life rest upon this ideal. Government action that stifles speech on account of its message . . . contravenes this essential right." (citations omitted)); *Consol. Edison Co. of New York, Inc. v. Pub. Serv. Comm'n.*, 447 U.S. 530, 538 (1980) ("To allow a government the choice of permissible subjects for public debate would be to allow that government control over the search for political truth.").

[11] *See, e.g., Republican Party of Minn. v. White*, 536 U.S. 765, 774-75 (2002); *United States v. Playboy Entm't Group, Inc.*, 529 U.S. 803, 813-814 (2000); *Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.*, 502 U.S. 105, 118 (1991); *Sable Commc'ns of Cal., Inc. v. FCC*, 492 U.S. 115, 126 (1989)

[12] *See* Richard H. Fallon, Jr., *Strict Judicial Scrutiny*, 54 UCLA L. REV. 1267, 1268-69 (2007); Stephen A. Siegel, *The Origin of the Compelling State Interest Test and Strict Scrutiny*, 48 AM. J. LEGAL HIST. 355, 355 (2006).

6

No. 06-51587

that its action or regulation is "narrowly tailored" to further that compelling interest.[13]

We agree with the plaintiffs that the criminal provisions of TOMA are content-based regulations of speech that require the state to satisfy the strict-scrutiny test in order to uphold them.[14] A speech regulation is content-based if it defines the regulated speech by reference to its content.[15] For example, in

---

[13] *See* Siegel, *supra* note 12, at 360 (citing ERWIN CHEMERINSKY, CONSTITUTIONAL LAW: PRINCIPLES AND POLICIES 645, 767, 902-903 (2d ed. 2002)); Fallon, *supra* note 12, at 1273.

[14] *See, Ashcroft v. ACLU,* 542 U.S. at 665 ("When plaintiffs challenge a content-based speech restriction, the burden is on the Government to prove that the proposed alternatives will not be as effective as the challenged statute."); *White,* 536 U.S. at 774 (applying strict scrutiny to a law prohibiting speech on the basis of its content); *Playboy,* 529 U.S. at 813 ("If a statute regulates speech based on its content, it must be narrowly tailored to promote a compelling Government interest"); *Reno,* 521 U.S. at 868  (applying "the most stringent review" to a content-based restriction); *Turner Broad.,* 512 U.S. at 642 ("Our precedents thus apply the most exacting scrutiny to regulations that suppress, disadvantage, or impose differential burdens upon speech because of its content"); *Burson v. Freeman,* 504 U.S. 191, 198 (1992) (holding that "a facially content-based restriction on political speech . . . must be subjected to exacting scrutiny: The State must show that the regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end" (internal quotation marks omitted)); *R.A.V. v. City of St. Paul, Minn.,* 505 U.S. 377, 382 (1992) ("Content-based regulations are presumptively invalid"); *Simon & Schuster,* 502 U.S. at 116 ("Regulations which permit the Government to discriminate on the basis of the content of the message cannot be tolerated under the First Amendment." (internal quotation marks omitted)); *Boos v. Barry,* 485 U.S. 312, 321 (1988) ("Our cases indicate that as a *content-based* restriction on *political speech* in a *public forum,* [the statute prohibiting negative picketing] must be subjected to the most exacting scrutiny."); *Carey v. Brown,* 447 U.S. 455, 461-62 (1980) (applying strict scrutiny to a content-based restriction); *Mosley,* 408 U.S. at 95 ("[T]he First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content").

[15] *See Playboy,* 529 U.S. at 811 ("[When] speech . . . is defined by its content . . . the statute which seeks to restrict it is content based."); *see also White,* 536 U.S. at 774 (holding a statute burdening a category of speech, "speech about the qualifications of candidates for public office," to be content-based); *Reno,* 521 U.S. at 868 (holding that a law prohibiting transmission of indecent material by means of a telecommunications device to a minor was a content-based restriction); *Burson,* 504 U.S. at 197 ("Whether individuals may exercise their

No. 06-51587

*Burson v. Freeman*, 504 U.S. 191, 196 (1992), the Court found a statute prohibiting display of political campaign materials within 100 feet of a polling place to be a content-based speech restriction because "[w]hether individuals may exercise their free speech rights near polling places depends entirely on whether their speech is related to a political campaign. The statute does not reach other categories of speech, such as commercial solicitation, distribution, and display." *Id.* at 197. TOMA § 551.144, which criminalizes the discussion of public matters by a quorum of public officials when outside of an open meeting, *see* Tex. Gov't Code Ann. §§ 551.001, 551.144(a), is similarly content based because whether a quorum of public officials may communicate with each other outside of an open meeting depends on whether the content of their speech refers to "public business or public policy over which the governmental body has supervision or control."[16]

Furthermore, because TOMA imposes a content-based regulation, we conclude that the district court was required to apply the strict-scrutiny test and to make the state carry its burden of proving that the statute pursues a compelling interest which the law is narrowly tailored to further. The district court did not perform that task because it mistakenly concluded that elected officials' speech made pursuant to their official duties is totally unprotected by the First Amendment. For this reason, the district court dismissed the plaintiffs'

---

free speech rights near polling places depends entirely on whether their speech is related to a political campaign. The statute does not reach other categories of speech, such as commercial solicitation, distribution, and display. This Court has held that the First Amendment's hostility to content-based regulation extends not only to a restriction on a particular viewpoint, but also to a prohibition of public discussion of an entire topic"); *Boos*, 485 U.S. at 321 (holding that a prohibition on picket signs critical of a foreign government was content based).

[16] TEX. GOV'T CODE ANN. § 551.001 (Vernon 2007).

No. 06-51587

claims as not actionable without ever undertaking the strict-scrutiny analysis. Consequently, we must vacate the district court's judgment and remand the case to it for a proper application of the strict scrutiny test. Before doing so, however, we will explain why the district court erred in assuming that the speech of elected officials made pursuant to their official duties is entitled to no protection under the First Amendment.

## IV.

The Supreme Court, in *Garcetti*, held that the First Amendment does not protect a government employee from discipline based on speech made pursuant to the employee's official duties.[17] The district court assumed that there is no meaningful distinction between the speech of elected officials and that of public employees and held that, under *Garcetti*, the plaintiffs' speech pursuant to their official duties was not protected by the First Amendment.

The district court's premise that the First Amendment's protection of elected officials' speech is limited just as it is for the speech of public employees, however, is incorrect. Job-related speech by public employees is clearly less protected than other speech because the Court has held that government employees' speech rights must be balanced with the government's need to supervise and discipline subordinates for efficient operations.[18] The First

---

[17] *See Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006).

[18] In *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968), the Court stated that its task was to balance the free speech rights of government employees with the government's "interest . . . as an employer, in promoting the efficiency of the public services it performs through its employees." *Id.* "[T]he State has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general." *Id.*

9

Amendment does not protect government employees' job-related speech unless the speech is about a matter of public concern, "and even then, a government employee may be fired or disciplined for her speech if the government employer can show, on balance, that the efficient operation of the office justified the action."[19] But when the state acts as a sovereign, rather than as an employer, its power to limit First Amendment freedoms is much more attenuated.[20] That is because a state's interest in regulating speech as sovereign is "relatively subordinate . . . [as] [t]he government cannot restrict the speech of the public at large just in the name of efficiency."[21] *Garcetti* itself, like the Court's other public employee speech cases, recognizes the state's very limited power as

---

[19] ERWIN CHEMERINSKY, CONSTITUTIONAL LAW: PRINCIPLES AND POLICIES 1110 (3d ed. 2006); *see also Waters v. Churchill*, 511 U.S. 661, 668 (1994) (plurality opinion); *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 284 (1977); *Pickering*, 391 U.S. at 568.

[20] *See Waters*, 511 U.S. at 671-72 ("[T]he government as employer indeed has far broader powers than does the government as sovereign." (citing *Connick v. Myers*, 461 U.S. 138, 147 (1983); *Civil Serv. Comm'n v. Letter Carriers*, 413 U.S. 548, 564 (1973); *Pickering*, 391 U.S. at 568)); *see also Garcetti*, 547 U.S. at 418 (citing *Waters*, 511 U.S. at 671).

[21] *Waters*, 511 U.S. at 675 ("The key to First Amendment analysis of government employment decisions, then, is this: The government's interest in achieving its goals as effectively and efficiently as possible is elevated from a relatively subordinate interest when it acts as sovereign to a significant one when it acts as employer. The government cannot restrict the speech of the public at large just in the name of efficiency. But where the government is employing someone for the very purpose of effectively achieving its goals, such restrictions may well be appropriate."); *see also id.* at 674-75 ("Rather, the extra power the government has in this area comes from the nature of the government's mission as employer. Government agencies are charged by law with doing particular tasks. Agencies hire employees to help do those tasks as effectively and efficiently as possible. When someone who is paid a salary so that she will contribute to an agency's effective operation begins to do or say things that detract from the agency's effective operation, the government employer must have some power to restrain her. The reason the governor may, in the example given above, fire the deputy is not that this dismissal would somehow be narrowly tailored to a compelling government interest. It is that the governor and the governor's staff have a job to do, and the governor justifiably feels that a quieter subordinate would allow them to do this job more effectively.").

No. 06-51587

sovereign to infringe on First Amendment freedoms.[22] None of the Supreme
Court's public employee speech decisions qualifies or limits the First
Amendment's protection of elected government officials' speech.[23] Contrary to
the district court's reasoning, there is a meaningful distinction between the First
Amendment's protection of public employees' speech and other speech, including
that of elected government officials.

---

[22] *See Garcetti*, 547 U.S. at 418 ("[T]he government as employer indeed has far broader
powers than does the government as sovereign." (quoting *Waters*, 511 U.S. at 671)); *id.* ("A
government entity has broader discretion to restrict speech when it acts in its role as
employer, but the restrictions it imposes must be directed at speech that has some potential
to affect the entity's operations"); *see also* authorities cited *supra* note 19.

[23] *Garcetti* did not expand the scope of the public employee speech limitations to
include elected officials; rather, *Garcetti* merely carved out a narrow exception to the Supreme
Court's holdings that a government employer may not discipline or adversely affect public
employees for their speech involving matters of public concern unless the state can prove that
the needs of the government outweigh the speech rights of the employee. In *Garcetti*, Ceballos,
a deputy district attorney, alleged that he had been subjected to adverse employment actions
in retaliation for engaging in protected speech, *viz.*, for writing an internal memo
recommending the dismissal of a criminal case on the basis of alleged governmental
misconduct. *See Garcetti*, 547 U.S. at 414-15. The Supreme Court concluded that Ceballos's
speech was not protected, holding that "when public employees make statements pursuant to
their official duties, the employees are not speaking as citizens for First Amendment purposes,
and the Constitution does not insulate their communications from employer discipline." *Id.* at
421. Thus, the Court reasoned that when Ceballos spoke pursuant to his official duty he was
not speaking as a citizen on a matter of public concern, and, therefore, his speech was not
protected by the First Amendment. *See id.* at 423; *see also The Supreme Court, 2005 Term*, 120
Harv. L. Rev. 273 (2006). As a result, *Garcetti* created an exception allowing that, where a
public employee speaks pursuant to official duty, the state may restrict this speech without
proving that its management needs outweigh the employee's freedom of expression. *See
Garcetti*, 547 U.S. at 423.
    While *Garcetti* added a new qualification of public employees' freedom of expression
recognized by the Court's long line of cases concerning public employee speech rights, it did
nothing to diminish the First Amendment protection of speech restricted by the government
acting as a sovereign rather than as an employer and did nothing to impact the speech rights
of elected officials whose speech rights are not subject to employer supervision or discipline.

11

No. 06-51587

Indeed, the Supreme Court's decisions demonstrate that the First Amendment's protection of elected officials' speech is robust and no less strenuous than that afforded to the speech of citizens in general. For example, in the 1960s the Court held in *Bond v. Floyd*, 385 U.S. 116, 133-35 (1966), that state action excluding a state representative from membership in the legislature because of his statements criticizing the policy of the federal government in Vietnam and the operation of the selective service laws violated his right of free expression under the First Amendment. In *Wood v. Georgia*, 370 U.S. 375, 392, 395 (1962), the Court held that out-of-court statements by a sheriff questioning the advisability of a grand jury investigation into block voting by black citizens did not present a clear and present danger to the administration of justice, and, therefore, the use of the contempt power to punish the sheriff for the statements abridged his right of free speech. The Court emphasized that "[t]he role that elected officials play in our society makes it all the more imperative that they be allowed freely to express themselves on matters of current public importance." *Id.* at 395.

Recently, in *Republican Party of Minnesota v. White*, 536 U.S. 765, 774-75 (2002), the Court held that a state supreme court's canon of conduct, which prohibited candidates for judicial election from announcing their views on disputed legal or political issues, is a content-based regulation of speech; that the proper test to be applied to determine the constitutionality of such a restriction is the strict scrutiny test; that the strict scrutiny test requires that the party defending the content-based restriction has the burden to prove that the regulation is (1) narrowly tailored to serve (2) a compelling state interest; and that in order for that party to show that the speech regulation is narrowly

No. 06-51587

tailored, that party must demonstrate that the regulation does not unnecessarily circumscribe protected expression. *See id.* In *White*, based on the record compiled in the district court on cross motions for summary judgment and the court of appeals' decision, a majority of the Supreme Court agreed that the parties defending the speech regulation had failed to carry their burden of proving that it was narrowly tailored to serve a compelling state interest, and that the state's prohibition on judicial candidates' announcing their legal views was an unconstitutional abridgement of freedom of speech. *See id.* Further, the Court reaffirmed that "'[t]he role that elected officials play in our society makes it all the more imperative that they be allowed freely to express themselves on matters of current public importance.'" *Id.* at 781-82 (quoting *Wood v. Georgia*, 370 U.S. at 395).[24]

Most significantly, this court in *Jenevein v. Willing*, 493 F.3d 551 (5th Cir. 2007), held that *White*, 536 U.S. at 765, required us to apply the strict scrutiny test to determine whether a state judiciary commission's order censuring an elected judge's speech on the basis of its content violated his First Amendment protected speech rights.[25] *See Jenevein*, 493 F.3d at 557-58. The censure order,

---

[24] Even before *White*, however, as evinced by the two principal decisions upon which it relied, the Court had vigorously applied the First Amendment protections through the strict scrutiny test on behalf of elected officials, candidates for elective offices, and political parties. *See Eu v. S. F. County Democratic Cent. Comm.*, 489 U.S. 214, 222 (1989); *Brown v. Hartlage*, 456 U.S. 45, 53-54, 58 (1982).

[25] *Jenevein*'s application of strict scrutiny, in reliance on *White*, is consistent with the Supreme Court's use of that formula to protect the expressive activity of virtually all persons from unnecessary content-based regulation of speech regarding public matters or governmental affairs. *See, e.g., Consol. Edison Co. of New York, Inc. v. Public Svc. Com'n*, 447 U.S. 530, 534-35 (1980) ("This Court has emphasized that the First Amendment embraces at the least the liberty to discuss publicly and truthfully all matters of public concern" (internal quotation marks omitted)). In fact, the strict scrutiny test originated in the First Amendment

13

No. 06-51587

which disciplined the judge for holding a press conference in which he addressed alleged abuses of the judicial process by lawyers in a pending case, shut down all communication between the elected judge and his constituents. *See id*. at 556-558. Applying the strict scrutiny test prescribed by *White*, we held that the censure order, in substantial part, was an unconstitutional content-based restriction of the elected official's speech because the state had failed to prove that it was narrowly tailored to further a compelling state interest. *See Jenevein*, 493 F.3d at 559-560.[26]

---

cases of the 1950s and 1960s before it was adopted in the equal protection cases regarding voting rights and racial discrimination, with which it is most identified now. *See generally* Siegel, *supra* note 12, at 361-381. Throughout the standard's history, the Court has applied the content-based strict scrutiny test in service of the "practically universal agreement that a major purpose of [the First] Amendment [is] to protect the free discussion of governmental affairs," *Mills v. Alabama*, 384 U.S. 214, 218 (1966), and "[t]he inherent worth of the speech in terms of its capacity for informing the public does not depend upon the identity of its source, whether corporation, association, union, or individual," *First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 777 (1978), by protecting the speech by a wide variety of citizens seeking to speak on matters of public concern. *See, e.g., Texas v. Johnson*, 491 U.S. 397 (1989) (protecting protesters wishing to burn the American flag); *Boos*, 485 U.S. at 321 (protecting individuals wishing to carry signs critical of foreign governments); *Consol. Edison*, 447 U.S. at 530 (protecting a public utility company wishing to include in billing envelopes pamphlets discussing controversial issues). Thus, our application of strict scrutiny, in *Jenevein* and here, to content-based restrictions on elected officials' speech regarding matters of public business and concerns fits squarely within the long-held principles of First Amendment jurisprudence.

[26] In *Jenevein*, 493 F.3d at 557-58, we applied strict scrutiny to analyze restrictions on an elected judge's speech despite a prior circuit precedent, decided before *White*, 536 U.S. at 781-82, that analyzed similar restrictions on an elected justice of the peace's speech under the *Pickering* balancing test, *see Scott v. Flowers*, 910 F.2d 201, 211-12 (5th Cir. 1990). To the extent that allegiance to the intervening Supreme Court decision in *Republican Party* causes *Jenevein* to conflict with prior circuit precedent in *Scott*, we are bound to follow the Supreme Court and apply *Jenevein*. *See, e.g., United States v. Short*, 181 F.3d 620, 624 (5th Cir. 1999) ("[T]his panel is bound by the precedent of previous panels absent an intervening Supreme Court case explicitly or implicitly overruling that prior precedent."). Further, *Scott v. Flowers* may be read as anticipating *White* because it noted that the state's interest in regulating elected officials' speech is "much weaker than in the typical public employee situation." *Scott*, 910 F.2d at 211.

14

No. 06-51587

In *Jenevein*, we expressly declined the parties' invitation to draw upon the "*Pickering - Garcetti* line of cases for sorting the free speech rights of employees elected to state office."[27]  We noted that those cases' "categorical divisions of public and private speech fail to illuminate the state's interest in constraining speech by an elected public official, political speech at the core of the First Amendment, and its necessity."[28] Further, we noted that an elected official's relationship with the state differs from that of an ordinary state employee, observing "[o]ur 'employee' is an elected official, about whom the public is obliged to inform itself, and the 'employer' is the public itself, at least in the practical sense, with the power to hire and fire. It is true that [the elected official] was an employee of the state. It is equally true that as an elected holder of state office, his relationship with his employer differs from that of an ordinary state employee."[29]

### Conclusion

Applying the foregoing precepts, we conclude that the district court incorrectly assumed that the *Pickering-Garcetti* line of decisions, rather than the strict scrutiny test as elaborated in *White*, governs the present case. Accordingly, we reverse the district court's judgment and remand the case to it

---

[27] *Jenevein*, 493 F.3d at 558 (citing *Pickering*, 391 U.S. at 563; *Garcetti*, 547 U.S. at 410).

[28] *Id.* at 557 (citing *White*, 536 U.S. at 765).

[29] *Id.*; *see also id* at 558 ("If the State chooses to tap the energy and the legitimizing power of the democratic process [in the election of judges], it must accord the participants in that process . . . the First Amendment rights that attach to their roles.") (quoting *White*, 536 U.S. at 788).

15

No. 06-51587

for the application of the strict scrutiny formula to Tex. Gov't Code § 551.144.[30] In doing so, we point out, however, that the Supreme Court has rejected "the notion that strict scrutiny is 'strict in theory, but fatal in fact.'"[31] The fact that strict scrutiny applies "'says nothing about the ultimate validity of any particular law; that determination is the job of the court applying'" that standard.[32]

---

[30] We note that the criminal provision in Tex. Gov't Code § 551.144 is the only portion of TOMA at issue in this case and that the district court's strict scrutiny inquiry should be limited to this provision.

[31] *Adarand Constr'rs, Inc. v. Pena*, 515 U.S. 200, 237 (1995) (quoting *Fullilove v. Klutznick*, 448 U.S. 448, 519 (1980) (Marshall, J., concurring)); *see also Johnson v. California*, 543 U.S. 499, 515 (2005) ("'The fact that strict scrutiny applies says nothing about the ultimate validity of any particular law . . . .'" (quoting *Pena*, 515 U.S. at 230)); *Grutter v. Bollinger*, 539 U.S. 306, 326 (2003) ("Strict scrutiny is not strict in theory, but fatal in fact." (internal quotation marks omitted)); *United States v. Virginia*, 518 U.S. 515, 533 n.6 (1996); Adam Winkler, *Fatal in Theory and Strict in Fact: An Empirical Analysis of Strict Scrutiny in the Federal Courts*, 59 VAND. L. REV. 793, 795-96 (2006) (finding, based on an empirical study of "every strict scrutiny decision published by the district, circuit, and Supreme courts between 1990 and 2003," that "[c]ourts routinely uphold laws when applying strict scrutiny, and they do so in every major area of law in which they use the test. Overall, 30 percent of all applications of strict scrutiny — nearly one in three — result in the challenged law being upheld."); Siegel, *supra* note 12, at 394, 401 ("[S]trict scrutiny is a tool to determine whether there is a cost-benefit justification for governmental action that burdens interests for which the Constitution demands unusually high protection"); *id.* ("Tracing strict scrutiny's roots back to First Amendment narrow tailoring cases in the 1940s and compelling interest cases in the 1950s and early 1960s, establishes strict scrutiny as part of a constitutional paradigm in which, even for high-protectionist Justices, no constitutional right was 'beyond limitation,' and none could prevail over an appropriate subordinating governmental interest." (footnotes omitted)); Fallon, *supra* note 12, at 1302-03 (asserting that the Supreme Court has arguably adopted an interpretation of strict scrutiny as "a weighted balancing test, similar to European proportionality inquiries, in which a court must ask whether a particular intrusion on protected liberties, which may be greater or lesser, can be justified in light of its benefits." (footnotes omitted)).

[32] *See* Winkler, *supra* note 31, at 794 (quoting *Pena*, 515 U.S. at 230).
We emphasize that we remand this matter for the district court to conduct a strict scrutiny review in the first instance because that inquiry might well require development of the record beyond its present state, as the state has not yet been afforded an opportunity to

No. 06-51587

For these reasons, the judgment of the district court is reversed and the case is remanded to it for further proceedings consistent with this opinion.

---

prove that TOMA § 551.144 is narrowly tailored to further a compelling state interest. TOMA § 551.144 may indeed survive this strict scrutiny inquiry. Numerous states apparently employ similarly tailored provisions in their open meetings acts. *See* ANN TAYLOR SCHWING, OPEN MEETING LAWS 2d 275, 285 (2000). However, we simply lack the record necessary to make a strict scrutiny determination here; thus we remand the issue.

B

## Excerpts from Open Government Provisions by State

**ALABAMA:**

"Except for executive sessions permitted in Section 36-25A-7(a) or as otherwise expressly provided by other federal or state statutes, all meetings of a governmental body shall be open to the public and no meetings of a governmental body may be held without providing notice pursuant to the requirements of Section 36-25A-3." ALA. CODE § 35-25-A1 (West 2009).

"Subject to the limitations herein, the term meeting shall only apply to the following:
1. The prearranged gathering of a quorum of a governmental body or a quorum of a committee or subcommittee of a governmental body at a time and place which is set by law or operation of law.
2. The prearranged gathering of a quorum of a governmental body or a quorum of a committee or subcommittee of a governmental body during which the body, committee, or subcommittee of the governmental body is authorized, either by law or otherwise, to exercise the powers which it possesses or approve the expenditure of public funds.
3. The gathering, whether or not it was prearranged, of a quorum of a governmental body or a quorum of a committee or a subcommittee of a governmental body during which the members of the governmental body deliberate specific matters that, at the time of the exchange, the participating members expect to come before the body, committee, or subcommittee at a later date." ALA. CODE § 35-25-A2 (West 2009).

"For each meeting proven to be held in violation of this chapter for one or more reasons, the court shall impose a civil penalty. The maximum penalty for each meeting shall not exceed one thousand dollars ($1,000) or one half of the defendant's monthly salary for service on the governmental body, whichever is less." ALA. CODE § 35-25-A9 (West 2009).

**ALASKA:**

"All meetings of a governmental body of a public entity of the state are open to the public except as otherwise provided by this section or another provision of law… "meeting" means a gathering of members of a governmental body when (A) more than three members or a majority of the members, whichever is less, are present, a matter upon which the governmental body is empowered to act is considered by the members collectively, and the governmental body has the authority to establish policies or make decisions for a public entity…" ALASKA STAT. ANN. § 44.62.310 (West 2009).

**ARIZONA:**

"All meetings of any public body shall be public meetings and all persons so desiring shall be permitted to attend and listen to the deliberations and proceedings. All legal action of public bodies shall occur during a public meeting." ARIZ. REV. STAT. ANN. § 38-431.01 (West 2009).

""'Meeting" means the gathering, in person or through technological devices, of a quorum of members of a public body at which they discuss, propose or take legal action, including any deliberations by a quorum with respect to such action." ARIZ. REV. STAT. ANN. § 38-431 (West 2009).

"If the court determines that a public officer with intent to deprive the public of information violated any provision of this article the court may remove the public officer from office and shall assess the public officer or a person who knowingly aided, agreed to aid or attempted to aid the public officer in violating this article, or both, with all of the costs and attorney fees awarded to the plaintiff pursuant to this section." ARIZ. REV. STAT. ANN. § 38-431.07 (West 2009).

## ARKANSAS:

"Except as otherwise specifically provided by law, all meetings, formal or informal, special or regular, of the governing bodies of all municipalities, counties, townships, and school districts and all boards, bureaus, commissions, or organizations of the State of Arkansas, except grand juries, supported wholly or in part by public funds or expending public funds, shall be public meetings." ARK. CODE ANN. § 25-19-106 (West 2009).

"Any person who negligently violates any of the provisions of this chapter shall be guilty of a Class C misdemeanor." ARK. CODE ANN. § 25-19-104 (West 2009).

## CALIFORNIA:

"All meetings of a state body shall be open and public and all persons shall be permitted to attend any meeting of a state body except as otherwise provided in this article." CAL GOV'T CODE § 11120 (West 2009).

"As used in this article, "meeting" includes any congregation of a majority of the members of a state body at the same time and place to hear, discuss, or deliberate upon any item that is within the subject matter jurisdiction of the state body to which it pertains." CAL GOV'T CODE § 11122.5 (West 2009).

"Any member of a state body who attends a meeting of that body in violation of any provision of this article, and where the member intends to deprive the public of information to which the member knows or has reason to know the public is entitled under this article, is guilty of a misdemeanor." CAL GOV'T CODE § 11130.7 (West 2009).

## COLORADO:

"All meetings of two or more members of any state public body at which any public business is discussed or at which any formal action may be taken are declared to be public meetings open to the public at all times." COLO. REV. STAT. ANN. § 24-6-401 (West 2009).

### CONNECTICUT:

"The meetings of all public agencies, except executive sessions, as defined in subdivision (6) of section 1-200, shall be open to the public. CONN. GEN. STAT. ANN. § 1-225 (West 2009)."

""Meeting" means any hearing or other proceeding of a public agency, any convening or assembly of a quorum of a multimember public agency, and any communication by or to a quorum of a multimember public agency, whether in person or by means of electronic equipment, to discuss or act upon a matter over which the public agency has supervision, control, jurisdiction or advisory power." CONN. GEN. STAT. ANN. § 1-200 (West 2009).

### DELAWARE:

"Every meeting of all public bodies shall be open to the public except those closed pursuant to subsections (b), (c), (d) and (g) of this section... In an enforcement action pursuant to § 10005 of this title, a citizen or the Attorney General, as the case may be, may seek the forfeiture of all or part of the compensation of members of a board, commission or other public body for any closed meeting which such board, commission or other public body closed knowing that such action violated this chapter. Such forfeiture may only be ordered by the Court if the Court makes a specific finding that the board, commission or public body had no good faith basis to believe that the meeting could be closed. It shall be an absolute defense that an individual never voted in favor of the closed meeting..." DEL. CODE ANN. TIT. 29 § 10004 (West 2009).

### DISTRICT OF COLUMBIA:

"All meetings (including hearings) of any department, agency, board, or commission of the District government, including meetings of the Council of the District of Columbia, at which official action of any kind is taken shall be open to the public." D.C. CODE ANN. § 1-207.42 (West 2009).

### FLORIDA:

"All meetings of any collegial public body of the executive branch of state government or of any collegial public body of a county, municipality, school district, or special district, at which official acts are to be taken or at which public business of such body is to be transacted or discussed, shall be open and noticed to the public and meetings of the legislature shall be open and noticed as provided in Article III, Section 4(e), except with respect to meetings exempted pursuant to this section or specifically closed by this Constitution." FLA. CONST. art. I, § 24, cl. (b).

"All meetings of any board or commission of any state agency or authority or of any agency or authority of any county, municipal corporation, or political subdivision, except as otherwise provided in the Constitution, at which official acts are to be taken are

3

declared to be public meetings open to the public at all times, and no resolution, rule, or formal action shall be considered binding except as taken or made at such meeting... Any public officer who violates any provision of this section is guilty of a noncriminal infraction, punishable by fine not exceeding $500." FLA. STAT. ANN. § 286.011 (West 2009).

### GEORGIA:

"The sessions of the General Assembly and all standing committee meetings thereof shall be open to the public. Either house may by rule provide for exceptions to this requirement." GA. CONST. art. III, § 4, p. XI.

"Except as otherwise provided by law, all meetings as defined in subsection (a) of this Code section shall be open to the public." GA. CODE ANN. § 50-14-1 (West 2008).

""Meeting" means the gathering of a quorum of the members of the governing body of an agency or of any committee of its members created by such governing body..." GA. CODE ANN. § 50-14-1 (West 2008).

"Any person knowingly and willfully conducting or participating in a meeting in violation of this chapter shall be guilty of a misdemeanor and upon conviction shall be punished by a fine not to exceed $ 500.00." GA. CODE ANN. § 50-14-6 (West 2008).

### HAWAII:

"Every meeting of all boards shall be open to the public and all persons shall be permitted to attend any meeting unless otherwise provided in the constitution or as closed pursuant to sections 92-4 and 92-5..." HAW. REV. STAT. § 92-3 (West 2008).

"Any person who wilfully violates any provisions of this part shall be guilty of a misdemeanor, and upon conviction, may be summarily removed from the board unless otherwise provided by law." HAW. REV. STAT. § 92-13 (West 2008).

### IDAHO:

"Except as provided below, all meetings of a governing body of a public agency shall be open to the public and all persons shall be permitted to attend any meeting except as otherwise provided by this act." IDAHO CODE ANN. § 67-2342 (West 2009).

"(2) Any member of the governing body governed by the provisions of sections 67-2340 through 67-2346, Idaho Code, who knowingly conducts or participates in a meeting which violates the provisions of this act shall be subject to a fine civil penalty not to exceed one hundred fifty dollars ($150.00) for a first violation and not to exceed three hundred dollars ($300) for each subsequent violation as a civil penalty.
(3) Any member of a governing body who knowingly violates the provisions of this act shall be subject to a civil penalty not to exceed five hundred dollars ($500).

(4) Any member of a governing body who violates any provision of this act and who has previously admitted to committing or has been previously determined to have committed a violation of this act within the twelve (12) months preceding this subsequent violation shall be subject to a civil penalty not to exceed five hundred dollars ($500)." IDAHO CODE ANN. § 67-2347 (West 2009).

**ILLINOIS:**

"Sessions of each house of the General Assembly and meetings of committees, joint committees and legislative commissions shall be open to the public. Sessions and committee meetings of a house may be closed to the public if two-thirds of the members elected to that house determine that the public interest so requires; and meetings of joint committees and legislative commissions may be so closed if two-thirds of the members elected to each house so determine." ILL. CONST. art. IV, § 5, cl. (c).

"(a) Openness required. All meetings of public bodies shall be open to the public unless excepted in subsection (c) and closed in accordance with Section 2a." 5 ILL. COMP. STAT. ANN. 120/2 (West 2009).

"Any person violating any of the provisions of this Act shall be guilty of a Class C misdemeanor." 5 ILL. COMP. STAT. ANN. 120/4 (West 2009).

**INDIANA:**

"Except as provided in section 6.1 of this chapter, all meetings of the governing bodies of public agencies must be open at all times for the purpose of permitting members of the public to observe and record them." IND. CODE ANN. § 5-14-1.5-3 (West 2009).

**IOWA:**

"Meetings of governmental bodies shall be preceded by public notice as provided in section 21.4 and shall be held in open session unless closed sessions are expressly permitted by law." IOWA CODE ANN. § 21.3 (West 2009).

"Upon a finding by a preponderance of the evidence that a governmental body has violated any provision of this chapter, a court:
a. Shall assess each member of the governmental body who participated in its violation damages in the amount of not more than five hundred dollars nor less than one hundred dollars." IOWA CODE ANN. § 21.3 (West 2009).

**KANSAS:**

"Subject to the provisions of subsection (g), all meetings for the conduct of the affairs of, and the transaction of business by, all legislative and administrative bodies and agencies of the state and political and taxing subdivisions thereof, including boards, commissions, authorities, councils, committees, subcommittees and other subordinate groups thereof,

receiving or expending and supported in whole or in part by public funds shall be open to the public and no binding action by such bodies shall be by secret ballot. Meetings of task forces, advisory committees or subcommittees of advisory committees created pursuant to a governor's executive order shall be open to the public in accordance with this act." KAN. STAT. ANN. § 75-4318 (West 2009).

"Any member of a body or agency subject to this act who knowingly violates any of the provisions of this act or who intentionally fails to furnish information as required by subsection (b) of K.S.A. 75-4318, and amendments thereto, shall be liable for the payment of a civil penalty in an action brought by the attorney general or county or district attorney, in a sum set by the court of not to exceed $500 for each violation." KAN. STAT. ANN. § 75-4320 (West 2009).

### KENTUCKY:

"All meetings of a quorum of the members of any public agency at which any public business is discussed or at which any action is taken by the agency, shall be public meetings, open to the public at all times, except for the following..." KY. REV. STAT. ANN. § 61.810 (West 2009).

"Any person who prevails against any agency in any action in the courts regarding a violation of KRS 61.805 to 61.850, where the violation is found to be willful, may be awarded costs, including reasonable attorneys' fees, incurred in connection with the legal action. In addition, it shall be within the discretion of the court to award the person an amount not to exceed one hundred dollars ($100) for each instance in which the court finds a violation. Attorneys' fees, costs, and awards under this subsection shall be paid by the agency responsible for the violation." KY. REV. STAT. ANN. § 61.848 (West 2009).

### LOUISIANA:

"No person shall be denied the right to observe the deliberations of public bodies and examine public documents, except in cases established by law." LA. CONST. art. XII, § 3.

"Every meeting of any public body shall be open to the public unless closed pursuant to R.S. 42:6, R.S. 42:6.1, or R.S. 42:6.2." LA. REV. STAT. ANN. TIT. 42 § 5 (West 2008).

"Any member of a public body who knowingly and wilfully participates in a meeting conducted in violation of R.S. 42:4.1 through R.S. 42:8, shall be subject to a civil penalty not to exceed one hundred dollars per violation. The member shall be personally liable for the payment of such penalty. A suit to collect such penalty must be instituted within sixty days of the violation." LA. REV. STAT. ANN. TIT. 42 § 13 (West 2008).

### MAINE:

"Except as otherwise provided by statute or by section 405, all public proceedings shall be open to the public, any person shall be permitted to attend any public proceeding and

any record or minutes of such proceedings that is required by law shall be made promptly and shall be open to public inspection." ME. REV. STAT. ANN. TIT. 1, § 403 (West 2009).

"For every willful violation of this subchapter, the state government agency or local government entity whose officer or employee committed the violation shall be liable for a civil violation for which a forfeiture of not more than $500 may be adjudged." ME. REV. STAT. ANN. TIT. 1, § 410 (West 2009).

## MARYLAND:

"Except in special and appropriate circumstances when meetings of public bodies may be closed under this subtitle, it is the public policy of the State that the public be provided with adequate notice of the time and location of meetings of public bodies, which shall be held in places reasonably accessible to individuals who would like to attend these meetings." MD. CODE. ANN., STATE GOV'T § 10-501 (West 2009).

"A member of a public body who willfully participates in a meeting of the body with knowledge that the meeting is being held in violation of the provisions of this subtitle is subject to a civil penalty not to exceed $100." MD. CODE. ANN., STATE GOV'T § 10-511 (West 2009).

## MASSACHUSETTS:

"All meetings of a governmental body shall be open to the public and any person shall be permitted to attend any meeting except as otherwise provided by this section." MASS. GEN. LAWS ANN. ch. 39, § 23B (West 2009).

## MICHIGAN:

"All meetings of a public body shall be open to the public and shall be held in a place available to the general public." MICH. COMP. LAWS § 15.263 (West 2009).

"A public official who intentionally violates this act is guilty of a misdemeanor punishable by a fine of not more than $1,000.00." MICH. COMP. LAWS § 15.272 (West 2009).

## MINNESOTA:

"Subdivision 1. In executive branch, local government. All meetings, including executive sessions, must be open to the public..." MINN. STAT. ANN. § 13D.01 (West 2009).

"Any person who intentionally violates this chapter shall be subject to personal liability in the form of a civil penalty in an amount not to exceed $300 for a single occurrence, which may not be paid by the public body." MINN. STAT. ANN. § 13D.06 (West 2009).

## MISSISSIPPI:

"All official meetings of any public body, unless otherwise provided in this chapter or in the Constitutions of the United States of America or the State of Mississippi, are declared to be public meetings and shall be open to the public at all times unless declared an executive session as provided in Section 25-41-7." MISS. CODE ANN. § 25-41-5 (West 2009).

## MISSOURI:

"Except as otherwise provided by law, all public meetings of public governmental bodies shall be open to the public as set forth in section 610.020, all public records of public governmental bodies shall be open to the public for inspection and copying as set forth in sections 610.023 to 610.026, and all public votes of public governmental bodies shall be recorded as set forth in section 610.015." MO. ANN. STAT. § 610.021 (West 2009).

"Upon a finding by a preponderance of the evidence that a public governmental body or a member of a public governmental body has knowingly violated sections 610.010 to 610.026, the public governmental body or the member shall be subject to a civil penalty in an amount up to one thousand dollars. If the court finds that there is a knowing violation of sections 610.010 to 610.026, the court may order the payment by such body or member of all costs and reasonable attorney fees to any party successfully establishing a violation. The court shall determine the amount of the penalty by taking into account the size of the jurisdiction, the seriousness of the offense, and whether the public governmental body or member of a public governmental body has violated sections 610.010 to 610.026 previously." MO. ANN. STAT. § 610.027 (West 2009).

## MONTANA:

"No person shall be deprived of the right to examine documents or to observe the deliberations of all public bodies or agencies of state government and its subdivisions, except in cases in which the demand of individual privacy clearly exceeds the merits of public disclosure." MONT. CONST. art. II, § 9.

"All meetings of public or governmental bodies, boards, bureaus, commissions, agencies of the state, or any political subdivision of the state or organizations or agencies supported in whole or in part by public funds or expending public funds, including the supreme court, must be open to the public." MONT. CODE ANN. § 2-3-203 (West 2008).

## NEBRASKA:

"Every meeting of a public body shall be open to the public in order that citizens may exercise their democratic privilege of attending and speaking at meetings of public bodies, except as otherwise provided by the Constitution of Nebraska, federal statutes, and the Open Meetings Act." NEB. REV. STATE. ANN. § 84-1408 (West 2009).

"Any member of a public body who knowingly violates or conspires to violate or who attends or remains at a meeting knowing that the public body is in violation of any provision of the Open Meetings Act shall be guilty of a Class IV misdemeanor for a first offense and a Class III misdemeanor for a second or subsequent offense." NEB. REV. STATE. ANN. § 84-1414 (West 2009).

## NEVADA:

"Except as otherwise provided by specific statute, all meetings of public bodies must be open and public, and all persons must be permitted to attend any meeting of these public bodies." NEV. REV. STAT. ANN. § 241.015 (West 2008).

"1. Each member of a public body who attends a meeting of that public body where action is taken in violation of any provision of this chapter, with knowledge of the fact that the meeting is in violation thereof, is guilty of a misdemeanor.

2. Wrongful exclusion of any person or persons from a meeting is a misdemeanor.

3. A member of a public body who attends a meeting of that public body at which action is taken in violation of this chapter is not the accomplice of any other member so attending." NEV. REV. STAT. ANN. § 241.040 (West 2008).

## NEW HAMPSHIRE:

"All power residing originally in, and being derived from, the people, all the magistrates and officers of government are their substitutes and agents, and at all times accountable to them. Government, therefore, should be open, accessible, accountable and responsive. To that end, the public's right of access to governmental proceedings and records shall not be unreasonably restricted." N.H. CONST. pt. 1, art. VIII.

"Subject to the provisions of RSA 91-A:3, all meetings, whether held in person, by means of telephone or electronic communication, or in any other manner, shall be open to the public." N.H. REV. STAT. ANN. § 91-A:2 (West 2009).

## NEW JERSEY:

"Except as provided by subsection b. of this section all meetings of public bodies shall be open to the public at all times." N.J. STAT. ANN. § 10:4-12 (West 2009).

## NEW MEXICO:

"All meetings of a quorum of members of any board, commission, administrative adjudicatory body or other policymaking body of any state agency, any agency or authority of any county, municipality, district or any political subdivision, held for the purpose of formulating public policy, including the development of personnel policy, rules, regulations or ordinances, discussing public business or for the purpose of taking

any action within the authority of or the delegated authority of any board, commission or other policymaking body are declared to be public meetings open to the public at all times, except as otherwise provided in the constitution of New Mexico or the Open Meetings Act." N.M. STAT. § 10-15-1 (West 2009).

"Any person violating any of the provisions of Section 10-15-1 or 10-15-2 NMSA 1978 is guilty of a misdemeanor and upon conviction shall be punished by a fine of not more than five hundred dollars ($500) for each offense." N.M. STAT. § 10-15-4 (West 2009).

**NEW YORK:**

"Every meeting of a public body shall be open to the general public, except that an executive session of such body may be called and business transacted thereat in accordance with section ninety-five of this article." N.Y. PUB. OFF. LAW § 100 (McKinney 2009).

**NORTH CAROLINA:**

"Except as provided in G.S. 143-318.11, 143-318.14A, 143-318.15, and 143-318.18, each official meeting of a public body shall be open to the public, and any person is entitled to attend such a meeting." N.C. GEN. STAT. § 143-318.10 (West 2009).

**NORTH DAKOTA:**

"Unless otherwise provided by law, all meetings of public or governmental bodies, boards, bureaus, commissions, or agencies of the state or any political subdivision of the state, or organizations or agencies supported in whole or in part by public funds, or expending public funds, shall be open to the public." N.D. CONST. art. XI, § 5.

"Except as otherwise specifically provided by law, all meetings of a public entity must be open to the public. That portion of a meeting of the governing body of a public entity as defined in subdivision c of subsection 12 of section 44-04-17.1 which does not regard public business is not required to be open under this section." N.D. CENT. CODE § 44-04-19.

"For an intentional or knowing violation of section 44-04-18, 44-04-19, 44-04-19.2, 44-04-20, or 44-04-21, the court may also award damages in an amount equal to one thousand dollars or actual damages caused by the violation, whichever is greater." N.D. CENT. CODE § 44-04-21.2.

**OHIO:**

"All meetings of any public body are declared to be public meetings open to the public at all times. A member of a public body shall be present in person at a meeting open to the public to be considered present or to vote at the meeting and for purposes of determining

whether a quorum is present at the meeting… If the court of common pleas issues an injunction pursuant to division (I)(1) of this section, the court shall order the public body that it enjoins to pay a civil forfeiture of five hundred dollars to the party that sought the injunction and shall award to that party all court costs and, subject to reduction as described in division (I)(2) of this section, reasonable attorney's fees. The court, in its discretion, may reduce an award of attorney's fees to the party that sought the injunction or not award attorney's fees to that party if the court determines both of the following…" OHIO REV. CODE ANN. § 121.22.

**OKLAHOMA:**

"All meetings of public bodies, as defined hereinafter, shall be held at specified times and places which are convenient to the public and shall be open to the public, except as hereinafter specifically provided." OKLA. STAT. ANN. TIT. 25, § 303 (West 2009).

"Any person or persons willfully violating any of the provisions of this act shall be guilty of a misdemeanor and upon conviction shall be punished by a fine not exceeding Five Hundred Dollars ($500.00) or by imprisonment in the county jail for a period not exceeding one (1) year or by both such fine and imprisonment." OKLA. STAT. ANN. TIT. 25, § 314 (West 2009).

**OREGON:**

"All meetings of the governing body of a public body shall be open to the public and all persons shall be permitted to attend any meeting except as otherwise provided by ORS 192.610 to 192.690." OR. REV. STAT. ANN. § 192.630 (West 2009).

**PENNSYLVANIA:**

"Official action and deliberations by a quorum of the members of an agency shall take place at a meeting open to the public unless closed under section 707 (relating to exceptions to open meetings), 708 (relating to executive sessions) or 712 (relating to General Assembly meetings covered)." 65 PA. STAT. ANN. § 704 (West 2009).

"Any member of any agency who participates in a meeting with the intent and purpose by that member of violating this chapter commits a summary offense and shall, upon conviction, be sentenced to pay a fine not exceeding $100 plus costs of prosecution." 65 PA. STAT. ANN. § 704 (West 2009).

**RHODE ISLAND:**

"Every meeting of all public bodies shall be open to the public unless closed pursuant to §§ 42-46-4 and 42-46-5." R.I. GEN. LAWS § 42-46-3 (2009).

"The court shall award reasonable attorney fees and costs to a prevailing plaintiff, other than the attorney general, except where special circumstances would render such an

award unjust. The court may issue injunctive relief and declare null and void any actions of a public body found to be in violation of this chapter. In addition, the court may impose a civil fine not exceeding five thousand dollars ($5,000) against a public body or any of its members found to have committed a willful or knowing violation of this chapter." R.I. GEN. LAWS § 42-46-8 (2009).

**SOUTH CAROLINA:**

"Every meeting of all public bodies shall be open to the public unless closed pursuant to § 30-4-70 of this chapter." S.C. CODE ANN. § 30-4-60 (West 2008).

"Any person or group of persons who willfully violates the provisions of this chapter shall be deemed guilty of a misdemeanor and upon conviction shall be fined not more than one hundred dollars or imprisoned for not more than thirty days for the first offense, shall be fined not more than two hundred dollars or imprisoned for not more than sixty days for the second offense and shall be fined three hundred dollars or imprisoned for not more than ninety days for the third or subsequent offense." S.C. CODE ANN. § 30-4-110 (West 2008).

**SOUTH DAKOTA:**

"Except as otherwise provided by law, the official meetings of the state and the political subdivisions thereof, including all related boards, commissions and other agencies, and the official meetings of boards, commissions and agencies created by statute or which are nontaxpaying and derive a source of revenue directly from public funds, shall be open to the public, except as provided in this chapter. It does not constitute an official meeting if members of a political subdivision of this state." S.D. Codified Laws § 1-25-1 (West 2008).

**TENNESSEE:**

"All meetings of any governing body are declared to be public meetings open to the public at all times, except as provided by the Constitution of Tennessee." TENN. CODE ANN. § 8-44-102 (West 2009).

**TEXAS:**

"Every regular, special, or called meeting of a governmental body shall be open to the public, except as provided by this chapter." TEX. GOV'T CODE ANN. § 551.002 (West 2007).

**UTAH:**

"A meeting is open to the public unless closed under Sections 52-4-204, 52-4-205, and 52-4-206." UTAH CODE ANN. § 52-4-201 (West 2008).

"In addition to any other penalty under this chapter, a member of a public body who knowingly or intentionally violates or who knowingly or intentionally abets or advises a violation of any of the closed meeting provisions of this chapter is guilty of a class B misdemeanor." UTAH CODE ANN. § 52-4-305 (West 2008).

### VERMONT:

"All meetings of a public body are declared to be open to the public at all times, except as provided in section 313 of this title." VT. STAT. ANN. TIT. 1, § 312 (West 2008).

"A person who is a member of a public body and who knowingly and intentionally violates the provisions of this subchapter or who knowingly and intentionally participates in the wrongful exclusion of any person or persons from any meeting for which provision is herein made, shall be guilty of a misdemeanor and shall be fined not more than $500.00." VT. STAT. ANN. TIT. 1, § 314 (West 2008).

### VIRGINIA:

"All meetings of public bodies shall be open, except as provided in §§ 2.2- 3707.01 and 2.2-3711." VA. CODE. ANN. § 2.2-3707 (West 2009).

"In a proceeding commenced against members of public bodies under § 2.2-3713 for a violation of § 2.2-3704, 2.2-3705.1 through 2.2-3705.8, 2.2-3706, 2.2-3707, 2.2-3708, 2.2-3708.1, 2.2-3710, 2.2-3711 or 2.2-3712, the court, if it finds that a violation was willfully and knowingly made, shall impose upon such member in his individual capacity, whether a writ of mandamus or injunctive relief is awarded or not, a civil penalty of not less than $250 nor more than $1,000, which amount shall be paid into the State Literary Fund. For a second or subsequent violation, such civil penalty shall be not less than $1,000 nor more than $2,500." VA. CODE. ANN. § 2.2-3714 (West 2009).

### WASHINGTON:

"Each house shall keep a journal of its proceedings and publish the same, except such parts as require secrecy. The doors of each house shall be kept open, except when the public welfare shall require secrecy." WASH. CONST. art. II, § 11.

"All meetings of the governing body of a public agency shall be open and public and all persons shall be permitted to attend any meeting of the governing body of a public agency, except as otherwise provided in this chapter." WASH. REV. CODE ANN. § 42.30.030 (West 2009).

"(1) Each member of the governing body who attends a meeting of such governing body where action is taken in violation of any provision of this chapter applicable to him, with knowledge of the fact that the meeting is in violation thereof, shall be subject to personal liability in the form of a civil penalty in the amount of one hundred dollars. The civil penalty shall be assessed by a judge of the superior court and an action to enforce this

penalty may be brought by any person. A violation of this chapter does not constitute a crime and assessment of the civil penalty by a judge shall not give rise to any disability or legal disadvantage based on conviction of a criminal offense." WASH. REV. CODE ANN. § 42.30.120 (West 2009).

**WEST VIRGINIA:**

"Except as expressly and specifically otherwise provided by law, whether heretofore or hereinafter enacted, and except as provided in section four of this article, all meetings of any governing body shall be open to the public." W. VA. CODE ANN. § 6-9A-3 (West 2009).

"Any person who is a member of a public or governmental body required to conduct open meetings in compliance with the provisions of this article and who willfully and knowingly violates the provisions of this article is guilty of a misdemeanor and, upon conviction thereof, shall be fined not more than five hundred dollars: Provided, That a person who is convicted of a second or subsequent offense under this subsection is guilty of a misdemeanor and, upon conviction thereof, shall be fined not less than one hundred dollars nor more than one thousand dollars." W. VA. CODE ANN. § 6-9A-7 (West 2009).

**WISCONSIN:**

"Every meeting of a governmental body shall be preceded by public notice as provided in s. 19.84, and shall be held in open session." WIS. STAT. ANN. § 19.83 (West 2009).

"Any member of a governmental body who knowingly attends a meeting of such body held in violation of this subchapter, or who, in his or her official capacity, otherwise violates this subchapter by some act or omission shall forfeit without reimbursement not less than $25 nor more than $300 for each such violation. No member of a governmental body is liable under this subchapter on account of his or her attendance at a meeting held in violation of this subchapter if he or she makes or votes in favor of a motion to prevent the violation from occurring, or if, before the violation occurs, his or her votes on all relevant motions were inconsistent with all those circumstances which cause the violation." WIS. STAT. ANN. § 19.96 (West 2009).

**WYOMING:**

"All meetings of the governing body of an agency are public meetings, open to the public at all times, except as otherwise provided." WYO. STAT. ANN. § 16-4-403 (West 2008).

"Any member or members of an agency who knowingly and willfully takes an action in violation of or conspires to take an action in violation of this act shall be guilty of a misdemeanor. Any member of the governing body of an agency who attends or remains at a meeting where an action is taken knowing that the action is in violation of this act shall be guilty of a misdemeanor unless minutes were taken during the meeting and the parts thereof recording the member's objections are made public or at the next regular

public meeting the member objects to the meeting where the violation occurred and asks that the objection be recorded in the minutes. Either misdemeanor violation under this subsection is punishable upon conviction by a fine of not more than seven hundred fifty dollars ($750.00)." WYO. STAT. ANN. § 16-4-408 (West 2008).

**FEDERAL PROVISION:**

"Members shall not jointly conduct or dispose of agency business other than in accordance with this section. Except as provided in subsection (c), every portion of every meeting of an agency shall be open to public observation…the term "meeting" means the deliberations of at least the number of individual agency members required to take action on behalf of the agency where such deliberations determine or result in the joint conduct or disposition of official agency business, but does not include deliberations required or permitted by subsection (d) or (e)…" 5 U.S.C.A. § 552b (West 2009).